**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY HAZDOVAC, individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> MERCEDES BENZ USA, LLC, and DOES MBUSA 1 through 10, inclusive, <br><br> Defendants. | Case No. 20-cv-00377-RS <br><br> **CLASS ACTION** <br><br> **FIRST AMENDED COMPLAINT FOR:** <br><br> **(1) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION 17200,** *et seq.* <br><br> **(2) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1770,** *et seq.* <br><br> **JURY TRIAL DEMANDED** |

Plaintiff Cory Hazdovac ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, brings this action against Defendant Mercedes Benz USA, LLC ("Defendant" or "MBUSA"), and upon information and belief, except as to her own actions, the investigation of her counsel, and facts that are a matter of public record, alleges as follows:

**INTRODUCTION**

1.      This class action arises out of MBUSA's failure to accurately and comprehensively identify all of the Mercedes C-Class 300 vehicle parts that should properly be classified as "high-cost emissions warranty parts" under California's emission warranty requirements and covered under the emissions warranty for 7-years and 70,000 miles.

2.      In an effort to minimize MBUSA's warranty costs, MBUSA has unilaterally and unlawfully limited the parts that it designates as high-cost emissions warranty parts, in order to limit the parts for which it provides 7-years and 70,000-mile coverage.

3.      By not identifying all of the parts that should be included as high-priced emissions warranted parts, MBUSA has attempted to wrongfully limit the warranty coverage for many emissions-related parts to MBUSA's standard 4-year and 50,000-mile warranty.

4.      To date, Plaintiff has identified three (3) vehicle parts in Mercedes C-Class 300 vehicles that should properly be classified as "high-cost emissions warranty parts" under California's emission warranty requirements and covered under the emissions warranty for 7-years and 70,000 miles: (1) the coolant thermostat (which was properly identified as a high-priced emissions part in MY 2017 and MY 2018 C-Class vehicles but not in MY 2015 and MY 2016 vehicles); (2) the coolant pump; and (3) the vacuum pump.  Not only were the coolant pump and the vacuum pump not identified by MBUSA as high-priced emissions parts, they were not identified by MBUSA as emissions-related parts at all.

5.      By this action, Plaintiff seeks reimbursement for, *inter alia*, all out of pocket costs paid for the repairs identified herein for the three vehicle parts, and other parts, that should have been covered by MBUSA under the 7-years and 70,000-mile emissions warranty. Plaintiff also seeks an injunction requiring MBUSA to properly identify and cover, under the California high-priced emissions warranty, repair/replacement of each of the three parts at issue and all

other parts that MBUSA has failed to properly identify which should be covered under the 7-years and 70,000-mile warranty for high-cost emissions warranted parts.

**JURISDICTION AND VENUE**

6.      This Court has removal jurisdiction over this action pursuant to 28 U.S.C. § 1441 and § 1332(d)(2)(A). Members of the Class are citizens of a state different from that of Defendant MBUSA, and aggregating the claims of individual Class members, the total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) MBUSA is not a state, state official, or other governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

7.      This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court consistent with traditional notions of fair play and substantial justice. Further, by removing this action to this Court, Defendant concedes personal jurisdiction.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant conducts business within the State of California and a substantial part of the events giving rise to the claims alleged herein occurred in this District.

**PARTIES**

9.      Plaintiff Cory Hazdovac is, and at all times relevant hereto has been, a resident and citizen of the State of California, County of Kern.

10.      MBUSA was and is, upon information and belief, a Delaware limited liability company doing business in California.

11.      The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.

12.     Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of MBUSA at all relevant times.

13.     Plaintiff is informed and believes, and on that basis alleges that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained, as may be necessary. Each reference in this Complaint to "MBUSA" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

14.     Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

## BACKGROUND

15.     For decades, MBUSA has been in the business of importing and distributing MBUSA vehicles in the State of California, with the intent of its MBUSA dealerships selling and leasing MBUSA vehicles to consumers in the state of California. Thus, MBUSA vehicles have been subject to state and federal regulations regarding emissions standards and regarding MBUSA's obligation to provide consumers with warranties relating to emissions parts.

16.     Specifically, dating back over 20 years, California Code of Regulations, Title 13, Section 2035, *et seq*., entitled "Emission Control System Warranty Requirements for 1990 and Subsequent Model Year Passenger Car, Light-Trucks, and Medium-Duty Vehicles and Engines ("the CCR") has required MBUSA to identify to the California Air Resources Board ("CARB") all the vehicle parts that are "high-priced" "warranted parts" and has required MBUSA to provide a 7-year and 70,000-mile warranty to California consumers relating to all "high-priced" "warranted parts." This provision is sometimes referred to as the "High-Cost Emissions-Related Parts Warranty" or the "California Emission Control System Warranty."

17.     The CCR very clearly defines the methodology that MBUSA is required to use in order to identify which parts should be covered by the 7-year and 70,000-mile warranty.

18.     Pursuant CCR Section 2035, with regard to 1990 and subsequent model year vehicles, a warranted part is defined as, any part installed on a motor vehicle or motor vehicle engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects any regulated emission from a motor vehicle or engine which is subject to California emission standards.

19.     Furthermore, CCR Section 2037(b) states: "The manufacturer of each motor vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent purchaser that the vehicle or engine is:

(1)     Designed, built, and equipped so as to conform with all applicable regulations adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2, part 5, division 26 of the Health and Safety Code; and

(2)     Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs; and

(3)     Free from defects in materials and workmanship which cause the failure of a warranted part described in section (c) below for seven years or 70,000 miles, whichever first occurs."

20.     California Code of Regulations Section 2037(c) deals with high-priced warranted parts under the California Emission Control System Warranty and states:

(1)     Each manufacturer shall identify in its application for certification the high-priced warranted parts which are:

(a)     For 1990 through 2007 model year vehicles: [i] included on the Board's "Emissions Warranty Parts List" as last amended February 22, 1985,

incorporated herein by reference, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3);

    (b)    For 2008 and subsequent model year vehicles: [i] subject to coverage as a warranted part in section (b)(2) above, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3).

(2)    The replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis. The costs shall be those of the highest-cost metropolitan area of California.

(3)    The cost limit shall be calculated using the following equation:

Cost limit $\{n\}$ = \$300 x $(CPI\{n-2\})$/ 118.3)

Cost limit $\{n\}$ is the cost limit for the applicable model year of the vehicle rounded to the nearest ten dollars.

21.    In summary, any part that either effects a vehicle's emissions, or causes a vehicle's on-board diagnostic malfunction indicator light to illuminate is, for the purpose of determining coverage under the CCR, considered a warranted part. If a part is a warranted part, the part shall have a 3-year and 50,000-mile California emissions warranty.

22.    However, if the part is a high-priced warranted part, as defined by 2037(c) of the CCR, the part, the labor cost of diagnosing the part failure, and the labor cost of replacing the part shall have a 7-year and 70,000-mile California emissions warranty pursuant to the High-Cost Emissions-Related Parts Warranty.

## PLAINTIFF'S FACTS

*Vehicle Purchase*

23.    On October 25, 2018, Plaintiff purchased a used 2015 Mercedes C300, VIN 55SWF4JBXFU060151 ("Vehicle"), from Bakersfield Acura (the "Bakersfield Dealership") located in Kern County, California. The Bakersfield Dealership is a vehicle dealership authorized to sell new and used vehicles in the state of California.

24.     At the time that Plaintiff purchased the Vehicle, the Vehicle still had in place the remainder of the factory warranty, the remainder of the federal emissions warranty, and the remainder of the California emissions warranty. Plaintiff received a warranty book. The warranty booklet provided to Plaintiff indicated that the Vehicle's warranty included coverage pursuant to the California emissions warranty.

***Thermostat Repair***

25.     On June 10, 2019, at 58,502 miles, the Vehicle underwent repairs at Alfano Motorcars ("Alfano"), an authorized MBUSA repair facility, where consumers can present their vehicles for repair pursuant to the MBUSA warranty. Plaintiff visited Alfano because Plaintiff was reporting that the Vehicle became very hot and almost overheated. Alfano generated Invoice 446775 relating to this repair visit.

26.     Alfano ran a short test, and found fault code P021700 present, indicating that the coolant temperature was too high. This is a fault code stored in the Vehicle's diagnostic system. Alfano diagnosed the Vehicle as having a faulty coolant thermostat. Alfano subsequently notified Plaintiff that there was no warranty coverage provided by MBUSA at that time relating to the coolant thermostat, and that Plaintiff had to pay out of pocket for the repairs. The Vehicle at that time was below the 7-year and 70,000-mile mark.

27.     The total cost of the repairs on June 14, 2019 was $1,040.85. Plaintiff had an aftermarket service contract that paid for $992.85 of the repairs. Plaintiff paid $148.00 out of pocket for the remaining portion of the cost of the repairs.

***Vacuum Pump Repair***

28.     On June 26, 2019, at 59,229 miles, the Vehicle again underwent repairs at Sangera Automotive Group ("Sangera"), an authorized MBUSA repair facility, where consumers can present their vehicles for repair pursuant to the MBUSA warranty. Plaintiff visited Sangera because the check engine light was illuminated.

29.     Sangera ran a short test, and found fault code P029921, indicating that the boost pressure for the turbo charger was too low. This fault code is stored in the Vehicle's diagnostic system. Sangera diagnosed the Vehicle as having a non-functioning turbo charger. Sangera

1    determined that the problems with the turbo charger were the result of a malfunctioning vacuum

2    pump. Sangera subsequently notified the Plaintiff that there was no warranty coverage being

3    provided by MBUSA at that time relating to the vacuum pump and that she had to pay for the

4    repairs. The Vehicle at that time was below the 7-year and 70,000-mile mark.

5        30.    The total cost of the repairs on July 2, 2019 was $873.26. Plaintiff had an

6    aftermarket service contract that paid $773.26 for the repairs. Plaintiff paid $100.00 out of

7    pocket for the remaining portion of the cost of the repairs.

8    ***Coolant Pump Repair***

9        31.    On July 19, 2019, at 59,693 miles, the Vehicle again underwent repairs at

10   Sangera because the Vehicle's check engine light was illuminated. Sangera generated Invoice

11   157444 relating to this repair visit.

12       32.    Sangera ran a short test, and found fault code 260013, indicating a fault in the

13   coolant pump. This fault code is stored in the Vehicle's diagnostic system. Sangera

14   subsequently notified the Plaintiff that there was no warranty coverage being provided by

15   MBUSA at that time relating to the coolant pump and that she had to pay for the repairs. The

16   Vehicle at that time was below the 7-year and 70,000-mile mark.

17       33.    The total cost of the repairs on July 19, 2019 was $882.50. Plaintiff had an

18   aftermarket service contract that paid $782.50 for the repairs. Plaintiff paid $100.00 out of

19   pocket for the remaining portion of the cost of the repairs.

20                                    **MBUSA'S CONDUCT**

21       34.    At all times herein relevant, for each new motor vehicle intended to be

22   distributed by MBUSA in the State of California, at the time of distribution, MBUSA has

23   purported to accurately notify CARB of the parts which should be covered under the 7-year and

24   70,000-mile California emissions warranty.

25       35.    Furthermore, at all times herein relevant, for each new vehicle intended to be

26   distributed by MBUSA in the State of California, at the time of distribution, MBUSA has

27   purported to provide accurate written warranty documents with the vehicles, including a

28

warranty booklet, which purports to accurately identify all of the vehicle parts that are covered under the 7-year and 70,000-mile California emissions warranty.

36.     MBUSA has engaged in a systematic business practice of omitting from the MBUSA warranty book provided to owners and lessees at the time of sale or lease, and in resources provided by MBUSA to its dealerships both at the time of sale or lease and afterwards, identification of all of the parts that should be identified as high-priced emissions warranted parts, covered under the 7-year and 70,000-mile California emissions warranty. MBUSA classifies *some* of the "high-priced" warranted parts as being parts covered under the 7-year and 70,000-mile California emissions warranty, but not all of the high-priced warranted parts that should be covered under the 7-year and 70,000-mile California emissions warranty.

37.     Thereafter, when MBUSA vehicles are presented by consumers to MBUSA authorized repair facilities for repair, MBUSA fails to provide coverage under the 7-year and 70,000-mile California emissions warranty for all of the repairs that should be covered under the California emissions warranty.

38.     As a result, California consumers have to pay out of pocket for these repairs which, by operation of California law, should be paid for by MBUSA.

39.     MBUSA engages in the alleged misconduct in order to reduce the amount of money that MBUSA has to pay out for warranty related repairs and warranty claims.

40.     If MBUSA properly identified all of the high-priced emissions warranty parts that should be correctly identified as such, then MBUSA dealerships would properly provide coverage for said high-priced parts under warranty.

41.     The failure by MBUSA to properly identify parts as "high-priced" warranted parts under the CCR violates California Business and Professions Code Section 17200, *et seq.* (the "UCL") and the California Consumers Legal Remedies Act, Cal. Civ. Code Section 1750, *et seq.* (the "CLRA"), and is intended to minimize the amount of money that MBUSA has to pay out in warranty claims.

42.     Plaintiff and other consumers have suffered damage and lost money or property as a result of MBUSA's wrongful conduct.

43.     Plaintiff's theory does not depend on the premise that CARB was deceived by the information that MBUSA submitted, and Plaintiff is not accusing CARB of mismanagement or blaming CARB for MBUSA's inaccuracy. MBUSA alone is responsible for selecting and identifying to CARB the parts that MBUSA has unilaterally identified as high-priced emissions warranty parts as part of its application for vehicle certification. That list may be correct as far as CARB may know. But, as Plaintiff alleges, the list is incomplete, as evidenced by Plaintiff's own experience.

**THE COOLANT THERMOSTAT IS A HIGH-PRICED WARRANTY PART**

44.     The coolant thermostat installed in the Thermostat Class Vehicles regulates the flow of coolant throughout the engine cooling system.

45.     MBUSA's warranty books for the Thermostat Class Vehicles acknowledges that the coolant thermostat is an emissions-related part, and the MBUSA warranty book for MY 2017 through MY 2018 Mercedes C300 vehicles also identifies the coolant thermostat as being a high-priced emissions warranted part covered for 7 years or 70,000 miles.

46.     However, the MBUSA warranty book for the MY 2015 and MY 2016 Mercedes C300 vehicles ("Thermostat Class Vehicles") does *not* identity the coolant thermostat as being a high-cost emissions warranty part. As a result, the warranty coverage for the coolant thermostat for the Thermostat Class Vehicles is limited to 4 years and 50,000 miles. The parts and labor costs to replace the coolant thermostat are the same for all of the Thermostat Class Vehicles, MY2015-2018.

47.     As explained below, the cost associated with diagnosing and replacing a defective coolant thermostat for Thermostat Class Vehicles exceeds the high-priced emissions warranted parts threshold.  Thus, the coolant thermostat for Thermostat Class Vehicles should have been classified as a high-priced warranty part entitled to extended warranty coverage for 7-years 70,000-miles under the California High-Cost Emissions-Related Parts Warranty.

48.     The following analysis identifies the applicable cost limit for the MY 2015 and 2016 Thermostat Class Vehicles and the estimated replacement cost for the coolant thermostats installed in the Thermostat Class Vehicles.

***Cost Limit Analysis – Generally***

49.     CARB publishes Manufacturer's Advisory Correspondence (MAC) every year, advising manufacturers of the cost threshold for the upcoming model year vehicles. The cost threshold is supposed to be used by manufacturers in determining if an emissions related part is a high-priced emissions warranty part. The analysis is supposed to be performed prior to distributing the vehicles. If the manufacturer determines that the total cost to the customer of diagnosing the defective emissions related part, paying for the labor to replace the part, and paying for the replacement part exceeds the threshold, then the part must be deemed a high-priced emissions warranty part. If it is deemed a high-priced emissions warranty part, the manufacturer shall provide a 7-year and 70,000-mile warranty for the part.

50.     On July 9, 2014, CARB published the MAC for model year 2015 vehicles, including the Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and replace emissions related parts was $590.00.

51.     On March 26, 2015, CARB published the MAC for model year 2016 vehicles, including the Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and replace emissions related parts was $600.00.

52.     Thus, if the cost to diagnose and repair the coolant thermostats installed in the Thermostat Class Vehicles exceeded $590 for MY 2015 or $600 for MY 2016, the part should have been identified as a high-priced emissions warranty part covered for 7-years or 70,000-miles.

***Cost Limit Analysis – Thermostat***

53.     There is no legitimate reason why the coolant thermostats installed in the Thermostat Class Vehicles were not identified as high-priced emissions warranty parts and did not receive 7-years and 70,000-mile warranty when the same identical part, with the same functionality, the same repair procedures and protocols, and the same costs of repair was properly identified as a high-priced emissions warranty part for MY 2016-2018 vehicles.

54.     The coolant thermostat is the same part number in MY 2015-2018 C Class vehicles, the engine serviced by the coolant thermostat is the same in MY 2015-2018 C Class

vehicles, and the functionality of the coolant thermostat in all of the Thermostat Class Vehicles did not change from MY 2015 through MY2018.

55.    Further, the reason that MBUSA determined that the part was a high-priced warranty part in 2017-2018, but not in 2015-2016 is not due to an increase in the cost of the repair for MY 2017-2018.   The cost of repair for the coolant thermostat did not change significantly from MY 2015-2018.  This is because the repair protocol relating to the coolant thermostat has not changed from Model Year 2015 through 2018 and therefore the time needed to perform the repair also has not have changed. Thus, (1) the labor cost to diagnose and repair the part did not significantly change; (2) The cost of the part did not significantly change; and (3) The consumer price index has grown very little from 2015 to 2020. The growth in the consumer price index has been so low that there is only a $50.00 increase in the high-priced cost threshold from 2015 to 2020 and the amount that Plaintiff was charged at a MBUSA factory authorized repair facility in 2019 to replace the coolant thermostat was $1,040.85, which is $450.85 above the high-priced threshold. This is far greater than the $50.00 increase in the consumer price index.  Furthermore, the function of the coolant thermostat did not change from 2015 through 2018. Thus, there is no legitimate explanation as to why the coolant thermostat would not be included as a high priced emissions part in 2015-2016, but included as a high priced emissions part in 2017-2018 based upon the price of the part or the functionality of the part.  Rather, MBUSA wrongfully failed to include the thermostat as a high-priced emissions part for the 2017-2018 Mercedes C300 vehicles.

56.    The retail cost of the repairs, even when taking into consideration the escalation in cost over time, clearly exceeds the high-priced emissions parts threshold. There is no legitimate reason for this increase.

57.    Therefore, pursuant to California law, MBUSA is required to provide 7-year and 70,000-mile warranty coverage for the coolant thermostat installed in Thermostat Class Vehicles. MBUSA currently unlawfully fails to provide this coverage. The reason that the coolant thermostats installed in the Thermostat Class Vehicles did not receive 7-year and 70,000-mile warranty coverage, and as to why the Thermostat Class Vehicles' MBUSA

warranty books did not state that the coolant thermostats were entitled to 7-year and 70,000-mile warranty coverage, is because MBUSA engaged in wrongful conduct by failing to properly identify the coolant thermostats installed in the Thermostat Class Vehicles as high-priced emissions warranty parts.

**THE COOLANT PUMP IS A HIGH-PRICED WARRANTY PART**

58.   The coolant pump is an emissions related part.  The engine's coolant pump creates circulation so that coolant can flow through the engine's cooling system, similar to the function of the coolant thermostat. If either the coolant pump or the coolant thermostat stops functioning, then there will not be coolant flowing through the engine's cooling system. For the same reasons that MBUSA designated the coolant thermostat in the Thermostat Class Vehicles as being an emissions related part, MBUSA should have designated the coolant pump as being an emissions related part.

59.   The distinction between the coolant pump and the engine thermostat, from an emissions perspective, is that the engine thermostat has the ability to prevent coolant from circulating through the engine when the engine is cold. This shortens the time period for the engine to reach operating temperature, which reduces vehicle emissions. If the thermostat malfunctions, and coolant circulates through the engine while the engine is cold, this increases emissions. Similarly, the lack of coolant circulation through the engine after the engine has reached operating temperature, as the result of a defect in the coolant pump or the thermostat, will also result in an increase in regulated emissions. The reason that regulated emissions will increase when coolant is not circulating through the engine is that the engine will overheat. Overheating results in head gasket failure. Head gasket failure results in the combustion of coolant and engine oil, which results in an increase in regulated emissions.

60.   When Plaintiff's Vehicle experienced the failure of the coolant pump, the check engine light illuminated and the Vehicle's engine began to overheat. When an engine overheats, the overheating increases regulated emissions. The fact that a defective coolant pump results both in the illumination of the check engine light and in increased regulated emissions mean that the coolant pump should be designated as an emissions related part.

61.     As explained below, the coolant pump should also have been designated as a high-priced warranted part for the Coolant Pump Class Vehicles because the cost associated with diagnosing and replacing a defective coolant pump for the Coolant Pump Class Vehicles exceeds the high-cost emission parts threshold. Thus, it is unlawful for MBUSA to not provide 7-year and 70,000-mile warranty coverage for the coolant pumps installed in the Coolant Pump Class Vehicles.

62.     The MBUSA warranty book for Coolant Pump Class Vehicles does not identity the coolant pump as being a high-cost emissions warranty part. As a result, the warranty coverage for the coolant pump is limited to 4 years and 50,000 miles. The parts and labor costs to replace the coolant pump are the same for all of the Coolant Pump Class Vehicles.

***Cost Limit Analysis – Coolant Pump***

63.     As set forth above, the costs limits, per CARB, for 2015 and 2016, were $590 and $600, respectively.

64.     On March 15, 2016, CARB published the MAC for model year 2017 vehicles, including the Coolant Pump Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and replace emissions related parts was $600.00.

65.     On August 21, 2017, CARB published the MAC for model year 2018 vehicles, including the Coolant Pump Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and replace emissions related parts was $610.00.

66.     Thus, if the cost to diagnose and repair the coolant pumps installed in the Coolant Pump Class Vehicles exceeded the foregoing cost limits, these parts should have been identified as a high-cost emissions warranty parts covered for 7 years or 70,000 miles.

67.     The amount that Plaintiff was charged at a MBUSA factory authorized repair facility in 2019 to replace the coolant pump was $882.50, which is $292.50 above the high-priced threshold.  There is no legitimate reason for this increase.

68.     The price of the part did not significantly change from 2015 to 2018.

69.     The labor cost did not significantly increase.  The repair protocol relating to the coolant pump has not changed from Model Year 2015 through MY 2018. The time needed to

perform the repair could not have changed. The parts and labor costs to replace the coolant pump are the same for all of the Coolant Pump Class Vehicles. Thus, the reason why the coolant pump was not included in the Coolant Pump Class Vehicles' warranty book is not because the price changed significantly.

70.     Inflation also did not cause the cost to increase.  The consumer price index has grown very little from 2015 to 2020. The growth in the consumer price index has been so low that there is only a $50.00 increase in the high-priced cost threshold from 2015 to 2020.

71.     Finally, Plaintiff had an aftermarket service contract that paid $782.50 for the repairs.  The aftermarket service would not have paid that amount if it believed that the MBUSA repair dealership was price gouging for the cost of the part or the repair.

72.     Accordingly, MBUSA wrongfully failed to identify the coolant pump as a high-priced warranty part.  Pursuant to California law, MBUSA is required by law to provide 7-years and 70,000 warranty coverage for the coolant pump installed in the Coolant Pump Class Vehicles. MBUSA currently unlawfully fails to provide this coverage.

**THE VACUUM PUMP IS A HIGH-PRICED WARRANTY PART**

73.     The vacuum pump is an emission part. The vacuum pump in the Vacuum Pump Class Vehicles is used to open and close the turbo charger, in order to create boost. If the vacuum pump is defective, the turbo charger will not work properly. Virtually all of a Vacuum Pump Class Vehicle's systems will work even if the Vacuum Pump Class Vehicle's vacuum pump is defective, however if a Vacuum Pump Class Vehicle has a defective vacuum pump, the defect will cause the Vacuum Pump Class Vehicle's check engine light to illuminate, and will increase the Vacuum Pump Class Vehicle's regulated emissions.

74.     The warranty book for the Vacuum Pump Class Vehicles designates the turbo charger as being an emissions related component. This is because the failure of the turbo charger to function increases regulated emissions and causes the check engine light to illuminate.

75.     The failure of the vacuum pump also increases regulated emissions and causes the check engine light to illuminate. Thus, MBUSA should have designated the vacuum pump as being an emissions related component.

76.     As explained below, the vacuum pump should also have been designated as high-priced warranted part for the Vacuum Pump Class Vehicles because the cost associated with diagnosing and replacing a defective vacuum pump for the Vacuum Pump Class Vehicles exceeds the high-priced emission parts threshold. Thus, it is unlawful for MBUSA to not provide 7-year and 70,000-mile warranty coverage for the vacuum pumps installed in the Vacuum Pump Class Vehicles.

***Cost Limit Analysis – Vacuum Pump***

77.     As forth above, the costs limits, per CARB, for 2015 and 2016, were $590 and $600, respectively.

78.     On March 15, 2016, CARB published the MAC for model year 2017 vehicles, including the Vacuum Pump Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and replace emissions related parts was $600.00.

79.     On August 21, 2017, CARB published the MAC for model year 2018 vehicles, including the Vacuum Pump Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and replace emissions related parts was $610.00.

80.     Thus, if the cost to diagnose and repair the vacuum pumps installed in the Vacuum Pump Class Vehicles exceeded the foregoing cost limits, these parts should have been identified as high-priced emissions warranty parts covered for 7 years or 70,000 miles.

81.     The amount that Plaintiff was charged at a MBUSA factory authorized repair facility in 2019 to replace the vacuum pump was $873.26, which is $283.26 above the high-priced threshold.  There is no legitimate reason for this increase.

82.     The price of the part did not significantly change from 2015 to 2018.

83.     The labor cost did not significantly increase.  The repair protocol relating to the coolant pump has not changed from Model Year 2015 through MY 2018. The time needed to perform the repair could not have changed. The parts and labor costs to replace the vacuum

1    pump are the same for all of the Vacuum Pump Class Vehicles. Thus, the reason why the

2    coolant pump was not included in the Vacuum Pump Class Vehicles' warranty book for the

3    Vacuum Pump Class vehicles is not because the price changed significantly.

4          84.    Inflation also did not cause the cost to increase.  The consumer price index has

5    grown very little from 2015 to 2020. The growth in the consumer price index has been so low

6    that there is only a $50.00 increase in the high-priced cost threshold from 2015 to 2020.

7          85.    Finally, Plaintiff had an aftermarket service contract that paid $773.26 for the

8    repairs.  The aftermarket service would not have paid that amount if it believed that MBUSA

9    was price gouging for the cost of the part or the repair.

10         86.    Accordingly, the only logical explanation is that MBUSA wrongfully failed to

11   identify the coolant pump as a high-priced warranty part.

12         87.    Pursuant to California law, MBUSA is required by law to provide 7-year 70,000-

13   mile warranty coverage for the vacuum pump installed in the Vacuum Pump Class Vehicles.

14   MBUSA currently unlawfully fails to provide this coverage.

15   **ADDITIONAL COST LIMIT ANALYSIS ALLEGATIONS AS TO ALL THREE PARTS**

16         88.    The cost associated with the diagnosis and repairs relating to the coolant

17   thermostat, vacuum pump, and coolant pump for the Class Vehicles should be covered and paid

18   for by MBUSA under the 7-years and 70,000-mile California emissions warranty. This is

19   because, pursuant to California Code of Regulations section 2037(c), the coolant thermostat,

20   vacuum pump, and coolant pump should have been identified by MBUSA as high-cost

21   emissions warranty parts, and the parts, labor and diagnostic expenses relating to those repairs

22   should have been covered under Section 2037(c).

23         89.    Furthermore, the warranty booklet relating to the Class Vehicles should have

24   identified the coolant thermostat, vacuum pump, and coolant pump as being high-priced

25   emissions warranty parts. This is because, at the time of initial distribution, the costs associated

26   with diagnosing the parts as being defective, purchasing the parts, and installing the parts,

27   qualified the parts as high-priced emissions parts, as described in the statute.

28

90.     On information and belief, there is no legitimate explanation for why, based on these facts, the coolant thermostat, vacuum pump, and coolant pump were not identified by MBUSA as high-priced emission parts relating to the Class Vehicles. To date, MBUSA has not explained the basis for MBUSA's determination.

91.     On information and belief, MBUSA's failure to include the coolant thermostat, vacuum pump, and coolant pump installed in the Class Vehicles as high-priced emissions warranty parts was an intentional omission by MBUSA, designed by MBUSA in an effort to reduce the money that MBUSA pays out in warranty claims. On information and belief, this is just one example of MBUSA's scheme to fail to properly and comprehensively identify all of the parts that should be identified as high-priced warranted parts and covered for 7-years and 70,000 miles under the California emissions warranty.

92.     Plaintiff has provided an analysis of why the coolant thermostat, vacuum pump, and coolant pump should have been designated by MBUSA as high-priced emissions warranted parts. The details of how MBUSA applied the CCR formula with respect to the coolant thermostat, vacuum pump, and coolant pump are exclusively within MBUSA's possession. Similarly, the information regarding what other parts satisfied the CCR requirements but were not identified by MBUSA as high-priced emissions warranty parts is also in the exclusive possession of MBUSA.

93.     When Class Vehicles are presented to MBUSA dealerships for repairs which should be covered under the 7-year and 70,000 mile California emissions warranty, but are not identified by MBUSA's Warranty Information booklet as being covered, MBUSA refuses to provide 7-year and 70,000-mile California emissions warranty coverage. Plaintiff presented the Vehicle to MBUSA authorized repair facilities for repairs to the coolant thermostat, vacuum pump, and coolant pump. All of these repairs should have been covered under the 7-year and 70,000-mile California emissions warranty. Plaintiff was wrongfully denied warranty coverage for these repairs, all of which should have been covered under the 7-year and 70,000-mile California emissions warranty.

94.     The reason that Plaintiff was charged for said repairs was not the result of an individual issue relating to the Sangera or Alfano dealerships, or an oversight by Sangera, or Alfano in failing to identify the repairs as repairs that should have been covered under the 7-year and 70,000-mile California emissions warranty. Rather, Plaintiff was charged for said repairs because of MBUSA's uniform and systematic business practice of intentionally refusing to identify in the MBUSA warranty booklet, and in resources provided to its dealerships, all of the parts that should be identified as high-priced emissions warranty parts under California law in order to limit the amount of warranty claims paid by MBUSA.

95.     CCR section 2037(c)(1)(B) regarding "High-priced Warranty Parts" requires MBUSA to identify the "high-priced warranted parts . . . which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

96.     MBUSA intentionally failed to identify all said components in order to reduce the amount of money that MBUSA spends on warranty related repairs. If MBUSA complied with California law and properly identified all parts as high-priced emissions warranty parts that should be identified as such, then MBUSA dealerships would properly provide warranty coverage for said high-priced emissions warranty parts.

97.     MBUSA's conduct violates California's unfair business practices statute, California Business and Professions Code section 17200, *et seq*. (the "UCL"), and violates the Consumers Legal Remedies Act, Civil Code section 1750, *et seq* (the "CLRA").

98.     Plaintiff and other members of the Classes have suffered damage as a result of MBUSA's wrongful conduct.

99.     MBUSA may attempt to justify not including the coolant thermostat, vacuum pump, and coolant pump as high-priced emissions parts based upon the amount of money in parts and labor that MBUSA pays its factory authorized repair facilities to perform repairs relating to these parts. But in determining if a part should be considered a high-priced part, a manufacturer is supposed to consider the total amount of money in parts and labor that consumers pay to diagnose and perform repairs to the parts in question, not a negotiated book rate that factory authorized repair facilities are mandated to charge MBUSA. The repairs to the

coolant thermostat, vacuum pump, and coolant pump were performed at MBUSA factory authorized repair facilities, that charged Plaintiff the retail cost of these repairs.

100.   The United States Bureau of Labor and Statistics uses an inflation calculator to estimate how much buying power changes based upon inflation. The calculator can be found at, "https://data.bls.gov/cgi-bin/cpicalc.pl." Using this calculator provides further evidence that the coolant thermostat, vacuum pump, and coolant pump should have been identified by MBUSA as high-priced emissions warranted parts.

101.   A calculation using the inflation calculator provides guidance. Using the baseline date of January 2010, which significantly predates the relevant date for this analysis, and using January 2020, which is after all of the repairs were performed, $590.00 in 2010 would have the same buying power as $702.41 in 2010. This means that MBUSA cannot use inflation as an explanation as to why the costs charged to Plaintiff for the repairs to the coolant thermostat, vacuum pump, and coolant pump in 2019 are so much more than the threshold amount when the original analysis was done. Although Plaintiff does not yet know how MBUSA conducted its analysis, inflation is not an appropriate or reasonable explanation for why the coolant thermostat, vacuum pump, and coolant pump were not considered high-priced emissions warranty parts when the Class Vehicles were sold.

102.   Furthermore, MBUSA cannot use the explanation that Plaintiff was overcharged by a rogue repair facility. Two separate MBUSA factory authorized repair facilities performed the repairs in question and there is no evidence that either of these repair facilities engaged in price gouging. Quite the opposite is true. A third-party service contract provider paid for a portion of these repairs. The service contract provider is in the business of paying for vehicle repairs and would not pay charges that were inflated or unnecessary.

103.   The retail cost of the repairs, even when taking into consideration the escalation in cost over time, clearly exceeds the high-priced emissions parts threshold.

104.   Looking at the MAC for 2020 vehicles, which was published on March 18, 2019 further illuminates MBUSA's wrongful conduct. The MAC for 2020 states that the high-priced emissions parts threshold is $640.00, which is hundreds of dollars less than the what Plaintiff

1   paid for the repairs to the Vehicle. Thus, an analysis of the repairs to the coolant thermostat,

2   vacuum pump, and coolant pump today would determine that the price of each of the repairs

3   exceeds the high-priced cost threshold.

4          105.   Similarly, MBUSA cannot credibly argue that it incorrectly estimated the

5   replacement costs of the coolant thermostat, vacuum pump, or coolant pump as an explanation

6   for why MBUSA wrongfully failed to conclude that these were high-priced emissions warranty

7   parts. Varying designs of coolant thermostats, vacuum pumps, and coolant pumps are used in

8   virtually every vehicle sold and leased in the United States. The repair protocols are equally

9   common. Although the actual parts and repair protocols for each different vehicle do have some

10  unique aspects, these are very common parts. Furthermore, the actual consumer cost to repair

11  the coolant thermostat, vacuum pump and coolant pump for the Class Vehicles is hundreds of

12  dollars above the threshold. And the parts are clearly emissions related parts. Finally, even now,

13  MBUSA only acknowledges the coolant thermostat as being a high-priced emissions related

14  part.

15         106.   On September 10, 2019, pursuant to California Civil Code Section 1782, counsel

16  for Plaintiff sent MBUSA a letter, notifying MBUSA in writing of Plaintiff's claims under the

17  Consumers Legal Remedies Act relating to said MBUSA warranty concealment. Said letter

18  provided MBUSA with an opportunity to take actions to remedy said unlawful practices.

19  Specifically, the letter indicated that MBUSA wrongfully failed to identify the vacuum pump,

20  coolant pump, and coolant thermostat relating to the Vehicle as being high-priced emissions

21  parts, having a 7-year 70,000-mile California emissions warranty, and failed to provide said

22  coverage.

23         107.   On November 12, 2019, MBUSA's counsel sent a letter in response, indicating in

24  essence that MBUSA had done nothing wrong, and refusing to take any corrective action.

25         108.   By failing to provide a 7-year 70,000-mile warranty for the coolant thermostat,

26  vacuum pump, and coolant pump, MBUSA violated the UCL and CLRA.

27                     **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

28         109.   Plaintiff re-alleges and incorporates by reference each allegation set forth above.

110.    Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure

Rules 23(a), (b)(2) and (b)(3) on behalf of herself and members of the Classes as defined below.

111.    Excluded from the Classes are Defendant, and its subsidiaries and affiliates; its

current and former officers, directors, and employees (and members of their immediate

families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

112.    All claims alleged on behalf of Plaintiff and members of the Classes herein arise

under California law for which Plaintiff seeks relief authorized by California law.

113.    Plaintiff's proposed Thermostat Class consists of and is defined as follows:

> All persons in California who, within the last four years, have been
> owners or lessees of Mercedes C Class vehicles MY2015-2016 and
> who have paid for repairs and parts for the thermostat, which should
> have been covered under the 7-year 70,000 mile California "high-
> priced" emissions warranty (the "Thermostat Class").

114.    Plaintiff's proposed Vacuum Pump Class consists of and is defined as follows:

> All persons in California who, within the last four years, have been
> owners or lessees of Mercedes C Class vehicles MY2015-2018 and
> who have paid for repairs and parts for the vacuum pump, which
> should have been covered under the 7-year 70,000 mile California
> "high-priced" emissions warranty (the "Vacuum Pump Class").

115.    Plaintiff's proposed Coolant Pump Class consists of and is defined as follows:

> All persons in California who, within the last four years, have been
> owners or lessees of Mercedes C Class vehicles MY2015-2018 and
> who have paid for repairs and parts for the coolant pump, which
> should have been covered under the 7-year 70,000 mile California
> "high-priced" emissions warranty (the "Coolant Pump Class").

116.    On behalf of the Classes, Plaintiff seeks injunctive relief requiring MBUSA to

identify all of the parts or components that should have been, and that should be, properly

covered under the 7-year and 70,000-mile California Emissions Warranty.

117.    On behalf of the Classes, Plaintiff also seeks reimbursement for the money

wrongfully paid by Plaintiff and members of the Classes relating to repairs that should have

been covered by MBUSA under the 7-year and 70,000-mile California Emissions Warranty

during the Class periods.

118.   Plaintiff reserves the right to redefine the Classes and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

119.   Plaintiff reserves the right, based on further investigation and discovery, to redefine or expand the Classes and/or to add subclasses to include other high-priced warranted parts. Further, per the terms of the warranty book, the "California Emission System Warranties apply to vehicles registered in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, Oregon, Pennsylvania, Rhode Island, Vermont, and Washington." Therefore, Plaintiff reserves the right to expand the Class or subclass to include the same parts on vehicles registered in states other than California.

120.   As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to the Classes, and those common questions predominate over any questions affecting only individual members. Among the common questions of law and fact include:

(a)   Whether MBUSA has failed, and is failing, to comply with the High-Cost Emissions-Related Parts Warranty by failing to provide a 7-year and 70,000-mile California emissions warranty for the vacuum pump, coolant pump, coolant thermostat and/or all parts that should be defined by MBUSA as high-priced warranted parts pursuant to the CCR.

(b)   Whether MBUSA has failed, and is failing, to identify for consumers and dealerships the vacuum pump, coolant pump, coolant thermostat and/or all parts that should be identified as high-priced warranted parts, and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(c)   Whether MBUSA has engaged in, and is engaging in, a systematic business practice of intentionally failing to identify the vacuum pump, coolant pump, coolant thermostat and/or all parts that should be identified as high-priced warranted parts and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty under the CCR.

(d)   Whether MBUSA has failed, and is failing, to identify the vacuum pump, coolant pump, coolant thermostat and/or all parts that should be identified as high-priced

1    warranted parts and thus covered by the 7-year and 70,000-mile California High-

2    Cost Emissions-Related Parts Warranty in an effort to reduce the amount of

3    money that MBUSA spends on warranty related repairs.

4    (e)    Whether MBUSA's conduct of failing to identify the vacuum pump, coolant

5    pump, coolant thermostat and/or all parts that should be identified as high-priced

6    warranted parts and thus covered by the 7-year and 70,000-mile California High-

7    Cost Emissions-Related Parts Warranty results in consumers suffering financial

8    loss.

9    (f)    Whether MBUSA's conduct of failing to identify the vacuum pump, coolant

10   pump, coolant thermostat and/or all parts that should be identified as high-priced

11   warranted parts and thus covered by the 7-year and 70,000 mile California High-

12   Cost Emissions-Related Parts Warranty results in wrongfully minimizing the

13   amount of money that MBUSA has to pay out in warranty claims.

14   (g)    Whether MBUSA's conduct of failing to identify the vacuum pump, coolant

15   pump, coolant thermostat and/or all parts that should be identified as high-priced

16   warranted parts and thus covered by the 7-year and 70,000-mile California High-

17   Cost Emissions-Related Parts Warranty violates California law.

18   (h)    Whether MBUSA has engaged in, and is engaging in, unlawful and unfair

19   business practices in violation of California Business & Professions Code section

20   17200, *et seq.* with regard to MBUSA's failure to identify the vacuum pump,

21   coolant pump, coolant thermostat and/or all of the high-priced warranted parts

22   that should be covered by the 7-year and 70,000-mile California High-Cost

23   Emissions-Related Parts Warranty.

24   (i)    Whether Plaintiff and members of the Classes are entitled to injunctive relief

25   regarding MBUSA's failure to identify the vacuum pump, coolant pump, coolant

26   thermostat and/or all of the high-priced warranted parts that should be covered by

27   the 7-year and 70,000-mile California High-Cost Emissions-Related Parts

28   Warranty.

(j)     The appropriate amount of restitution, or monetary penalties resulting from MBUSA's violations of California law.

(k)     Whether MBUSA has engaged in, and is engaging, in concealment relating to MBUSA's failure to identify the vacuum pump, coolant pump, coolant thermostat and/or all of the high-priced warranted parts that should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(l)     Whether MBUSA has violated and is violating the Consumers Legal Remedies Act, Civil Code section 1750, *et seq*., with regard to MBUSA's failure to identify the vacuum pump, coolant pump, coolant thermostat and/or all of the high-priced warranted parts which should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty.

121.    <u>Numerosity</u>: As required by Fed. R. Civ. P. 23(a)(1), the members of the Classes are so numerous that joinder of all members of the Classes would be unfeasible and impractical, and the resolutions of their claims through the procedure of a class action will be of benefit to the Parties and the Court. The membership of the Classes is unknown to Plaintiff at this time; however, the membership of the Classes is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

122.    <u>Typicality</u>: As required by Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of all members of the Classes since Plaintiff and all members of the Classes suffered damages as result of Defendant's concealment and wrongful conduct set forth herein.

123.    <u>Adequacy</u>: As required by Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and adequately protect the interests of the members of the Classes. Plaintiff has no interests adverse or antagonistic to those of the Classes and has retained counsel competent and experienced in class action litigation who will zealously prosecute this matter on behalf of the Classes to its conclusion

124.     Superiority: As required by Fed. R. Civ. P. 23(b)(3), the nature of this action makes the use of class action adjudication superior to other methods. A class action will achieve economies of time, effort, and expense as compared with separate lawsuits, and will avoid inconsistent outcomes because the same issues can be adjudicated in the same manner and at the same time for the entire class.

125.     Defendant keeps extensive computerized records of its customers. Defendant has one or more databases through which a significant majority of members of the Classes may be identified and ascertained, and it maintains contact information, including email and home mailing addresses, through which notice of this action could be disseminated in accordance with due process requirements.

126.     Class certification of Plaintiff's claims is also appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to Plaintiff and members of the Classes, making appropriate both declaratory and injunctive relief with respect to Plaintiff and members of the Classes.

## TOLLING OF THE STATUTE OF LIMITATIONS

127.     MBUSA has actively engaged in misleading, and dishonest conduct relating to its failure to properly identify all of the parts that should be identified as high-priced warranted parts covered under the 7-year and 70,000-mile California emissions warranty. Despite acting diligently, Plaintiff and members of the Classes cannot be reasonably expected on their own to learn or discover what parts and repairs should be identified as high-priced and covered under the 7-year and 70,000-mile California emissions warranty. Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and members of the Classes, and the statute of limitations for bringing the claims set forth herein should be tolled.

128.     MBUSA has actual and constructive knowledge that it is violating California law by failing to identify all of the parts that should be identified as high-priced warranted parts, and by failing to provide a 7-year and 70,000 mile California emissions warranty relating to said parts. MBUSA has concealed from Plaintiff and members of the Classes that MBUSA is violating California law as set forth herein.

129.   Any applicable statute of limitation is tolled by MBUSA's knowledge, active concealment, and wrongful conduct set forth herein. MBUSA is further estopped from relying on any statute of limitation because of its concealment set forth herein.

### FIRST CLAIM FOR RELIEF

### Violation of California Unfair Competition Law

### (Cal. Bus. & Prof. Code § 17200, *et seq.*)

130.   Plaintiff re-alleges and incorporates by reference each allegation set forth above.

131.   California Business and Professions Code section 17200, *et seq.* (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." MBUSA has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

132.   The UCL imposes strict liability. Plaintiff need not prove that MBUSA intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

133.   MBUSA is a "person" as defined by Business & Professions Code § 17201.

134.   As a direct and proximate result of MBUSA's acts and practices in violation of the UCL, Plaintiff and members of the Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

### Unlawful Prong

135.   A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including standard of professional conduct. The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

136.   MBUSA failed to comply with the California Emissions Warranty requirements pursuant to the CCR by failing to provide 7-year and 70,000-mile warranty coverage for the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, and the coolant pumps installed in the Coolant Pump Class Vehicles. The California Emissions Warranty applies to all Class Vehicles. 13 CCR 2037(a). Pursuant thereto, manufacturers shall warrant that vehicles conform with the California Air

Resources Board regulations, and are free from defects which cause the failure of a warranted part to perform as described in the application for certification, including defects which would cause the vehicle's on-board diagnostic malfunction indicator to illuminate, for 3 years or 50,000 miles. 13 CCR 2037(b)(1)-(2). The vehicle manufacturer is MBUSA, which is the manufacturer granted certification for the Class Vehicles. 13 CCR 2035(c)(5). The parts at issue are all warranted parts. The warranty period shall be 7- years and 70,000 miles for high-priced emissions parts. 13 CCR 2037(b)(3). High-cost emissions parts are those parts which, when taking into consideration the cost to diagnose, replace and pay for the failed part, exceed the cost limit defined in 13 CCR 2037(c)(3). The California Air Resources Board published memos which calculated the cost limit for years 2015, 2016, 2017, and 2018. Although the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, and the coolant pumps installed in the Coolant Pump Class Vehicles exceeded the cost limit for years 2015, 2016, 2017, and 2018, MBUSA failed to provide 7-year and 70,000-mile warranty coverage for said parts. The failure has resulted in damage to Plaintiff and members of the Classes.

137.    Moreover, while Plaintiff does not yet know the specific information that MBUSA did or did not provide to CARB with respect to the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, or the coolant pumps installed in the Coolant Pump Class Vehicles, on information and belief, MBUSA did not designate the parts as high-priced warranted parts that should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty. Thereby, MBUSA also was able to avoid identifying the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, and the coolant pumps installed in the Coolant Pump Class Vehicles, as being high-priced warranted parts in the warranty books for the Class vehicles, which purport to identify all parts covered under the high-priced California emissions warranty for 7-year and 70,000-mile California emissions warranty coverage. Thus, MBUSA's violation of Section 2037(c)(1)(B) directly affected communications with consumers. By violating Section 2037(c)(1)(B), MBUSA was

1    able to avoid disclosing in the warranty books all of the parts that should have been included as

2    high-priced warranted parts.

3        138.    MBUSA's conduct also violates the unlawful prong in that MBUSA has violated

4    the CLRA as further alleged below.

5        139.    MBUSA's acts of unlawful competition as set forth above present a continuing

6    threat and will persist and continue to do so unless and until this Court issues appropriate

7    injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P.

8    Section 1021.5.

9                                    **Unfair Prong**

10       140.    MBUSA's conduct violates the unfair prong of the UCL.

11       141.    An act or practice is unfair if the consumer injury is substantial, is not

12   outweighed by any countervailing benefits to consumers or to competition and is not an injury

13   the consumers themselves could reasonably have avoided. An act or practice also is unfair if it

14   offends an established public policy or is immoral, unethical, oppressive, unscrupulous or

15   substantially injurious to consumers. An act or practice also is unfair if Plaintiff's claims are

16   "tethered" to specific constitutional, statutory or regulatory provisions. MBUSA's conduct

17   violates all of these definitions.

18       142.    As alleged above, MBUSA engages and has engaged in a systematic business

19   practice of intentionally failing to identify in the Class Vehicles' warranty book at the time of

20   distribution, and in resources provided to its dealerships, numerous parts that MBUSA is

21   obligated to identify as high-priced warranted parts by operation of law, including specifically

22   the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed

23   in the Vacuum Pump Class Vehicles, and the coolant pumps installed in the Coolant Pump

24   Class Vehicles. MBUSA does this in an effort to reduce the amount of money that MBUSA

25   spends on warranty-related repairs knowing that it would be very difficult if not impossible for

26   most consumers to discover this unlawful conduct. If MBUSA complied with California law

27   and properly identified all of the parts that should be identified as high-priced warranted parts,

28

then MBUSA dealerships would properly provide warranty coverage for said high-priced warranted parts.

143.    Further, MBUSA's conduct is unfair because it intentionally refuses to provide warranty coverage for the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, and the coolant pumps installed in the Coolant Pump Class Vehicles for the sole purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is being forced to pay for repairs which should be covered under the 7-year and 70,000-mile California emissions warranty. Plaintiff and members of the Classes have suffered injury in fact and lost money or property as a result of MBUSA's unfair business acts and practices as set forth in detail.

144.    MBUSA's failure to properly identify the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, and the coolant pumps installed in the Coolant Pump Class Vehicles , and/or all parts as high-priced warranted parts that should be identified as such, is a uniform, systematic, and intentional business practice on the part of MBUSA to minimize the amount of money that MBUSA has to pay out in warranty claims. This conduct violates California law.

145.    As a direct and proximate result of MBUSA's acts and practices in violation of the UCL, Plaintiff and members of the Classes have paid out of pocket to repair or replace the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, and the coolant pumps installed in the Coolant Pump Class Vehicles, and/or other high-priced warranted parts that should have been covered by MBUSA under the 7-year and 70,000-mile California emissions warranty. As a result, consumers have been forced to pay out of pocket to repair or replace vehicle components that should be covered under warranty is clearly unfair.

146.    MBUSA's conduct does not benefit consumers or competition. Plaintiff and members of the Classes could not reasonably avoid the injury each of them suffered or will suffer, which injury is substantial. MBUSA's conduct only benefits MBUSA, by MBUSA

1   wrongfully avoiding having to pay warranty claims which should be covered by the 7-year and

2   70,000-mile California emissions warranty.

3          147.    The gravity of the consequences of MBUSA's conduct as described above

4   outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous.

5          148.    MBUSA's conduct also offends established public policy that is tethered to

6   legislatively declared policies as set forth in the laws detailed above, including California laws

7   and regulations regarding California's Emission Control System Warranty Requirements, or is

8   substantially injurious to the public, for the reasons set forth above.

9          149.    To the extent that any definition of "unfair" requires a balancing test or weighing

10  various factors, such an inquiry is fact intensive and requires a full factual record as to

11  MBUSA's justification and motives for its conduct, and as to the impact of MBUSA's conduct

12  on Plaintiff and members of the Classes.

13         150.    MBUSA's acts of unfair competition as set forth above present a continuing

14  threat and will persist and continue to do so unless and until this Court issues appropriate

15  injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. §

16  1021.5.

17                              **Deceptive Prong**

18         151.    Plaintiff's claim under this prong is predicated on omissions, not

19  misrepresentations. While the warranty booklet for Class Vehicles claims to identify all of the

20  parts covered under the 7-year and 70,000-mile California emissions warranty, the warranty

21  book omits the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum

22  pumps installed in the Vacuum Pump Class Vehicles, and the coolant pumps installed in the

23  Coolant Pump Class Vehicles as parts that that should have been listed as covered by the 7-year

24  and 70,000-mile high-priced emissions warranty.

25         152.    MBUSA engages in a uniform and systematic business practice of intentionally

26  failing to identify in the MBUSA warranty book, and in resources provided to its dealerships,

27  the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed

28  in the Vacuum Pump Class Vehicles, and the coolant pumps installed in the Coolant Pump

Class Vehicles as high-priced warranted parts. MBUSA does this in an effort to intentionally conceal the identity of the parts which should be covered under the 7-year and 70,000-mile California emissions warranty for high-priced emissions parts. This has intentionally misled consumers with regard to what parts are covered under the 7-year and 70,000-mile California emissions warranty for high-priced parts, and reduced the amount of money that MBUSA spends on warranty-related repairs. As warranted parts necessary for the operation of the vehicles, the parts that MBUSA failed to properly identify as high-priced relate to the central functionality of the vehicles and are critical to the vehicles' operation. If MBUSA complied with California law, and properly identified all parts as high-priced warranted parts which should be identified as such, then MBUSA dealerships would properly provide warranty coverage for said high-priced warranted parts.

153.    MBUSA's failure to properly identify the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, and the coolant pumps installed in the Coolant Pump Class Vehicles as high-priced warranted parts is a systematic and intentional business practice on the part of MBUSA to minimize the amount of money that MBUSA has to pay out in warranty claims. This conduct violates California law.

154.    Said conduct is likely to deceive an ordinary consumer as MBUSA concealed this information from consumers and from MBUSA's dealerships, in an effort by MBUSA to minimize the amount of money that MBUSA has to pay out in warranty claims. One of the ways MBUSA misleads consumers relates to the information that MBUSA provides to consumers in the MBUSA warranty book. MBUSA intentionally omits information from the warranty book by intentionally failing to classify all of the high-priced warranted parts as parts that should be covered under the 7-year and 70,000-mile California emissions warranty.

155.    In evaluating the repair costs to be charged, Plaintiff and members of the Classes have justifiably relied on the information in the warranty booklet about parts that should be covered under the high-priced emissions warranty and have been deceived and suffered damage as a result of MBUSA's intentional and wrongful conduct.

156.    MBUSA is fully aware of its obligations pursuant to the CCR and purports to comply with them. However, in derogation if its legal obligations, MBUSA willfully and intentionally conceals from consumers, and from the MBUSA dealerships, the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, and the coolant pumps installed in the Coolant Pump Class Vehicles as parts that should be covered as high-priced warranted parts pursuant to the California emissions warranty, in order to reduce the amount of money that MBUSA has to pay in warranty claims.

157.    MBUSA is and was under a duty to disclose to consumers and to its dealerships that the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, and the coolant pumps installed in the Coolant Pump Class Vehicles, and/or all the other parts are required to be covered under the 7-year and 70,000-mile California emissions warranty.

158.    MBUSA is and was further under a duty to disclose to consumers and to its dealerships all of the parts which it is required to cover under the 7-year and 70,000-mile California emissions warranty because:

(1)    MBUSA is and was in a superior position to know the true state of facts about the duration of the 7-year and 70,000-mile California emissions warranty and which parts should be covered as high-priced warranted parts;

(2)    MBUSA has made partial disclosures about the extent of the 7-year and 70,000-mile California emissions warranty;

(3)    MBUSA has actively concealed and failed to identify all of the parts that are covered under the 7-year and 70,000-mile California emissions warranty; and,

(4)    Members of the Classes, including Plaintiff, have suffered actual loss due to MBUSA's concealment and false representations.

159.    The facts concealed and not disclosed by MBUSA to Plaintiff and members of the Classes are material. Had Plaintiff and members of the Classes known the true extent of the 7-year and 70,000 -California emissions warranty, and had MBUSA been truthful to its

1  dealerships and members of the Classes with regard to identifying all of the parts and repairs

2  that are covered under the 7-year and 70,000-mile California emissions warranty, Plaintiff and

3  members of the Classes would have been able to avoid spending money in order to repair

4  MBUSA vehicles sold and leased in California. As a result, Plaintiff and members of the

5  Classes have suffered damage.

6      160.    In order to minimize the amount of money that MBUSA spends on warranty

7  related repairs, MBUSA continues to conceal that the coolant thermostats installed in the

8  Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles,

9  and the coolant pumps installed in the Coolant Pump Class Vehicles are high-priced warranted

10  parts that should be covered under the 7-year and 70,000-mile California emissions warranty.

11      161.    Furthermore, MBUSA has refused to, and continues to refuse to provide 7-year

12  and 70,000-mile California emissions warranty coverage relating to all repairs for the coolant

13  thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the

14  Vacuum Pump Class Vehicles, and the coolant pumps installed in the Coolant Pump Class

15  Vehicles which should be covered under said warranty pursuant to California law. This refusal

16  is intentional, willful, unfair, and unlawful.

17                          **SECOND CLAIM FOR RELIEF**

18              **Violation of California Consumers Legal Remedies Act**

19                      **(Cal. Civil Code § 1750, *et seq*.)**

20      162.    Plaintiff re-alleges and incorporates by reference each allegation set forth above.

21      163.    MBUSA has violated Section 1770 of the California Consumers Legal Remedies

22  Act, Cal. Civ. Code Section 1750, *et seq*. (the "CLRA"). The violation results from MBUSA's

23  failure to keep its promise to the State of California, and members of the Classes, including

24  Plaintiff, that it would honor the terms of the MBUSA warranty, and by doing so, that it would

25  honor the terms of the CCR. Furthermore, the MBUSA warranty book provided by MBUSA to

26  consumers, including Plaintiff, specifically references the California emissions warranty, and

27  both inferentially and specifically represents that it will honor the terms of the CCR, however

28  MBUSA has refused, and continues to refuse to honor the terms of the CCR, as stated herein.

164.    Plaintiff is a consumer who was wrongfully required to pay for repairs which should have been paid for by MBUSA pursuant to the CCR. The Vehicle was presented by Plaintiff for repairs at MBUSA authorized repair facilities, in compliance with the terms and conditions of the MBUSA warranty. The Vehicle required repairs which should have been covered pursuant to the CCR, based upon the Vehicle's mileage and age. MBUSA wrongfully failed and refused to pay for the warranty repairs due to the unlawful pattern and practice set forth herein. Thus, Plaintiff suffered damage.

165.    MBUSA knows that it is violating the terms of the CCR, however MBUSA intentionally violates the CCR in order to save money. Plaintiff and members of the Classes are generally unaware of the terms and scope of the CCR, thus MBUSA is able to get away with said wrongful conduct. As a result, Plaintiff and members of the Classes have suffered damage. MBUSA engages in a systemic pattern of denying warranty claims under the CCR relating to high-priced warranted parts.

166.    Plaintiff and members of the Classes have presented Class Vehicles to MBUSA authorized repair facilities for repairs that should have been covered under the CCR, but coverage has been wrongfully denied to them. As a result, Plaintiff and members of the Classes have thus suffered damage. Plaintiff brings this claim on behalf of himself and the Classes.

167.    MBUSA's conduct in warranting, advertising, leasing, selling and distributing Class Vehicles in the State of California, while at the same time knowingly and wrongfully failing to honor the terms of the CCR, constitutes the following violations of Section 1770:

(a)    MBUSA represents and has represented that Class Vehicles sold and leased in the State of California have characteristics or benefits which they did not have (in violation of Section 1770(a)(5));

(b)    MBUSA has falsely represented that Class Vehicles sold and leased in the State of California were of a particular standard, quality, or grade when they were of another (in violation of Section 1770(a)(7)); and,

(c)     MBUSA advertised Class Vehicles that have been sold and leased in the State of California with the intent not to sell them as advertised (in violation of Section 1770(a)(9)).

168.    Civil Code section 1780(a) provides that any consumer who suffers damage as a result of a violation of the CLRA may bring an action to recover: 1) actual damages, but in no case shall the total award of damages in a class action be less than $1,000; 2) an order enjoining the methods, acts, or practices; 3) restitution of property; 4) punitive damages; and 5) any other relief that the court deems proper.

169.    Civil Code section 1781 provides that Plaintiff may pursue this case as a class action.

170.    Plaintiff requests injunctive relief pursuant to Civil Code 1782(d).

171.    Plaintiff is entitled to attorney fees pursuant to Civil Code section 1780(e).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against MBUSA as follows:

(a)     An order certifying the proposed Classes, designating Plaintiff as named representative of the Classes, and designating the Plaintiff's Counsel as Class Counsel;

(b)     A declaration that MBUSA is financially responsible for notifying all members of the Classes about the wrongful conduct set forth herein;

(c)     An order enjoining MBUSA from further deceptive distribution, sales, and lease practices, and to reimburse both Plaintiff and members of the Classes for the money wrongfully paid by Plaintiff and members of the Classes relating to repairs which should have been covered by MBUSA under the 7-year and 70,000-mile California emissions warranty;

(d)     An award to Plaintiff and members of the Classes of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(e)     An award to Plaintiff and members of the Classes of any repair costs they are owed;

(f)     A declaration that MBUSA must disgorge, for the benefit of the Classes, all or

part of the ill-gotten profits it received as a result of the wrongful conduct set forth herein, or make full restitution to Plaintiff and members of the Classes;

(g)     An award of attorneys' fees and costs, as allowed by law;

(h)     An award of attorneys' fees and costs pursuant to California Code of Civil Procedure § 1021.5;

(i)     An award of pre-judgment and post-judgment interest;

(j)     Leave to amend the Complaint to conform to the evidence produced at trial; and

(k)     Other relief as may be appropriate under the circumstances.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiff hereby demands a trial by jury as to all claims so triable.


Dated: June 15, 2020                          Respectfully submitted,

                                              **POMERANTZ LLP**
                                              **THE LAW OFFICE OF ROBERT STARR**


                                       By: _____
                                              Jordan L. Lurie
                                              Ari Y. Basser

                                              *Attorneys for Plaintiff*