**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY HAZDOVAC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MERCEDES BENZ USA, LLC, and DOES MBUSA 1 through 10, inclusive,<br><br>Defendants. | Case No. 20-cv-00377-RS<br><br>__CLASS ACTION__<br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION 17200,** *et seq.*<br><br>**(2) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1770,** *et seq.*<br><br><br>__JURY TRIAL DEMANDED__ |

Plaintiff Cory Hazdovac ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, brings this action against Defendant Mercedes-Benz USA, LLC ("Defendant" or "MBUSA"), and upon information and belief, except as to her own actions, the investigation of her counsel, and facts that are a matter of public record, alleges as follows:

**INTRODUCTION**

1.     This class action arises out of MBUSA's failure to accurately and comprehensively identify all of the Mercedes vehicle parts, including Mercedes C300 vehicle parts, that should properly be classified as "high-cost emissions warranty parts" under California's emissions warranty requirements and covered under the Emissions Warranty for 7 years and 70,000 miles.

2.     In an effort to minimize MBUSA's warranty costs, MBUSA has unilaterally and unlawfully limited the parts that it designates as high-cost emissions warranty parts, in order to limit the parts for which it provides 7-year and 70,000-mile coverage.

3.     By not identifying all of the parts that should be included as high-priced emissions warranted parts, MBUSA has attempted to wrongfully limit the warranty coverage for many emissions-related parts to MBUSA's standard 4-year and 50,000-mile warranty.

4.     Plaintiff has identified two specific vehicle parts in Mercedes C300 vehicles that should properly be classified as "high-cost emissions warranty parts" under California's emissions warranty requirements and covered under the California Emissions Warranty for 7-years and 70,000 miles: (1) the coolant thermostat (which was properly identified as a high-priced emissions part in MY 2017 and MY 2018 C300 vehicles but not in MY 2015 and MY 2016 vehicles); and (2) the vacuum pump.  Not only was the vacuum pump not identified by MBUSA as high-priced emissions part, it was not identified by MBUSA as an emissions-related part at all.

5.     As further alleged below, MBUSA's misconduct is not limited to the specific vehicle parts identified herein.  The essence of this lawsuit is that MBUSA has systemically, willfully and without justification violated its regulatory obligations under the California Emissions Warranty.  In a systemic effort to minimize MBUSA's warranty costs, MBUSA has

1 unilaterally and unlawfully failed to identify the parts installed on vehicles distributed by

2 MBUSA which should be covered by the California Emissions Warranty and failed to apply the

3 proper methodology to determine if the parts that are covered by the California Emissions

4 Warranty are high-priced, which would obligate MBUSA to provide a 7-year/70,000-mile

5 warranty for those parts.

6       6.     Plaintiff's claims focus specifically on, and are limited to, three specific

7 categories of vehicle parts subject to the California Emissions Warranty: (1) parts that MBUSA

8 identified as "emissions-related" but wrongfully failed to identify as "high-priced;" (2)

9 "emissions-related" parts identified on "Appendix B" to the California Regulations (described

10 below) but not covered by MBUSA under the California Emissions Warranty; and (3) parts

11 whose defects are identified with an emissions-related fault code that MBUSA specifically

12 reported to CARB in its "OBD2 Summaries" and that trigger illumination of the MIL but are

13 not covered by MBUSA under the California emissions warranty. While the California

14 Emissions Warranty applies to all vehicle parts that "affect regulated emissions," this litigation

15 seeks remedies for MBUSA's failure to provide coverage for the parts identified as (1) through

16 (3) of this paragraph. MBUSA's failure to properly warrant these specific parts undoubtedly

17 violates the California Emissions Warranty.

18       7.     While the Class Period alleged herein only goes back four years, the wrongful

19 conduct exposed in this lawsuit involves every vehicle that has been distributed by MBUSA

20 dating back to 2011, if not earlier, and every vehicle that MBUSA continues to distribute.

21 MBUSA has relied on self-reporting and a lack of sufficient governmental resources to allow

22 for third party oversight as a way to avoid any consequences for its wrongful conduct.

23       8.     MBUSA has limited the parts that it designates as high-priced emissions

24 warranted parts, in order to limit the parts for which it provides 7-years and 70,000-mile

25 coverage.  By not identifying all of the parts, as identified by Plaintiff, that should be included

26 as high-priced emissions warranted parts, MBUSA has wrongfully limited the warranty

27 coverage for many emissions-related parts to MBUSA's standard 4-year and 50,000-mile

28 warranty.

9.      Specifically, discovery has confirmed that MBUSA systemically has been using the wrong standard for calculating the retail labor cost in determining whether a part is a "high-priced part" under the California Code of Regulations.  Instead of using the retail labor cost *i.e.*, the number of labor hours that the *customer pays* for the repair ("customer pay"), MBUSA uses, and has always used, the number of hours that the *manufacturer pays its dealers to perform the repairs under warranty* ("warranty pay"), which is a lesser amount.   As a result, MBUSA is grossly understating the parts that are designated as high-priced warranty parts under the CCR.

10.      MBUSA also has been using the wrong standard to determine if a warranted part is "emissions-related," as detailed below.  Any vehicle part that causes the MIL to illuminate and/or affects regulated emissions is an emissions related part under the California emissions law.  This is not the standard that MBUSA has been using.

11.      As a result of MBUSA grossly understating the parts that are designated as high-price warranty parts, and by MBUSA using the wrong standard to determine if a warranted part is "emissions-related," MBUSA has violated the California Emissions Warranty.

12.      By this action, Plaintiff primarily seeks an order declaring that MBUSA's current and past practices with respect to the parts as described herein do not comply with the CCRs and with the California Emissions Warranty and an injunction to remedy MBUSA's misconduct.

**JURISDICTION AND VENUE**

13.      This Court has removal jurisdiction over this action pursuant to 28 U.S.C. § 1441 and § 1332(d)(2)(A). Members of the Classes are citizens of a state different from that of Defendant MBUSA and aggregating the claims of individual members of the Classes, the total amount in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) MBUSA is not a state, state official, or other governmental entity against whom the Court may be foreclosed from ordering relief, and (ii) the number of members of the Classes in the aggregate exceeds 100.

14.      This Court has personal jurisdiction over Defendant because Defendant has sufficient minimum contacts with California, having intentionally availed itself of the California market so as to render the exercise of jurisdiction over it by this District Court

consistent with traditional notions of fair play and substantial justice. Further, by removing this action to this Court, Defendant concedes personal jurisdiction.

15.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant conducts business within the State of California and a substantial part of the events giving rise to the claims alleged herein occurred in this District.

**PARTIES**

16.     Plaintiff Cory Hazdovac is, and at all times relevant hereto has been, a resident and citizen of the State of California, County of Kern.

17.     MBUSA was and is, upon information and belief, a Delaware limited liability company doing business in California.

18.     The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.

19.     Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of MBUSA at all relevant times.

20.     Plaintiff is informed and believes, and on that basis alleges that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained, as may be necessary. Each reference in this Complaint to "MBUSA" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

21.     Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

///

///

1

**BACKGROUND**

2          22.     For decades, MBUSA has been in the business of importing and distributing

3    MBUSA vehicles in the State of California, with the intent of its MBUSA dealerships selling

4    and leasing MBUSA vehicles to consumers in the State of California. Thus, MBUSA vehicles

5    have been subject to California state and federal regulations regarding emissions standards and

6    regarding MBUSA's obligation to provide consumers with warranties relating to emissions

7    parts.

8          23.     Specifically, dating back over 20 years, California Code of Regulations, Title 13,

9    Section 2035, *et seq*., entitled "Emission Control System Warranty Requirements for 1990 and

10   Subsequent Model Year Passenger Car, Light-Trucks, and Medium-Duty Vehicles and Engines

11   ("the CCR") has required MBUSA to identify to the California Air Resources Board ("CARB")

12   all the vehicle parts that are "high-priced" "warranted parts" and has required MBUSA to

13   provide a 7-year and 70,000-mile warranty to California consumers relating to all "high-priced"

14   "warranted parts." This provision is sometimes referred to as the "High-Cost Emissions-Related

15   Parts Warranty" or the "California Emission Control System Warranty."

16         24.     The CCR very clearly defines the methodology that MBUSA is required to use in

17   order to identify which parts should be covered by the 7-year and 70,000-mile warranty.

18         25.     Pursuant CCR Section 2035, with regard to 1990 and subsequent model year

19   vehicles, a warranted part is defined as any part installed on a motor vehicle or motor vehicle

20   engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects

21   any regulated emission from a motor vehicle or engine which is subject to California emission

22   standards.

23         26.     Furthermore, CCR Section 2037(b) states: "The manufacturer of each motor

24   vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent

25   purchaser that the vehicle or engine is:

26         (1)     Designed, built, and equipped so as to conform with all applicable regulations

27                 adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2,

28                 part 5, division 26 of the Health and Safety Code;

(2)     Free from defects in materials and workmanship which cause the failure of a warranted part to be identical in all material respects to the part as described in the vehicle or engine manufacturer's application for certification, including any defect in materials or workmanship which would cause the vehicle's on-board diagnostic malfunction indicator light to illuminate, for a period of three years or 50,000 miles, whichever first occurs; and,

(3)     Free from defects in materials and workmanship which cause the failure of a warranted part described in section (c) below for seven years or 70,000 miles, whichever first occurs."

27.     California Code of Regulations Section 2037(c) deals with high-priced warranted parts under the California Emission Control System Warranty and states:

(1)     Each manufacturer shall identify in its application for certification the high-priced warranted parts which are:

(a)     For 1990 through 2007 model year vehicles: [i] included on the Board's "Emissions Warranty Parts List" as last amended February 22, 1985, incorporated herein by reference, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3);

(b)     For 2008 and subsequent model year vehicles: [i] subject to coverage as a warranted part in section (b)(2) above, and; [ii] have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3).

(2)     The replacement cost shall be the retail cost to a vehicle owner and include the cost of the part, labor, and standard diagnosis. The costs shall be those of the highest-cost metropolitan area of California.

(3)     The cost limit shall be calculated using the following equation:

Cost limit {n)} = $300 x (CPI{n-2]}/ 118.3

1   Cost limit {n} is the cost limit for the applicable model year of the vehicle

2   rounded to the nearest ten dollars.

3   28.   In summary, any part that either effects a vehicle's emissions, or causes a

4   vehicle's on-board diagnostic malfunction indicator light to illuminate is, for the purpose of

5   determining coverage under the CCR, considered a warranted part. If a part is a warranted part,

6   the part shall have a 3-year and 50,000-mile California Emissions Warranty.

7   29.   However, if the part is a high-priced warranted part, as defined by 2037(c) of the

8   CCR, the part, the labor cost of diagnosing the part failure, and the labor cost of replacing the

9   part shall have a 7-year and 70,000-mile California Emissions Warranty pursuant to the High-

10   Cost Emissions-Related Parts Warranty.

11   **CARB DECLARATION**

12   30.   CARB has provided a Declaration from Allen Lyons, Chief of the Emissions

13   Certification and Compliance Division of CARB regarding the California Emissions Warranty

14   (the "CARB Declaration") "for the sole purpose of educating the Courts about CARB's

15   interpretation and implementation of California's warranty requirements." The CARB

16   Declaration sets forth CARB's interpretation of certain of the foregoing CCR provisions,

17   including how to define a "warranted part" for purposes of the California Emissions Warranty

18   and how to properly determine whether an emissions part is also a "high-priced emissions part"

19   entitled to extended warranty coverage for 7 years and 70,000 miles.

20   31.   The CARB Declaration states, in relevant part, that "warranted parts" under the

21   California Emissions Warranty "include any components that can or are required to illuminate

22   the OBD Malfunction Indicator Light (MIL) in the event of a malfunction, even if the primary

23   function of the component is not emission control, within the warranty period. (Cal. Code Regs.,

24   tit. 13, § 2037, subd. (b)(2).) The MIL is a light located on the driver's side instrument panel

25   that, when illuminated, is amber in color and displays "Check Engine/Powertrain," "Service

26   Engine/Powertrain Soon," or the International Standards Organization (ISO) engine symbol; the

27   MIL illuminates to notify the driver of detected malfunctions of OBD-monitored emissions

28   systems on the vehicle. (Cal. Code Regs., tit. 13, § 1968.2, subds. (a), (d)(2.1.1) & (2.2.).)"

32.     The CARB Declaration further provides that "When calculating the cost of labor portion of the replacement cost equation, in order to determine if a part is a "high-priced" warranted part for the purposes of California Code of Regulations, title 13, section 2037, subdivision (c), manufacturers first calculate the amount of time it would take to diagnose and repair or replace the part (the labor hours). A dollar amount is then attributed to the number of labor hours to come up with a cost of labor for each part. In doing this, manufacturers should use the labor hours and associated costs that would be charged to consumers to perform any required diagnosis and repairs to or replacement of the part, not the labor hours that manufacturers' service dealerships are allowed to charge manufacturers."

33.     As further alleged below, MBUSA has systemically failed to follow the foregoing methodology. MBUSA's failure reaches far beyond the thermostat and vacuum pump in the Class Vehicles and pertains to all of the vehicle models distributed by MBUSA.  MBUSA has engaged in a custom and practice of completely disregarding its obligations under the CCRs with respect to the California Emissions Warranty.

34.     Specifically, Defendant has an obligation under the California Emissions Warranty to identify all emissions-related vehicle components for which there should be warranty coverage.   As a custom and practice, MBUSA has interpreted this obligation too narrowly, resulting in MBUSA wrongfully failing to identify numerous vehicle components as emissions-related vehicle components under the California Emissions Warranty. The CARB Declaration also clarifies the standard for determining whether a warranted part is emissions-related.  According to CARB, as set forth above, any vehicle part that causes the MIL to illuminate and/or affects regulated emissions is an emissions-related part under the California Emissions Warranty law.  This is not the standard that MBUSA has been using.

35.     Based on the CARB Declaration, MBUSA is required to provide coverage for all components whose failure: (1) affects any regulated emission from a motor vehicle; and, (2) can *or* are required to illuminate the on-board diagnostic ("OBD") malfunction indicator light ("MIL"), *even if the primary function of the component is not emissions control*. The MIL is a light located on the driver's side instrument panel that, when illuminated, is amber in color and

displays "check engine/powertrain," "Service engine/powertrain soon," or the International Standards Organization ("ISO") engine symbol. The California Code of Regulations mandates that the purpose of the MIL is to notify the driver of defective malfunctions of the OBD monitored emissions systems of the vehicle; and/or failures which will cause a vehicle to fail a smog test as mandated by the California Health and Safety Code.

36.     A review of the components identified by MBUSA as covered components, as produced in discovery, reveals that MBUSA as a matter of custom and practice has failed to identify as covered components all components which *can or are* required to illuminate the MIL.  Furthermore, MBUSA fails to identify all components whose failure affects a regulated emission.

37.     MBUSA has the ability to determine what component failures result in the MIL illuminating, as described below. Furthermore, California Code of Regulations Section 1968.2 specifically mandates that the MIL should not illuminate unless there is an emissions-related defect, and the regulations mandate that if a component's failure can or does cause the MIL to illuminate, coverage under the California Emissions Warranty follows. Yet, MBUSA does not provide the required coverage.

38.     The CARB Declaration also repudiates any contention by MBUSA that to be considered an "emission-related" component under the California Emissions Warranty, the component must be part of the "emissions control system."

39.     Further, as set forth above, MBUSA has an obligation to provide 7-year/70,000-mile coverage under the California Emissions Warranty for all "high-priced" emissions-related components.  MBUSA is supposed to determine if a component is high-priced by analyzing the cost to the consumer to diagnose and repair the component, including what the consumer would pay for parts and labor.

40.     As part of the certification process for a vehicle, the manufacturer determines which parts it considers to be "emissions parts" and submits a list of those parts to CARB. Section 2037(c).   At the same time, the manufacturer also identifies the parts from the emissions parts list that the manufacturer has determined, based on the cost calculation set forth

1   in the CCR, exceeds the cost limit and therefore are "high-priced" parts entitled to extended 7-

2   year/70,000-mile coverage.

3       41.     California Code of Regulations Section 2037(c)(1) states, in relevant part, that in

4   calculating whether an individual replacement cost at the time of certification exceeds the cost

5   limit, "the replacement cost shall be the *retail cost* to a vehicle owner and include the cost of the

6   part, labor, and standard diagnosis." Emphasis added.  Similarly, Section 2037(c)(2) states that

7   "the replacement cost shall be the *retail cost* to a vehicle owner and include the cost of the part,

8   labor, and standard diagnosis."  Emphasis added.

9       42.     On June 29, 2021, Plaintiff took the deposition of MBUSA's corporate designee,

10  Matthew Hill.  Among other things, the deponent testified about MBUSA's methodology for

11  calculating the retail labor cost in determining whether a part is a "high-priced part" under the

12  California Code of Regulations.

13      43.     Mr. Hill's deposition confirmed that MBUSA does not use, and has never used,

14  the retail labor cost *i.e.*, the number of labor hours that the *customer pays* for the repair

15  ("customer pay").  Instead, MBUSA incorrectly uses the number of hours that the *manufacturer*

16  *pays its dealers to perform the repairs under warranty* ("warranty pay").  MBUSA is using the

17  wrong standard and, in so doing, is failing to the comply with the express terms of the CCR.

18  Mr. Hill further confirmed that there are reliable sources of information available to determine

19  how many hours a customer is charged versus how many hours MBUSA is charged by factory

20  authorized repair facilities, that consumers are always charged more hours than MBUSA for

21  repairs, and that MBUSA's position is that it is irrelevant for the purpose of conducting pricing

22  analysis to determine the amount of hours a consumer is charged.

23      44.     As the CARB Declaration confirms, when calculating the retail cost of labor

24  portion of the replacement cost equation, in order to determine if a part is a "high-priced"

25  warranted part for the purposes of complying with the California Code of Regulations,

26  "*manufacturers should use the labor hours and associated costs that would be charged to*

27  *consumers to perform any required diagnosis and repairs to or replacement of the part, not the*

28  *labor hours that manufacturers' service dealerships are allowed to charge manufacturers*."

This is also consistent with the language in the CCRs which states that the "the replacement cost shall be the *retail cost* to a vehicle owner and include the cost of the part, labor, and standard diagnosis."

45.    Indeed, documents produced by CARB in this case have confirmed that MBUSA failed to correctly identify *other* parts as high-priced warranted parts, in addition to those specifically identified by Plaintiff.

46.    For example, as recently as November 6, 2020, in CARB's efforts to respond to the subpoena in this litigation, CARB concluded that "There are no coolant thermostat, vacuum pump or in the EWIR. *By checking the list of components in the EWIR, it appears some components definitely incorrectly labeled as low cost part (e.g., piston, cylinder head gasket.)*" CARB 019187.  Emphasis added.  Furthermore, an email sent by CARB's Staff Air Pollution Specialist to Mercedes on December 11, 2014, states that "ARB would like to review the high vs. low cost part list for Mercedes."  CARB 017464.  It appears that CARB was aware, dating back to December of 2014, that MBUSA failed to list all high-priced parts, including specifically the piston and cylinder head gasket.  MBUSA was also aware of this omission and failed to take any action in response.  As further detailed below, it is possible to identify the parts that MBUSA has failed to properly identify as high-priced parts, and MBUSA should be required to do so.

47.    Accordingly, MBUSA's misconduct extends far beyond the two specific parts at issue in this case.  In fact, Defendant *has never used the correct, customer pay rate in determining whether an emissions part is also a high-priced warranted part*.  MBUSA's failure to use the correct, customer pay calculation has resulted in a massive scheme to deprive MBUSA vehicle owners and lessees of coverage under the California Emissions Warranty, including failure to pay for out of pocket payments for repairs to parts that should have been covered under the California Emissions Warranty.  Plaintiff's action intends to hold MBUSA accountable for its failures to identify all parts as described herein that should be covered under the California Emission Warranty and for its high-priced parts cost miscalculation. Plaintiff's

1 action intends to extend to as many MBUSA vehicles and parts as possible based on the

2 categories identified, as limited only by the applicable statutes of limitations.

3       48.    MBUSA has failed to conduct the price analysis for high-priced warranty parts in

4 a manner which comports with the California Emissions Warranty, resulting in MBUSA failing

5 to provide high-priced coverage for the thermostat and vacuum pump, as well as other

6 components which are, and should be, identified as covered components. As a result, Plaintiff

7 and other members of the Classes have suffered damage.

8       49.    The CARB Declaration repudiates MBUSA's entire methodology for

9 determining whether a covered part is also a high-priced part under the California Code of

10 Regulations.

11       50.    Similarly, MBUSA and its manufacturing counterpart are well aware, according

12 to its own documents, of what component failures cause a MIL to illuminate and cause an

13 increase in regulated emissions. MBUSA's conduct in this case underscores its failure to

14 comply with the Regulations. The failed vacuum pump installed in Plaintiff's Vehicle caused an

15 emissions-related fault code (which has been identified by MBUSA on MBUSA's OBDII fault

16 codes summaries submitted to CARB) to be triggered, the MIL to illuminate and an increase in

17 regulated emissions, yet MBUSA boldly and wrongfully declares that there should be no

18 coverage for the vacuum pump. But the failure to provide Emissions Warranty coverage for this

19 component is the tip of the iceberg, and illustrative of MBUSA's systemic failure to provide

20 coverage for numerous other components in the entire line of vehicles distributed by MBUSA.

21       51.    Based on the foregoing, not only is liability established with respect to the

22 specific parts at issue in the Class Vehicles, MBUSA faces massive liability based on its failure

23 to provide California Emissions Warranty coverage for all parts, as set forth herein, where

24 coverage is required and for its failure to use the correct customer pay calculation in

25 determining high-priced warranty parts.  MBUSA's misconduct has resulted in a massive

26 scheme to deprive MBUSA owners and lessees of coverage under the California Emissions

27 Warranty.

28

# PLAINTIFF'S FACTS

## *Vehicle Purchase*

52.     On October 25, 2018, Plaintiff purchased a used 2015 Mercedes C300, VIN 55SWF4JBXFU060151 ("Vehicle"), from Bakersfield Acura (the "Bakersfield Dealership") located in Kern County, California. The Bakersfield Dealership is a vehicle dealership authorized to sell new and used vehicles in the State of California.

53.     At the time that Plaintiff purchased the Vehicle, the Vehicle still had in place the remainder of the factory warranty, the remainder of the federal emissions warranty, and the remainder of the California Emissions Warranty. Plaintiff received a warranty book. The warranty booklet provided to Plaintiff indicated that the Vehicle's warranty included coverage pursuant to the California Emissions Warranty.

## *Thermostat Repair*

54.     On June 10, 2019, at 58,502 miles, the Vehicle underwent repairs at Alfano Motorcars ("Alfano"), an authorized MBUSA repair facility, where consumers can present their vehicles for repair pursuant to the MBUSA warranty. Plaintiff visited Alfano because Plaintiff was reporting that the Vehicle became very hot and almost overheated. Alfano generated Invoice 446775 relating to this repair visit.

55.     Alfano ran a short test, and found fault code P021700 present, indicating that the coolant temperature was too high. This is a fault code stored in the Vehicle's diagnostic system. Alfano diagnosed the Vehicle as having a faulty coolant thermostat. Alfano subsequently notified Plaintiff that there was no warranty coverage provided by MBUSA at that time relating to the coolant thermostat, and that Plaintiff had to pay out of pocket for the repairs. The Vehicle at that time was below the 7-year and 70,000-mile mark.

56.     The total cost of the repairs on June 14, 2019 was $1,040.85. Plaintiff had an aftermarket service contract that paid for $992.85 of the repairs. Plaintiff paid $148.00 out of pocket for the remaining portion of the cost of the repairs.

///

///

*Vacuum Pump Repair*

57.     On June 26, 2019, at 59,228 miles, the Vehicle was taken by Plaintiff to a non-MBUSA factory authorized repair facility, with the complaint that the vehicle was driving rough and that the check engine light was on. The repair facility identified fault code P0299, turbocharger under boost. The repair facility's repair records stated, "Possible turbocharger failure. Contacted manufacturing dealer and turbocharger is covered under emissions warranty. Took vehicle to Mercedes Benz Bakersfield upon their approval. Customer is now working with Mercedes dealership for this concern."

58.     Also on June 26, 2019, at 59,229 miles, the Vehicle was taken to Sangera Automotive Group ("Sangera"), a MBUSA factory authorized repair facility. The check engine light and fault code P0299 were verified. The repair record stated, "Found the turbo will not operate when actuated, will not open. Tested vacuum supply and found the turbo charger was not receiving any vacuum which opens turbo charger to create boost." Sangera determined that the vacuum pump was defective, depriving the turbo charger of the vacuum that was needed in order to actuate the turbo charger. As a result, the turbo charger would not work. The repair to the vacuum pump was not covered under the emissions warranty, because MBUSA does not provide California Emissions Warranty coverage for the Vehicle's vacuum pump.

59.     Sangera notified the Plaintiff that there was no warranty coverage being provided by MBUSA at that time relating to the vacuum pump and that she had to pay for the repairs. The Vehicle at that time was below the 7-year and 70,000-mile mark.

60.     The total cost of the repairs on July 2, 2019 was $873.26. Plaintiff had an aftermarket service contract that paid $773.26 for the repairs. Plaintiff paid $100.00 out of pocket for the remaining portion of the cost of the repairs.

61.     Plaintiff's harm is continuing.  As described herein, MBUSA is systemically continuing to fail to properly identify all parts that should properly and correctly be covered under the California Emissions Warranty as emissions-related parts and/or high-priced parts. These parts include the parts identified in the "OBD2 Summaries" (also referred to as "OBDII Summaries"), parts identified under "Appendix B" (as described below) and parts that increase

1    regulated emissions that are not currently covered under MBUSA's California Emissions

2    Warranty.

3            62.     Plaintiff would purchase another Mercedes vehicle.  Due to MBUSA's

4    continuing conduct, however, she is unable to rely on MBUSA to properly identify all parts that

5    should properly be covered under the California Emissions Warranty and thus Plaintiff will have

6    no way of knowing whether MBUSA, in fact, is complying with the California Emissions

7    Warranty as required.  Further, absent injunctive relief, Plaintiff will not know whether it makes

8    sense to spend her money on a new Mercedes vehicle on account of MBUSA's non-compliance

9    with the California Emissions Warranty and she will have to deal with the same sort of warranty

10   coverage issues again, and, if she does purchase another Mercedes vehicle, Plaintiff might

11   reasonably, but incorrectly assume that MBUSA complied with all the requirements of the

12   California Emissions Warranty, when it did not.  To the extent that Plaintiff does not purchase

13   another Mercedes vehicle, it will be because, at least in part, she is unable to rely on MBUSA to

14   comply with the requirements of the California Emissions Warranty.

15                                **MBUSA'S CONDUCT**

16           63.     At all times herein relevant, for each new motor vehicle intended to be

17   distributed by MBUSA in the State of California, at the time of distribution, MBUSA has

18   purported to accurately notify CARB of the parts which should be covered under the 7-year and

19   70,000-mile California Emissions Warranty.

20           64.     Furthermore, at all times herein relevant, for each new vehicle intended to be

21   distributed by MBUSA in the State of California, at the time of distribution, MBUSA has

22   purported to provide accurate written warranty documents with the vehicles, including a

23   warranty booklet, which purports to accurately identify all of the vehicle parts that are covered

24   under the 7-year and 70,000-mile California Emissions Warranty.

25           65.     MBUSA has engaged in a systematic business practice of omitting from the

26   MBUSA warranty book provided to owners and lessees at the time of sale or lease, and in

27   resources provided by MBUSA to its dealerships both at the time of sale or lease and

28   afterwards, identification of the parts, as described herein, that should be identified as high-

priced emissions warranted parts, covered under the 7-year and 70,000-mile California Emissions Warranty. MBUSA classifies *some* of the "high-priced" warranted parts as being parts covered under the 7-year and 70,000-mile California emissions warranty, but not all of the high-priced warranted parts, described herein, that should be covered under the 7-year and 70,000-mile California Emissions Warranty.

66.     Thereafter, when MBUSA vehicles are presented by consumers to MBUSA authorized repair facilities for repair, MBUSA fails to provide coverage under the 7-year and 70,000-mile California Emission Warranty for all of the repairs that should be covered under the California Emissions Warranty.

67.     As a result, California consumers have to pay out of pocket for these repairs which, by operation of California law, should be paid for by MBUSA.

68.     MBUSA engages in the alleged misconduct in order to reduce the amount of money that MBUSA has to pay out for warranty related repairs and warranty claims.

69.     If MBUSA properly identified the high-priced emissions warranty parts that should be correctly identified as such and as defined herein, then MBUSA dealerships would properly provide coverage for said high-priced parts under warranty.

70.     The failure by MBUSA to properly identify parts as "high-priced" warranted parts under the CCR violates California Business and Professions Code Section 17200, *et seq*. (the "UCL") and the California Consumers Legal Remedies Act, Cal. Civ. Code Section 1750, *et seq*. (the "CLRA"), and is intended to minimize the amount of money that MBUSA has to pay out in warranty claims.

71.     Plaintiff and other consumers have suffered damage and lost money or property as a result of MBUSA's wrongful conduct.

72.     Plaintiff's theory does not depend on the premise that CARB was deceived by the information that MBUSA submitted, and Plaintiff is not accusing CARB of mismanagement or blaming CARB for MBUSA's inaccuracy. MBUSA alone is responsible for selecting and identifying to CARB the parts that MBUSA has unilaterally identified as high-priced emissions warranty parts as part of its application for vehicle certification. That list may be correct as far

1    as CARB may know. But, as Plaintiff alleges, the list is incomplete, as evidenced by Plaintiff's

2    own experience and MBUSA's policies and documents.

3        73.    Moreover, as set forth above, CARB has identified the standards to be applied in

4    determining whether a vehicle part should be warranted as an "emissions-related part" and

5    whether the emissions part is also a high-priced warranty part under the California Emissions

6    Warranty.  As alleged herein, Defendant has failed, and is failing, to properly comply with those

7    standards.

8            **THE COOLANT THERMOSTAT IS A HIGH-PRICED WARRANTY PART**

9        74.    The coolant thermostat installed in the Class Vehicles regulates the flow of

10   coolant throughout the engine cooling system.

11       75.    MBUSA's warranty books for the Class Vehicles acknowledges that the coolant

12   thermostat is an emissions-related part, and the MBUSA warranty book for MY 2017 through

13   MY 2018 Mercedes C300 vehicles also identifies the coolant thermostat as being a high-priced

14   emissions warranted part covered for 7 years or 70,000 miles.

15       76.    However, the MBUSA warranty book for the MY 2015 and MY 2016 Mercedes

16   C300 vehicles does *not* identity the coolant thermostat as being a high-cost emissions warranty

17   part. As a result, the warranty coverage for the coolant thermostat for the Class Vehicles is

18   limited to 4 years and 50,000 miles. The parts and labor costs to replace the coolant thermostat

19   are the same for all of the Class Vehicles, MY2015-2018.

20       77.    As explained below, the cost associated with diagnosing and replacing a

21   defective coolant thermostat for Class Vehicles exceeds the high-priced emissions warranted

22   parts threshold.  Thus, the coolant thermostat for Class Vehicles should have been classified as a

23   high-priced warranty part entitled to extended warranty coverage for 7 years/70,000 miles under

24   the California High-Cost Emissions-Related Parts Warranty.

25       78.    The following analysis identifies the applicable cost limit for the MY 2015 and

26   2016 Class Vehicles and the estimated replacement cost for the coolant thermostats installed in

27   the Class Vehicles.

28   ///

1    ***Cost Limit Analysis – Generally***

2         79.    CARB publishes Manufacturer's Advisory Correspondence (MAC) every year,

3    advising manufacturers of the cost threshold for the upcoming model year vehicles. The cost

4    threshold is supposed to be used by manufacturers in determining if an emissions-related part is

5    a high-priced emissions warranty part. The analysis is supposed to be performed prior to

6    distributing the vehicles. If the manufacturer determines that the total cost to the customer of

7    diagnosing the defective emissions related part, paying for the labor to replace the part, and

8    paying for the replacement part exceeds the threshold, then the part must be deemed a high-

9    priced emissions warranty part. If it is deemed a high-priced emissions warranty part, the

10   manufacturer shall provide a 7-year and 70,000-mile warranty for the part.

11        80.    On July 9, 2014, CARB published the MAC for model year 2015 vehicles,

12   including the Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and

13   replace emissions related parts was $590.00.

14        81.    On March 26, 2015, CARB published the MAC for model year 2016 vehicles,

15   including the Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and

16   replace emissions related parts was $600.00.

17        82.    Thus, if the cost to diagnose and repair the coolant thermostats installed in the

18   Class Vehicles exceeded $590 for MY 2015 or $600 for MY 2016, the part should have been

19   identified as a high-priced emissions warranty part covered for 7-years or 70,000-miles.

20   ***Cost Limit Analysis – Thermostat***

21        83.    There is no legitimate reason why the coolant thermostats installed in the Class

22   Vehicles were not identified as high-priced emissions warranty parts and did not receive a 7-

23   year and 70,000-mile warranty when the same identical part, with the same functionality, the

24   same repair procedures and protocols, and the same costs of repair was properly identified as a

25   high-priced emissions warranty part for MY 2016-2018 vehicles.

26        84.    The coolant thermostat is the same part number in MY 2015-2018 C Class

27   vehicles, the engine serviced by the coolant thermostat is the same in MY 2015-2018 C Class

28

1    vehicles, and the functionality of the coolant thermostat in all of the Class Vehicles did not

2    change from MY 2015 through MY2018.

3         85.   Further, the reason that MBUSA determined that the part was a high-priced

4    warranty part in 2017-2018, but not in 2015-2016 is not due to an increase in the cost of the

5    repair for MY 2017-2018.   The cost of repair for the coolant thermostat did not change

6    significantly from MY 2015-2018.  This is because the repair protocol relating to the coolant

7    thermostat has not changed from Model Year 2015 through 2018 and therefore the time needed

8    to perform the repair also has not changed. Thus, (1) the labor cost to diagnose and repair the

9    part did not significantly change; (2) The cost of the part did not significantly change; and, (3)

10   The consumer price index has grown very little from 2015 to 2020. The growth in the consumer

11   price index has been so low that there is only a $50.00 increase in the high-priced cost threshold

12   from 2015 to 2020 and the amount that Plaintiff was charged at a MBUSA factory authorized

13   repair facility in 2019 to replace the coolant thermostat was $1,040.85, which is $450.85 above

14   the high-priced threshold. This is far greater than the $50.00 increase in the consumer price

15   index.  Furthermore, the function of the coolant thermostat did not change from 2015 through

16   2018. Thus, there is no legitimate explanation as to why the coolant thermostat would not be

17   included as a high-priced emissions part in 2015-2016 but included as a high-priced emissions

18   part in 2017-2018 based upon the price of the part or the functionality of the part.  Rather,

19   MBUSA wrongfully failed to include the thermostat as a high-priced emissions part for the

20   2017-2018 Mercedes C300 vehicles.

21        86.   The retail cost of the repairs, even when taking into consideration the escalation

22   in cost over time, clearly exceeds the high-priced emissions parts threshold. There is no

23   legitimate reason for this increase.

24        87.   In addition to the foregoing, evidence adduced to date confirms that the coolant

25   thermostat in the Class Vehicles is a high-priced emissions part, regardless of the information in

26   the CARB Declaration.

27        88.   MBUSA's response to Plaintiff's Special Interrogatory, Set No. 1, No. 6

28   indicates that for Model Year 2015 C300 vehicles, the cost to replace the thermostat is $555.32.

1    The cost is broken down as $179.00 for the cost of the thermostat, and 2.1 hours to replace the

2    thermostat, at $179.20 per hour.  The Operations Items List provided by Mercedes (Bates

3    MBUSA_00003656) allocates the total 2.1 labor hours as follows: 1.5 hours of the time is

4    attributable to removing and installing the coolant thermostat (Bates MBUSA 00003662-

5    MBUSA 00003664, Operations Item AR20.10-P-2460MRA), and .6 hours is attributable to

6    drain/fill correct coolant (not provided by MBUSA in discovery, but Operations Item AR20.00-

7    P-1142LW), for a total of 2.1 hours.

8         89.    The critical deficiency with MBUSA's labor hours calculation is that MBUSA

9    has understated the correct labor time to replace the coolant thermostat because MBUSA used

10   the warranty rate, not the customer pay rate, as described above. The customer pay rate to

11   remove and replace the thermostat, as confirmed by Alldata, indicates a labor charge of **3.0**

12   hours standard time and 2.2 hours OEM warranty time, not 2.1 hours OEM time, as provided by

13   MBUSA. Alldata gets the warranty rate number from documentation provided by Mercedes to

14   Alldata (MBUSA document confirming 2.2 hours warranty time).  This discrepancy alone is

15   sufficient to make the thermostat a high-priced warranty part.  The reason for this is that 3 hours

16   x $179.20 per hour (as stated in MBUSA's response to Plaintiff's Special Interrogatory, Set No.

17   1, No. 6) equals $537.60, plus $179.00 for the price of the thermostat (as stated in MBUSA's

18   response to Plaintiff's Special Interrogatory, Set No. 1, No. 6), which totals $716.60, which

19   exceeds the high-priced threshold of $590.00 for Model Year 2015. For Model Year 2016, 3

20   hours x $184.00 per hour (as stated in MBUSA's response to Plaintiff's Special Interrogatory,

21   Set No. 1, No. 7) equals $552.00, plus $179.00 for the price of the thermostat (as stated in

22   MBUSA's response to Plaintiff's Special Interrogatory, Set No. 1, No. 7), which totals $731.00,

23   which exceeds the high-priced threshold of $600.00 for Model Year 2016.

24        90.    Even using the warranty pay rate, MBUSA's calculation is wrong because

25   MBUSA fails to take into account the time to diagnose the defect and the failure to include the

26   cost of coolant used for the repair. Mr. Hill confirmed during his deposition that the total

27   amount of labor time to diagnose and replace the coolant thermostat, is 2.4 hours. Mr. Hill also

28   confirmed that although the coolant needed to be drained and refilled in order to replace the

1    coolant thermostat, MBUSA did not take into consideration the cost of the coolant, which at the

2    time, without question exceeded $10.00.

3        91.    When including the warranty pay rate of .3 for diagnosis, the total of 2.4 hours

4    causes the cost of the repair to exceed the $590.00 threshold for Model Year 2015, and when

5    adding in the cost of coolant, the amount exceeds the $600.00 threshold for Model Year 2016.

6    Using the customer pay rate causes the numbers to be even greater.

7        92.    Therefore, pursuant to California law, MBUSA is required to provide 7-year and

8    70,000-mile warranty coverage for the coolant thermostat installed in Class Vehicles. MBUSA

9    currently unlawfully fails to provide this coverage. The reason that the coolant thermostats

10   installed in the Class Vehicles did not receive 7-year and 70,000-mile warranty coverage, and as

11   to why the Class Vehicles' MBUSA warranty books did not state that the coolant thermostats

12   were entitled to 7-year and 70,000-mile warranty coverage, is because MBUSA engaged in

13   wrongful conduct by failing to properly identify the coolant thermostats installed in the Class

14   Vehicles as high-priced emissions warranty parts.

**THE VACUUM PUMP IS A HIGH-PRICED WARRANTY PART**

16       93.    The vacuum pump is an emissions part. The vacuum pump in the Class Vehicles

17   is used to open and close the turbo charger, in order to create boost. If the vacuum pump is

18   defective, the turbo charger will not work properly. Virtually all of a Class Vehicle's systems

19   will work even if the Class Vehicle's vacuum pump is defective, however if a Class Vehicle has

20   a defective vacuum pump, the defect will cause the Class Vehicle's check engine light to

21   illuminate, will cause one of the fault codes which appears on MBUSA's OBDII fault codes

22   summaries to be triggered and will increase the Class Vehicle's regulated emissions.

23       94.    The warranty book for the Class Vehicles designates the turbo charger as being

24   an emissions-related component. This is because the failure of the turbo charger to function

25   increases regulated emissions, will cause one of the fault codes which appears on MBUSA's

26   OBDII fault codes summaries to be triggered and causes the check engine light to illuminate.

27       95.    The failure of the vacuum pump will prevent the turbo charger from working

28   properly, increases regulated emissions, will cause one of the fault codes which appears on

MBUSA's OBDII fault codes summaries to be triggered and causes the check engine light to illuminate. Thus, MBUSA should have designated the vacuum pump as being an emissions-related component.

96.     As explained below, the vacuum pump should also have been designated as high-priced warranted part for the Class Vehicles because the cost associated with diagnosing and replacing a defective vacuum pump for the Class Vehicles exceeds the high-priced emission parts threshold. Thus, it is unlawful for MBUSA to not provide 7-year and 70,000-mile warranty coverage for the vacuum pumps installed in the Class Vehicles.

***Cost Limit Analysis – Vacuum Pump***

97.     As set forth above, the costs limits, per CARB, for 2015 and 2016, were $590 and $600, respectively.

98.     On March 15, 2016, CARB published the MAC for model year 2017 vehicles, including the Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and replace emissions-related parts was $600.00.

99.     On August 21, 2017, CARB published the MAC for model year 2018 vehicles, including the Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and replace emissions-related parts was $610.00.

100.    Thus, if the cost to diagnose and repair the vacuum pumps installed in the Class Vehicles exceeded the foregoing cost limits, these parts should have been identified as high-priced emissions warranty parts covered for 7 years or 70,000 miles.

101.    The amount that Plaintiff was charged at a MBUSA factory authorized repair facility in 2019 to replace the vacuum pump was $873.26, which is $283.26 above the high-priced threshold.  There is no legitimate reason for this increase.

102.    The price of the part did not significantly change from 2015 to 2018.

103.    The labor cost did not significantly increase.  The repair protocol relating to the vacuum pump has not changed from MY 2015 through MY 2018 vehicles. The time needed to perform the repair could not have changed. The parts and labor costs to replace the vacuum pump are the same for all of the Class Vehicles. Thus, the reason why the vacuum pump was

1    not included in the Class Vehicles' warranty book for the Class vehicles is not because the price

2    changed significantly.

3          104.    Inflation also did not cause the cost to increase.  The consumer price index grew

4    very little from 2015 to 2020. The growth in the consumer price index has been so low that there

5    was only a $50.00 increase in the high-priced cost threshold from 2015 to 2020.

6          105.    Finally, Plaintiff had an aftermarket service contract that paid $773.26 for the

7    repairs.  The aftermarket service would not have paid that amount if it believed that MBUSA

8    was price gouging for the cost of the part or the repair.

9          106.    Accordingly, the only logical explanation is that MBUSA wrongfully failed to

10    identify the vacuum pump as a high-priced warranty part.

11          107.    Pursuant to California law, MBUSA is required by law to provide 7-year,

12    70,000-mile warranty coverage for the vacuum pump installed in the Class Vehicles. MBUSA

13    currently unlawfully fails to provide this coverage.

14                   **ADDITIONAL COST LIMIT ANALYSIS ALLEGATIONS**

15                   **WITH RESPECT TO THE VACUUM PUMP**

16          108.    MBUSA also has wrongfully failed to identify the vacuum pump as being

17    covered under the California Emissions Warranty.  On June 26, 2019, the Hazdovac vehicle was

18    presented to Sangera Automotive Group, an MBUSA authorized repair facility, for repairs. The

19    repair records indicate that the check engine light was on, which would trigger extended

20    emissions coverage. Furthermore, the vacuum pump ceased to function, resulting in the turbo

21    being incapable of producing boost, which increases regulated emissions.  Under these

22    circumstances, the regulations mandate coverage, yet MBUSA does not provide coverage for

23    the vacuum pump.

24          109.    The vacuum pump is a high-priced emissions part.  In addition to the foregoing

25    allegations, another clear indication that this part should be covered under the California

26    Emissions Warranty is the fact that its performance is monitored by the OBD system installed in

27    the Vacuum Pump Class Vehicles, fault codes relating to their performance are disclosed in

28    MBUSA's applications for certification with CARB, a MIL is illuminated when this part fails,

any fault of this component causes an increase in emissions regulated by the State of California and the federal government, and the cost to repair and/or replace these components exceeds the cost threshold for the years in question.  Based on clarification provide by the CARB Declaration, this part is an emissions-related part.

110.    Furthermore, with regard to the vacuum pump, although MBUSA has not identified the vacuum pump as a covered part, MBUSA has already identified the turbo components which are directly actuated by the vacuum pump as being covered under the California Emissions Warranty. Other documents also confirm that the vacuum pump is an integral component which must function properly for the vehicle to be emissions compliant. For example:

- Beginning at Bates MBUSA 00003827 there is a diagnostic protocol for locating the root cause of OBDII fault codes relating to turbo boost. The protocol relates to checking the vacuum system for proper vacuum. Bates MBUSA 00003847 and MBUSA 00003848 specifically identify OBDII fault code P029921 (turbo lack of sufficient boost) as being caused by lack of sufficient vacuum. This fault code is an OBDII fault code which is triggered when the vehicle has a defect which increases regulated emissions. As described in the diagnostic protocol, the root cause is sometimes directly attributable to a lack of vacuum, either due to a vacuum leak, or due to a failure of the vacuum pump;

- The CARB production identified as CARB 17181 MED17x ECU indicates, "Stroke of boost pressure control active, parameters are 'Wastegate full open during catalyst heating.'" This means that actuation of the wastegate is necessary in order to facilitate rapid heating of the catalyst during a cold start. Failure of the wastegate to open elongates the time period necessary to heat the catalyst, thus increasing regulated emissions. Rapid heating of the catalyst is an integral part of a vehicle being emissions compliant. The only way to open the wastegate on Class vehicles is for the vacuum pump to produce vacuum. Thus, the vacuum pump is an integral and necessary part of the emissions system;

- CARB 015768-015769 contains an "Emission Diagram." The Emissions Diagram both inferentially and literally includes the vacuum system, including the vacuum pump and vacuum lines which lead to the turbo; and,

- Both the CARB and MBUSA document productions contain several references throughout to lack of boost being caused by lack of vacuum, with correlating OBDII fault codes, and correlating protocols to identify the root cause of the lack of vacuum.

1    111.    According to Alldata, the retail cost of the vacuum pump is currently $370.00,

2  and the customer pay labor rate to replace the vacuum pump is 1.3 hours. Additionally,

3  according to Mr. Hill, the warranty rate for standard diagnosis is .3, with the customer pay rate

4  certainly being more. But even at 1.6 hours at $179.20 an hour, plus $370.00, the cost to replace

5  the vacuum pump is $656.72, which exceeds the high-priced threshold for Model Years 2015,

6  2016, 2017, and 2018.

7                    **ADDITIONAL COST LIMIT ANALYSIS ALLEGATIONS**

8    112.    The cost associated with the diagnosis and repairs relating to the coolant

9  thermostat and vacuum pump for the Class Vehicles should be covered and paid for by MBUSA

10  under the 7-year and 70,000-mile California Emissions Warranty. This is because, pursuant to

11  California Code of Regulations section 2037(c), the coolant thermostat and vacuum pump

12  should have been identified by MBUSA as high-priced emissions warranty parts, and the parts,

13  labor and diagnostic expenses relating to those repairs should have been covered under Section

14  2037(c).

15    113.    Furthermore, the warranty booklet relating to the Class Vehicles should have

16  identified the coolant thermostat and vacuum pump as being high-priced emissions warranty

17  parts. This is because, at the time of initial distribution, the costs associated with diagnosing the

18  parts as being defective, purchasing the parts, and installing the parts, qualified the parts as

19  high-priced emissions parts, as described in the statute.

20    114.    On information and belief, there is no legitimate explanation for why, based on

21  these facts, these parts were not identified by MBUSA as high-priced emission parts relating to

22  the Class Vehicles. To date, MBUSA has not explained the basis for MBUSA's determination.

23    115.    On information and belief, MBUSA's failure to include the coolant thermostat

24  and vacuum pump installed in the Class Vehicles as high-priced emissions warranty parts was

25  an intentional omission by MBUSA, designed by MBUSA in an effort to reduce the money that

26  MBUSA pays out in warranty claims. On information and belief, this is just one example of

27  MBUSA's scheme to fail to properly and comprehensively identify the parts that should be

28

1    identified as high-priced warranted parts and covered for 7 years and 70,000 miles under the

2    California Emissions Warranty.

3    116.    Plaintiff has provided an analysis of why the coolant thermostat and vacuum

4    pump should have been designated by MBUSA as high-priced emissions warranted parts. The

5    details of how MBUSA applied the CCR formula with respect to the coolant thermostat and

6    vacuum pump are exclusively within, or should be within MBUSA's possession, since MBUSA

7    applied for certification of the vehicles distributed by MBUSA. Similarly, the information

8    regarding what other parts satisfied the CCR requirements but were not identified by MBUSA

9    as high-priced emissions warranty parts is also exclusively within or should be within the

10   possession of MBUSA.

11   117.    When Class Vehicles are presented to MBUSA dealerships for repairs which

12   should be covered under the 7-year and 70,000-mile California Emissions Warranty but are not

13   identified by MBUSA's Warranty Information booklet as being covered, MBUSA refuses to

14   provide 7-year and 70,000-mile California Emissions Warranty coverage.  When Plaintiff

15   presented her Vehicle to MBUSA authorized repair facilities for repairs to the coolant

16   thermostat and vacuum pump, these repairs should have been covered under the 7-year and

17   70,000-mile California Emissions Warranty. Plaintiff was wrongfully denied warranty coverage

18   for these repairs, all of which should have been covered under the 7-year and 70,000-mile

19   California Emissions Warranty.

20   118.    The reason that Plaintiff was charged for said repairs was not the result of

21   anything Plaintiff had done, an individual issue relating to the Sangera or Alfano dealerships, or

22   an oversight by Sangera or Alfano in failing to identify the repairs as repairs that should have

23   been covered under the 7-year and 70,000-mile California Emissions Warranty. Rather, Plaintiff

24   was charged for said repairs because of MBUSA's uniform and systematic business practice of

25   intentionally refusing to identify in the MBUSA warranty booklet, and in resources provided to

26   its dealerships, the parts that should be identified as high-priced emissions warranty parts under

27   California law in order to limit the amount of warranty claims paid by MBUSA.

28

119.    CCR section 2037(c)(1)(B) regarding "High-priced Warranty Parts" requires MBUSA to identify the "high-priced warranted parts . . . which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

120.    MBUSA intentionally failed to identify all parts identified herein in order to reduce the amount of money that MBUSA spends on warranty related repairs. If MBUSA complied with California law and properly identified parts as high-priced emissions warranty parts that should be identified as such, then MBUSA dealerships would properly provide warranty coverage for said high-priced emissions warranty parts.

121.    MBUSA's conduct violates California's unfair business practices statute, California Business and Professions Code section 17200, *et seq.* (the "UCL"), and violates the Consumers Legal Remedies Act, Civil Code section 1750, *et seq* (the "CLRA").

122.    Plaintiff and other members of the Classes have suffered damage as a result of MBUSA's wrongful conduct.

123.    MBUSA may attempt to justify not including the coolant thermostat and/or vacuum pump as high-priced emissions warranted parts based upon the amount of money in parts and labor that MBUSA pays its factory authorized repair facilities to perform repairs relating to these parts. But in determining if a part should be considered a high-priced part, a manufacturer is supposed to consider the total amount of money in parts and labor that consumers pay to diagnose and perform repairs to the parts in question, not a negotiated book rate that factory authorized repair facilities are mandated to charge MBUSA. The repairs to the coolant thermostat and vacuum pump were performed at MBUSA factory authorized repair facilities that charged Plaintiff the retail cost of these repairs.

124.    The United States Bureau of Labor and Statistics uses an inflation calculator to estimate how much buying power changes based upon inflation. The calculator can be found at, "https://data.bls.gov/cgi-bin/cpicalc.pl." Using this calculator provides further evidence that the coolant thermostat and vacuum pump should have been identified by MBUSA as high-priced emissions warranted parts.

125.     A calculation using the inflation calculator provides guidance. Using the baseline date of January 2010, which significantly predates the relevant date for this analysis, and using January 2020, which is after all of the repairs were performed, $590.00 in 2010 would have the same buying power as $702.41 in 2010. This means that MBUSA cannot use inflation as an explanation for why the costs charged to Plaintiff for the repairs to the coolant thermostat and vacuum pump in 2019 are so much more than the threshold amount when the original analysis was done. Although Plaintiff does not yet know how MBUSA conducted its analysis, inflation is not an appropriate or reasonable explanation for why the coolant thermostat and vacuum pump were not considered high-priced emissions warranty parts when the Class Vehicles were sold.

126.     Furthermore, MBUSA cannot use the explanation that Plaintiff was overcharged by a rogue repair facility. Two separate MBUSA factory authorized repair facilities performed the repairs in question and there is no evidence that either of these repair facilities engaged in price gouging. Quite the opposite is true. A third-party service contract provider paid for a portion of these repairs. The service contract provider is in the business of paying for vehicle repairs and would not pay charges that were inflated or unnecessary.

127.     The retail cost of the repairs, even when taking into consideration the escalation in cost over time, clearly exceeds the high-priced emissions parts threshold.

128.     Looking at the MAC for 2020 vehicles, which was published on March 18, 2019, further illuminates MBUSA's wrongful conduct. The MAC for 2020 states that the high-priced emissions parts threshold is $640.00, which is hundreds of dollars less than what Plaintiff and Plaintiff's third-party service contract paid for the repairs to the Vehicle. Thus, an analysis of the repairs to the coolant thermostat and vacuum pump today would determine that the price of each of the repairs exceeds the high-priced cost threshold.

129.     Similarly, MBUSA cannot credibly argue that it incorrectly estimated the replacement costs of the coolant thermostat and vacuum pump as an explanation for why MBUSA wrongfully failed to conclude that these were high-priced emissions warranty parts. Varying designs of coolant thermostats and vacuum pumps are used in virtually every vehicle

sold and leased in the United States. The repair protocols are equally common. Although the actual parts and repair protocols for each different vehicle do have some unique aspects, these are very common parts with the same functions. Furthermore, the actual consumer cost to repair the coolant thermostat and vacuum pump for the Class Vehicles is hundreds of dollars above the threshold. And the parts are clearly emissions-related parts. Finally, even now, MBUSA only acknowledges the coolant thermostat as being a high-priced emissions-related part.

130.    On September 10, 2019, pursuant to California Civil Code Section 1782, counsel for Plaintiff sent MBUSA a letter, notifying MBUSA in writing of Plaintiff's claims under the Consumers Legal Remedies Act relating to said MBUSA warranty concealment. Said letter provided MBUSA with an opportunity to take actions to remedy said unlawful practices. Specifically, the letter indicated that MBUSA wrongfully failed to identify the vacuum pump and coolant thermostat relating to the Vehicle as being high-priced emissions parts, having a 7-year, 70,000-mile California Emissions Warranty, and failed to provide said coverage.

131.    On November 12, 2019, MBUSA's counsel sent a letter in response, indicating in essence that MBUSA had done nothing wrong, and refusing to take any corrective action.

132.    By failing to provide a 7-year, 70,000-mile warranty for the coolant thermostat and vacuum pump, MBUSA violated the UCL and CLRA.

**ALLEGATIONS REGARDING IDENTIFICATION OF ADDITIONAL PARTS**

133.    This litigation identifies two systemic actionable business practices that MBUSA has engaged in which harm members of the Classes. First, MBUSA has failed to identify all parts that should be covered under the California Emissions Warranty. Second, MBUSA has failed to identify all of the parts which MBUSA concedes are covered under the California Emissions Warranty as "emission-related parts" and that also qualify as high-priced. These parts are readily identifiable.

134.    Further, in an effort to identify the specific parts subject to MBUSA's actionable business practices, Plaintiff's claims focus specifically on, and are limited to, three specific categories of vehicles parts subject to the California Emissions Warranty: (1) parts that MBUSA identified as "emissions-related" but has wrongfully not identified as "high-priced;" (2)

"emissions-related" parts identified on "Appendix B" to the California Regulations (described below) but not covered by MBUSA under the California Emissions Warranty; and (3) parts whose defects are identified with an emissions-related fault code that MBUSA specifically reported to CARB in its "OBD2 Summaries" and that trigger illumination of the MIL. While the California Emissions Warranty applies to all vehicle parts that "affect regulated emissions," this litigation focuses on the parts identified in (1) through (3) identified in this paragraph. MBUSA's failure to properly warrant these specific parts undoubtedly violates the California Emissions Warranty.

**Emissions-Related Parts**

135.     With respect to all emissions parts that should be covered under the California Emissions Warranty, 13 CCR section 2035 defines a "warranted part" as any vehicle part "which affects any regulated emission from a motor vehicle or engine which is subject to California emissions standards."  Similarly, 13 CCR Section 2601(i) states that an "'Emissions-related part' means any vehicle part which affects any regulated emissions from a vehicle that is subject to California or federal emissions standards and includes, but is not limited to, those parts specified in the 'Emissions-Related Parts List,' adopted by the State Board on November 4, 1977, as last amended June 1, 1990."  Similarly, 13 CCR Section 1900(b)(3) states that "'Emissions-related part' means any automotive part, which affects any regulated emissions from a motor vehicle which is subject to California or federal emission standards. This includes, at a minimum, those parts specified in the 'Emissions-Related Parts List,' adopted by the State Board on November 4, 1977, as last amended June 1, 1990."  The "Emissions-Related Parts List" is contained at 13 CCR Appendix B which states that "The following list of components *are examples* of emission related parts as defined in Section 1900(b)(3), Chapter 3, Title 13, California Code of Regulations."  Emphasis added.  The Appendix B list is non-exclusive by its own terns, nor could it be all-inclusive, as it could not include parts, components, systems or technology developed or implemented after 1990.  Therefore, as a starting point, MBUSA is required to cover as "emissions-related" parts, under the California Emissions Warranty, any vehicle part specifically identified on Appendix B.   As confirmed in the CARB Declaration, in

Appendix B, and in the Regulations, "emissions-related parts" are not limited to the emissions control system only.

136.    Further, MBUSA's own documents, including specifically the OBD2 Summaries discussed below submitted to CARB as part of the vehicle certification process, identify the specific fault codes that directly correlate with increased emissions and confirm an emissions-related defect.  Also, as confirmed by the OBD2 Summaries, these fault codes cause the OBDII MIL to be illuminated.  The fault codes identified in the OBD2 Summaries confirm that there is a defect relating to an emissions related part.

137.    As explained above, the Class Vehicles are equipped with an OBDII onboard diagnostic system. The system uses sensors to gather data which is evaluated using OBDII fault code logic. If the OBDII logic determines that the data is outside of an acceptable range, a fault code is triggered, identifying a defect which increases regulated emissions. When MBUSA seeks certification of vehicles for distribution in California, MBUSA is required, pursuant to 13 CCR 1968.2, to provide CARB with all of MBUSA's OBDII fault codes and the corresponding logic.  The fault codes for MBUSA vehicles are identified in a MBUSA document entitled "OBD2 Summary Tables."  MBUSA submitted OBD2 Summary Tables or similar documents to CARB for every Class Vehicle and for every model year that the vehicles were certified for sale in California.

138.    The "OBD2 Summary Tables" identify the Components/Systems monitored by OBDII, the acceptable ranges relating to the data gathered, the corresponding emissions fault codes and that the MIL will be triggered when a defect is identified.  The purpose of the OBDII system, as confirmed in the CCR, is specifically to monitor emissions-related components. This is why MBUSA is required to develop a compliant OBDII system which identifies emissions related defects, triggering a fault code and a MIL. The fault codes are used to assist technicians in repairing the vehicles, whereas the MIL is used to alert the driver of a defect. This means that every defect that triggers the emissions fault codes identified by MBUSA in the "OBD2Summary Tables" and the MIL is, by definition, an emissions-related defect.  The OBD2 Summaries, among other documents, identify the parts that have not already been identified as

emissions parts by MBUSA in its warranty books but which, when defective, can or do trigger an emissions fault code and result in illumination of the MIL.  Therefore, in addition to the parts identified on Appendix B described above, MBUSA is required to cover under the California Emissions Warranty any defect that triggers a fault code identified by MBUSA in its OBD2 Summaries submitted to CARB or that should properly be identified on the OBD2 Summaries because such a defect affects regulated emissions.

139.    The foregoing analysis addresses and precludes any potential "slippery slope" argument or concern that every vehicle part could potentially be "emissions-related."  This litigation is not dependent on the assertion that "Emissions-related parts" are defined as every part in the OBDII system.  Rather, this litigation asserts that there should be California Emissions Warranty coverage, at the very least, for the parts, components or systems identified on Appendix B and those parts whose defects trigger fault codes identified on the OBD2 Summary Tables and cause the MIL to be illuminated as set forth in the OBD2 Summaries. This is because said parts undeniably are "emissions-related" and fail in a manner that increases regulated emissions.  MBUSA knows which fault codes these are because MBUSA is required to provide to CARB all the fault codes that trigger a MIL and the specific emissions-related conditions that trigger the fault codes as set forth in the OBD2 Summaries.  Further, as confirmed in the CARB Declaration, emissions-related parts include any components that "can" or are required to illuminate the MIL in the event of a malfunction, even if the primary function of the component is not emissions control.

140.    Accordingly, to address emissions-related coverage issues with respect to *all* emissions-related fault codes in the Class Vehicles at issue in this action and as currently identified by MBUSA in the OBD2 Summaries that MBUSA provided to CARB, MBUSA is required to cover, under the California Emissions Warranty, any defects that trigger a fault code identified by MBUSA in the OBD2 Summary Tables for each Class Vehicle.

///

///

///

**High-Priced Parts**

141.     The second step is to identify which of the emission-related parts previously identified, as described above, are also high-priced warranty parts.  MBUSA already performs this analysis as part of the certification process but has performed it incorrectly using the wrong standard and has not performed the analysis for all properly identified emissions-related parts. Therefore, the next required process is to calculate the replacement cost of each part identified on the revised list using the customer pay rate.  This would be done as follows: (1) Identify the standard labor time charged to consumers to diagnose if the part is defective. The time charged to consumers for standard diagnosis will be determined using the two leading data aggregators in the automotive industry, Mitchell and Alldata. It is an automotive industry standard for repair facilities to use these data aggregators as guides to determine the appropriate time to charge consumers for a standard diagnosis. The information provided by Mitchell and Alldata provides vehicle specific and defect specific diagnostic protocols and accurately estimated diagnostic labor time for evaluating virtually all symptoms and defects; (2) identify the standard labor time paid by consumers to repair and/or replace a defective part. Mitchell and Alldata also provide this information with the same degree of accuracy and reliability; (3) add the standard diagnosis and repair time to arrive at the total time, then multiply the total time by the respective labor rate identified MBUSA for each year, to arrive at the total labor charge. The information that has been provided by MBUSA regarding the labor rate applicable to each year appears to be accurate; (4) add the retail cost of the part, as identified by MBUSA, along with all incidental supplies that are needed to complete the repair, such as coolant, etc.; and (5) the sum of the aforementioned is the total cost to repair. This process will result in determining the total cost of the repair. If the total cost for the repair exceeds the price threshold for the respective year, the part shall be covered for 7 years or 70,000 miles.

142.     All of the information and data needed to conduct this two-part audit and review process are readily available. The results of this process are not subjective in nature but are merely the mathematical and scientific certainties that derive from complying with the California Emissions Warranty laws. The reason this lawsuit exists is not that there is confusion,

1    mathematical complexity, or ambiguity regarding MBUSA's obligations. The reason that this

2    lawsuit exists is simply because MBUSA has failed to follow the very simple, thoroughly

3    explained, and easily implemented instructions provided by the CCR. As a result, consumers are

4    being harmed in a very ascertainable, common and predictable manner.

5         143.    The aforementioned analysis has already been commenced by Plaintiff's counsel

6    and has confirmed that there is a pervasive failure on the part of MBUSA to provide proper

7    warranty coverage and that this failure is not isolated to the C300 MBUSA vehicles.

8         144.    The following is just one example of implementing the second step of the

9    protocol to identify MBUSA's wrongful conduct with respect to identifying high-priced

10   warranted parts for vehicles that are not C300 MBUSA vehicles.  Plaintiff's review of the

11   applicable data and standards has determined that the fuel injectors installed in the 2015

12   MBUSA SL65AMG are high-priced emissions parts. The warranty book for this vehicle

13   identifies the part as covered under the California Emissions Warranty, but not as being high-

14   priced.  Alldata has identified the customer pay rate for the labor time to remove and replace the

15   part. This labor time is multiplied by the labor rate that MBUSA has already submitted to

16   CARB.  Alldata indicates that, while the part cost of one injector is less than $100.00, the

17   customer pay labor time to remove and replace the part is 5.5 hours.  MBUSA documentation

18   submitted to CARB as part of the certification process for the 2015 MBUSA SL65AMG has

19   identified the labor rate for 2015 as $179.20 per hour.   As a result, the retail labor cost alone,

20   when properly calculated, is over $900.00 ($179.20 x 5.5 = $985.60).  This amount well exceeds

21   the $590.00 threshold for the cost to diagnose and replace emissions related parts as set forth in

22   MAC (which advises manufacturers of the cost threshold for model year 2015 vehicles, as

23   alleged above).  Thus, MBUSA has wrongfully failed to designate this part as high-priced, thus

24   depriving consumers of the 7-year/70,000-mile warranty.  This part would now be properly

25   identified as a high-priced part entitled to the extended 7-year/70,000-mile warranty.

26                    **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

27        145.    Plaintiff re-alleges and incorporates by reference each allegation set forth above.

28

---

146.     Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(1), (2) and/or (3) and/or (c)(4) on behalf of herself and members of the Classes as defined below.

147.     Excluded from the Classes are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

148.     All claims alleged on behalf of Plaintiff and members of the Classes herein arise under California law for which Plaintiff seeks relief authorized by California law.

149.     As previously alleged, Plaintiff had reserved the right, based on further investigation and discovery, to redefine or expand the Classes and/or to add subclasses to include other high-priced warranted parts and/or Classes based on Defendant's own Emissions Warranty.

150.     Per the express terms of the MBUSA warranty book, the "California Emission Control System Warranty applies to "all vehicles (except those certified to PZEV standards) that are registered in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, or Washington" (*i.e.*, "Reg. 177 States" or "Section 177 States, namely, States that have adopted California's Low-Emission Vehicle (LEV) criteria pollutant and greenhouse gas (GHG) emission regulations and Zero-Emission Vehicle (ZEV) regulations under Section 177 of the Clean Air Act, 42 U.S.C. §7507).

151.     Defendant's warranty representations arise out of California law that Defendant has chosen to apply outside of California to the vehicles in the States listed.  Accordingly, Defendant's conduct was specifically intended to have effects outside of California and was specifically intended to apply to vehicles and members of the Classes in those States that Defendant chose to include by the express terms of the California Emissions Warranty.

152.     Under these unique circumstances, California has a specific interest in regulating conduct outside of California that specifically invokes California emissions requirements and California emissions regulations and has an interest in preventing illegal practices that involve breach of California Emissions Warranty law that Defendant has chosen to invoke outside of

1   California in the States covered by the Registered Vehicle Class.  As Defendant seeks to apply

2   the California Emission System Warranty to members of the Classes and vehicles in the listed

3   States outside of California, members of the Classes in those States likewise should be included

4   in a claim that seeks to vindicate their rights under that same warranty in California and should

5   have the ability to have their rights under that warranty asserted in California and pursuant to

6   California law.

7       153.    MBUSA's own express application of the California Emissions Warranty

8   constitutes a sufficient connection between California and out-of-state potential Class members.

9   Further, MBUSA's misconduct, namely, MBUSA's failure to identify all emissions-related

10  warranted parts to CARB, a California regulator, occurred in California, and even out-of-state

11  purchasers were harmed by MBUSA's conduct that occurred in California.  MBUSA failed to

12  disclose, in its submissions to CARB, the parts that are properly covered by the California

13  Emissions Warranty.

14      154.    As alleged herein, MBUSA is solely responsible for selecting and identifying to

15  CARB all of the parts that should be classified as emissions warranted parts, and MBUSA failed

16  to include the Subject Parts and other components. Californians and out-of-state potential Class

17  members in the additional States covered by the California Emissions Warranty suffered an

18  identical harm – they were forced to pay the costs of repair or replacement for parts that should

19  have been covered under the California Emissions Warranty. Under these unique circumstances,

20  California has the greater interest in applying California's consumer laws to enforce compliance

21  with the California Emissions Warranty than the other States have in using their consumer laws

22  to enforce the same Regulation. California has a specific interest in regulating conduct outside

23  of California that specifically invokes California emissions requirements and regulations, and

24  California has an interest in preventing illegal practices that involve breach of California

25  emissions law that Defendant has chosen to invoke outside of California in the specific States

26  covered. California also has a supreme interest in applying its own consumer protection laws in

27  ensuring that the California Emissions Warranty is properly interpreted and applied wherever

28  MBUSA has chosen to invoke it.

155.     Under the facts of this specific case, the law of California should be applied because California's interest would be more impaired if its consumer laws to enforce the California Emissions Warranty were subordinated to consumer laws of the other States to which MBUSA has chosen to apply the requirements of the California Emissions Warranty.  Other jurisdictions' interests in applying their own consumer protection laws to their own residents do *not* strongly outweigh the interest California has in applying its consumer protection laws to enforce the California Emission Warranty with respect to the specific potential out-of-state members of the Classes identified herein.  Therefore, Plaintiff exercises her right to expand the Classes to include the same parts on vehicles registered in States other than California.

156.     Furthermore, Plaintiff seeks to expand the Classes to include consumers who have been injured due to MBUSA's wrongful business practice relating to other warranted parts and due to diagnostic fees wrongfully incurred as alleged herein.  There is sufficient similarity among all the Class vehicles and MBUSA's conduct as defined herein in that, among other things, all of the vehicles in the proposed Classes are subject to the same California Emissions Warranty and the same requirements that MBUSA report all emissions-related defects to CARB pursuant to the CCR. MBUSA has acted in a uniform manner with respect to all Class vehicles by failing to properly cover all emissions warranted parts in the Class Vehicles as required under the California Emissions Warranty and as described herein.

157.     Plaintiff's proposed Subject Part Class consists of and is defined as follows:

> All persons in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and/or Washington who, within the last four years, have been owners or lessees of Mercedes C300 vehicles MY2015-2016 equipped with a Thermostat and/or, Vacuum Pump (as defined herein).

158.     Plaintiff's proposed High-Priced Warranted Part Class consists of and is defined as follows:

> All persons in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and/or Washington who, within the last four years, have been owners or lessees of Mercedes vehicles that contained vehicle parts (in addition to the Thermostat

and/or Vacuum Pump) that should have been covered under Mercedes' "high-priced warranted parts" 7-year, 70,000-mile California Emissions Warranty.

159. Plaintiff's proposed Emissions Related Parts Class consists of and is defined as follows:

> All persons in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and/or Washington who, within the last four years, have been owners or lessees of Mercedes vehicles that contained parts (in addition to the Thermostat and Vacuum Pump) that should have been covered as emission-related parts under the California Emissions Warranty.

160. Plaintiff's proposed Out of Pocket Subclass consists of and is defined as follows:

> All persons in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and/or Washington who, within the last four years, have been owners or lessees of Mercedes vehicles and who paid out of pocket for diagnostics, repairs and parts (including but not limited to the Thermostat and Vacuum Pump) that should have been covered under the California Emissions Warranty.

161. Plaintiff's proposed Injunctive and Declaratory Relief Subclass consists of and is defined as follows:

> All persons in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and/or Washington who, within the last four years, have been owners or lessees of Mercedes vehicles covered under the California Emissions Warranty.

162. Excluded from the Classes are MBUSA, its affiliates, employees, officers and directors, and the Judge(s) assigned to this case. Also excluded from the Class Vehicles, as currently defined, are Mercedes Partial Zero Emissions Vehicles and Super Ultra-Low Emissions Vehicle (collectively "PZEV vehicles") (codified at Cal. Code Regs ("CCR" or "the Regulations"), Tit. 13, §§ 2035, 2037, 2038, 1961, 1961.2, 1962, 1962.1 and 1962.2.

163. Plaintiff's primary goal on behalf of the Classes is to obtain injunctive relief requiring MBUSA to comply with the California Emissions Warranty and declaratory relief with respect to the proper interpretation of the California Emissions Warranty and MBUSA's

obligations pursuant to the CCRs and the California Emissions Warranty.  Plaintiff's claim for monetary relief is secondary to her claim for injunctive or declaratory relief.   Even in the absence of possible monetary recovery, Plaintiff would bring this action to obtain the injunctive and declaratory relief sought.  Any monetary relief that would flow to the members of the Classes would be ancillary to the injunctive or declaratory relief obtained.

164.    On behalf of the members of the Classes, Plaintiff seeks injunctive relief requiring MBUSA to comply with the California Emissions Warranty.  This includes that MBUSA, *inter alia*, identify and cover under the California Emissions Warranty all of the parts, components or systems that should have been properly covered under the California Emissions Warranty, and/or that should be properly covered under the California Emissions Warranty on a going forward basis, as emission-related parts and/or high-priced parts, including without limitation, the parts, components or systems identified in MBUSA's own OBD2 Summaries provided to CARB for each Class Vehicle and/or identified in Appendix B to the CARB Regulations, as described herein.

165.    On behalf of the members of the Classes, Plaintiff seeks declaratory judgment/relief pursuant to 28 U.S.C. section 2201 *et seq* as to, *inter alia*, (1) that MBUSA has used, and continues to use, the wrong or incorrect standards for identifying "emission-related" parts and "high-priced warranty parts" under the California Emissions Warranty; (2) that MBUSA failed and is failing to properly identify and warrant under the California Emissions Warranty all of the parts, components or systems that should have been properly covered for emissions-related defects as identified, *inter alia*, per the fault codes on the Class Vehicles OBD2 Summaries described herein, per Appendix B to the CARB regulations and/or as high-priced warranty parts; and/or, (3) that Plaintiff and members of the Classes are entitled to warranty coverage under California Emissions Warranty for all Mercedes vehicle parts not properly identified as warranted parts under the California Emissions Warranty as described or defined herein.

166.    On behalf of the members of the Classes, Plaintiff seeks reimbursement or restitution for the out of pocket expenses, including diagnostic fees for amounts wrongfully paid

by Plaintiff and members of the Classes relating to repairs that should have been covered by the MBUSA California Emissions Warranty during the Class periods.  Plaintiff's claim for restitution is distinct from her claim for damages.  The damages claim under the CLRA seeks, *inter alia*, the diminished value of a California Emissions Warranty that does not cover all parts that should properly be included in the California Emissions Warranty.  Moreover, Plaintiff does not seek the same sum in restitution as she seeks in damages, and the two remedies do not compensate for the same harm.   On behalf of the members of the Classes, Plaintiff seeks damages (separate from restitution) for, *inter alia*, the diminished value of a California Emissions Warranty that does not cover all parts that should properly be covered under the California Emissions Warranty *and* monies that MBUSA profited by not covering parts under the California Emissions Warranty.  The restitutionary remedy, which seeks out of pocket reimbursement, will not compensate Plaintiff and members of the Classes for damages incurred due to the Class Vehicles having a California Emissions Warranty that has less value because the Warranty does not properly cover all parts that should properly be covered under the California Emissions Warranty and will not compensate for the excess amounts and profits that MBUSA pocketed due to its misconduct and in being able to avoid paying warranty claims that should have been covered under the California Emissions Warranty.

167.    The damages remedy under the CLRA also is not an adequate remedy at law for the equitable claims alleged herein under the UCL. "Damages" under the CLRA are for actual damages as described herein and distinct from a "restitution" remedy under the UCL which compensates Plaintiff and members of the Classes for out of pocket losses.  The same recovery available for "restitution" under the CLRA is not available as "damages" under the CLRA because the monetary recoveries address different losses. Moreover, Plaintiff and members of the Classes do not seek the same amount in restitution as they seek in damages.

168.    Further, the harm suffered by Plaintiff and members of the Classes and perpetrated by MBUSA, is not adequately compensable with damages.  The entire purpose of the California Emissions Warranty is to protect the environment. The California Emissions Warranty was enacted by the State of California to restrict harmful greenhouse gas emissions

1    from gasoline and hybrid gasoline engines.  The fundamental purpose of the emissions

2    requirements is to reduce emissions, limit fuel consumption and increase fuel efficiency, by

3    forcing manufacturers to repair and/or replace failed emissions-related vehicle components

4    under warranty, thereby decreasing greenhouse gas emissions, including carbon dioxide

5    emissions.

6         169.    Indeed, motor vehicle use is the single greatest source of U.S. air pollution and is

7    the cause of more air pollution than any other human activity. (*Cars, Fuels, and Clean Air: A*

8    *Review of Title II of the Clean Air Act Amendments of 1990* (1991) 21 Envtl. L. 1947, 1949).

9    Many of these pollutants consist of hydrocarbons and nitrous oxides which react to form

10   photochemical oxidants in the atmosphere. The most notorious of these photochemical oxidants

11   is ozone – the primary component of urban smog. (*California Air Resources Bd., Staff Report:*

12   *Proposed Regulations for Low-Emission Vehicles and Clean Fuels* (Aug. 13, 1990) at p. 3).

13   Cars also produce nearly two-thirds of all carbon dioxide emissions. Carbon dioxide content in

14   the atmosphere is closely linked to global temperature because the temperature of the Earth is

15   primarily determined by the balance between its absorption of energy from the Sun, and the

16   reflection of a portion of this energy back into space. Carbon dioxide – a greenhouse gas – traps

17   the energy and heat which would have otherwise escaped back into space, and re-emits it,

18   causing the warming of our atmosphere. This process is known as the "greenhouse effect."

19        170.    Therefore, the State of California highly regulates emissions from gasoline and

20   hybrid gasoline engines, specifically greenhouse gas emissions.  In September 1990, pursuant to

21   its broad authority to regulate and reduce environmentally harmful vehicle emissions under

22   Health and Safety Code §§ 43013(a) and 43205, CARB submitted, and the Legislature adopted,

23   California Code of Regulation §§ 2035, *et seq.*, which requires all manufacturers to provide a

24   statutorily compliant emissions warranty to all vehicles distributed and registered in California.

25        171.    In September 2004, CARB approved the "Pavley" Greenhouse Gas Regulations

26   to control greenhouse gas emissions from new LEV II vehicles beginning with the 2009 model

27   year. These Greenhouse Gas Regulations added four greenhouse gas air contaminants to the

28   vehicular criteria and toxic air contaminant emissions that California was already regulating –

carbon dioxide (CO2), methane (CH4), nitrous oxide (N2O), and hydrofluorocarbons (air conditioner refrigerants).  The State and federal government have specifically focused on regulating greenhouse gas emissions, including carbon dioxide emissions. If a gas vehicle has a defect which increases fuel consumption, that defect increases carbon dioxide emissions.

172.     Notwithstanding State and federal regulations designed to protect our air, monitoring shows that over 90 percent of Californians breathe unhealthy levels of one or more air pollutants during some part of the year. Despite CARB's best efforts, in 2020, "there were 157 bad air days for ozone pollution—the invisible, lung-searing gas in smog—across the vast, coast-to-mountains basin spanning Los Angeles, Orange, Riverside and San Bernardino counties. That's the most days above the federal health standard since 1997." (Barboza, Tony (Dec. 6, 2020) *L.A. Began 2020 With A Clean-Air Streak but Ended with Its Worst Smog in Decades*, Los Angeles Times [https://www.latimes.com/42alifornia/story/2020-12-06/2020-la-air-quality-southern-california-pollution-analysis].) One of the reasons that our environment is in such a state of crisis is that corporations are not following our very thoroughly formulated rules.

173.     Accordingly, damages are inadequate to compensate for the foregoing harms caused by MBUSA's violation, and continuing violation, of the California Emissions Warranty. Money damages will not fix the harm caused by Defendant's violation of emissions laws, which requires equitable relief.

174.     Further, MBUSA and car manufacturers should not be able to shirk their legal responsibilities simply by paying damages. Simply paying off consumers undermines the entire purpose of the California Emissions Warranty and will leave MBUSA in the position of being able to continue to violate the law and increase harmful vehicle emissions by just paying damages.  Ironically, this result will leave Plaintiff and members of the Classes in an even worse position than by simply receiving monetary compensation alone.

175.     Moreover, payment of damages does not ensure that the emissions parts will actually be repaired.  That result will only be ensured by forcing MBSUA to cover the repair under the California Emissions Warranty as required.

176.     Further, equitable relief is required because damages alone will not be sufficient for Class members to identify all parts whose defects result in fault codes identified in the OBD2 Summaries being triggered.  Only MBUSA has done the analysis and knows the fault code logic that would allow for identification of all required fault codes to CARB and all parts that give rise to those fault codes so that those parts can be identified and properly covered under the California Emissions Warranty.  In effect, Plaintiff's request for equitable relief is the only way to get MBUSA to do what it is required to do.

177.     Plaintiff's proposed Injunctive and Declaratory Relief Subclass seeks injunctive and/or declaratory relief only, which are the primary goals and focus of this action, and does not seek monetary relief.   Plaintiff will seek to certify this Subclass in the event that Plaintiff cannot obtain certification of injunctive and/or declaratory relief under any other Classes as defined herein.

178.     Plaintiff reserves the right to redefine the Classes and to add subclasses as appropriate and to refine or withdraw any remedies or claims based on further investigation, discovery, and specific theories of liability.

179.     As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to the Classes, and those common questions predominate over any questions affecting only individual members. Among the common questions of law and fact include:

(a)     Whether MBUSA has failed, and is failing, to comply with the High-Cost Emissions-Related Parts Warranty by failing to provide a 7-year and 70,000-mile California Emissions Warranty for the vacuum pump, coolant thermostat and/or all parts that should be defined by MBUSA as high-priced warranted parts pursuant to the CCR.

(b)     Whether MBUSA has failed, and is failing, to identify for consumers and dealerships the vacuum pump, and coolant thermostat and/or all parts that should be identified as high-priced warranted parts, and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(c)     Whether MBUSA has engaged in, and is engaging in, a systematic business practice of intentionally failing to identify the vacuum pump and coolant thermostat and/or all parts that should be identified as high-priced warranted parts and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty under the CCR.

(d)     Whether MBUSA has failed, and is failing, to identify the vacuum pump and coolant thermostat and/or all parts that should be identified as high-priced warranted parts and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty in an effort to reduce the amount of money that MBUSA spends on warranty related repairs.

(e)     Whether MBUSA's conduct of failing to identify the vacuum pump and coolant thermostat and/or all parts that should be identified as high-priced warranted parts and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty results in consumers suffering financial loss.

(f)     Whether MBUSA's conduct of failing to identify the vacuum pump and coolant thermostat and/or all parts that should be identified as high-priced warranted parts as identified herein and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty results in wrongfully minimizing the amount of money that MBUSA has to pay out in warranty claims.

(g)     Whether MBUSA's conduct of failing to identify the vacuum pump and coolant thermostat and/or all parts that should be identified as defined herein as high-priced warranted parts and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty violates California law.

(h)     Whether MBUSA has engaged in, and is engaging in, unlawful and unfair business practices in violation of California Business & Professions Code section 17200, *et seq.* with regard to MBUSA's failure to identify the vacuum pump and coolant thermostat and/or all of the high-priced warranted parts that should be

covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(i)     Whether Plaintiff and members of the Classes are entitled to injunctive relief regarding MBUSA's failure to identify the vacuum pump, and coolant thermostat and/or all of the high-priced warranted parts as set forth herein that should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(j)     Whether MBUSA has used, and continues to use, the wrong standard for determining whether a warranted part is emissions related;

(k)     Whether and to what extent members of the Classes have suffered injury or damage as a result of MBUSA using the wrong standard for determining whether a part should be covered under the California emissions warranty;

(l)     The appropriate remedy resulting from MBUSA's violations of California law.

(m)     Whether MBUSA has engaged in, and is engaging, in concealment relating to MBUSA's failure to identify the vacuum pump, and coolant thermostat and/or all of the high-priced warranted parts that should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty; and,

(n)     Whether MBUSA has violated and is violating the Consumers Legal Remedies Act, Civil Code section 1750, *et seq.*, with regard to MBUSA's failure to identify the vacuum pump, and coolant thermostat and/or all of the high-priced warranted parts as set forth herein which should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty.

180.     Numerosity: As required by Fed. R. Civ. P. 23(a)(1), the members of the Classes are so numerous that joinder of all members of the Classes would be unfeasible and impractical, and the resolutions of their claims through the procedure of a class action will be of benefit to the Parties and the Court. The membership of the Classes is unknown to Plaintiff at this time; however, the membership of the Classes is estimated to be greater than one hundred (100)

1   individuals and the identity of such membership is readily ascertainable by inspection of

2   Defendant's records.

3       181.   Typicality: As required by Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical

4   of the claims of all members of the Classes since Plaintiff and all members of the Classes were

5   injured as result of Defendant's concealment and wrongful conduct set forth herein.

6       182.   Adequacy: As required by Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and

7   adequately protect the interests of the members of the Classes. Plaintiff has no interests adverse

8   or antagonistic to those of the Classes and has retained counsel competent and experienced in

9   class action litigation who will zealously prosecute this matter on behalf of the Classes to its

10  conclusion

11      183.   Superiority: As required by Fed. R. Civ. P. 23(b)(3), the nature of this action

12  makes the use of class action adjudication superior to other methods. A class action will achieve

13  economies of time, effort, and expense as compared with separate lawsuits, and will avoid

14  inconsistent outcomes because the same issues can be adjudicated in the same manner and at the

15  same time for the entire class.

16      184.   Defendant keeps extensive computerized records of its customers. Defendant has

17  one or more databases through which a significant majority of members of the Classes may be

18  identified and ascertained, and it maintains contact information, including email and home

19  mailing addresses, through which notice of this action could be disseminated in accordance with

20  due process requirements.

21      185.   Further, the specific vehicle parts in the Class Vehicles that are at issue in this

22  action are ascertainable and identifiable, as set forth herein.

23      186.   Class certification of Plaintiff's claims is also appropriate pursuant to Fed. R.

24  Civ. P. 23(b)(1)-(2) because Defendant has acted or refused to act on grounds generally

25  applicable to Plaintiff and members of the Classes, making appropriate both declaratory and

26  injunctive relief with respect to Plaintiff and members of the Classes.

27      187.   Certification of Plaintiff's claims is also appropriate pursuant to Fed. R. Civ. P.

28  23(c)(4) because certification of the liability issues identified by Plaintiff will significantly

advance the resolution of the underlying case and will materially advance the disposition of the case as a whole.

## TOLLING OF THE STATUTE OF LIMITATIONS

188.    Any applicable statute(s) of limitations have been tolled by MBUSA's knowing and active concealment relating to its failure to properly identify all of the parts that should be identified as high-priced warranted parts covered under the 7-year and 70,000-mile California Emissions Warranty. Despite acting diligently, Plaintiff and members of the Classes could not have been reasonably expected on their own to learn or discover what parts and repairs should be identified as high-priced and covered under the 7-year and 70,000-mile California Emissions Warranty. Therefore, the discovery rule is applicable to the claims asserted by Plaintiff and members of the Classes, and the statute of limitations for bringing the claims set forth herein should be tolled.

189.    In addition, even after Plaintiff and members of the Classes contacted MBUSA and/or its authorized dealers for vehicle repairs to high-priced emission warranted parts, they were routinely told by MBUSA and its agents that the parts did not qualify for high-priced coverage under the 7-year and 70,000-mile California Emissions Warranty law.

190.    MBUSA has actual and constructive knowledge that it is violating California law by failing to identify all of the parts that should be identified as high-priced warranted parts, and by failing to provide a 7-year and 70,000-mile California Emissions Warranty relating to said parts. MBUSA has concealed from Plaintiff and members of the Classes that MBUSA is violating California law as set forth herein.

191.    MBUSA was and remains under a continuing duty to disclose to Plaintiff and members of the Classes all of the parts and repairs for Class Vehicles that should be identified as high-priced and covered under the 7-year and 70,000-mile California Emissions Warranty. As a result of MBUSA's wrongful conduct set forth herein, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled. MBUSA is further estopped from relying on any statute of limitation because of its concealment set forth herein.

**FIRST CLAIM FOR RELIEF**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code § 17200, *et seq.*)**

192.    Plaintiff re-alleges and incorporates by reference each allegation set forth above.

193.    California Business and Professions Code section 17200, *et seq*. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." MBUSA has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

194.    The UCL imposes strict liability. Plaintiff need not prove that MBUSA intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

195.    MBUSA is a "person" as defined by Business & Professions Code § 17201.

196.    As a direct and proximate result of MBUSA's acts and practices in violation of the UCL, Plaintiff and members of the Classes have suffered injury in fact and lost money or property as set forth above and will continue to do so.

**<u>Unlawful Prong</u>**

197.    A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including standard of professional conduct. The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

198.    MBUSA failed to comply with the California Emissions Warranty requirements pursuant to the CCR by failing to provide 7-year and 70,000-mile warranty coverage for the coolant thermostats installed in the Class Vehicles, and the vacuum pumps installed in the Class Vehicles and all other parts as identified herein where coverage should be provided pursuant to the CCR.   The parts eligible for coverage are identified in, *inter alia*, the OBD2 Summaries that MBUSA submits to CARB which purport to identify all "emissions-related parts" that could also be subject to extended warranty coverage as "high-priced parts."  The California Emissions Warranty applies to all Class Vehicles. 13 CCR 2037(a). Pursuant thereto, manufacturers shall warrant that vehicles conform with the California Air Resources Board regulations, and are free

1   from defects which cause the failure of a warranted part to perform as described in the

2   application for certification, including defects which would cause the vehicle's on-board

3   diagnostic malfunction indicator to illuminate, for 3 years or 50,000 miles. 13 CCR 2037(b)(1)-

4   (2). The vehicle manufacturer is MBUSA, which is the manufacturer granted certification for

5   the Class Vehicles. 13 CCR 2035(c)(5). The parts at issue are all warranted parts. The warranty

6   period shall be 7- years and 70,000 miles for high-priced emissions parts. 13 CCR 2037(b)(3).

7   High-priced emissions parts are those parts which, when taking into consideration the cost to

8   diagnose, replace and pay for the failed part, exceed the cost limit defined in 13 CCR

9   2037(c)(3). The California Air Resources Board published memos which calculated the cost

10  limit for years 2015, 2016, 2017, and 2018. Although the coolant thermostats installed in the

11  Class Vehicles, the vacuum pumps installed in the Class Vehicles, and other parts installed in

12  the Class Vehicles exceeded the cost limit for the correlating years and should have received

13  California Emissions Warranty coverage, MBUSA failed to provide 7-year and 70,000-mile

14  warranty coverage for said parts. The failure has resulted in damage to Plaintiff and members of

15  the Classes.

16       199.    MBUSA did not designate the parts at issue as "emissions-related" and/or high-

17  priced warranted parts that should be covered by the 7-year and 70,000-mile California High-

18  Cost Emissions-Related Parts Warranty. Thereby, MBUSA also was able to avoid identifying

19  the coolant thermostats installed in the Class Vehicles and the vacuum pumps installed in the

20  Class Vehicles and all other parts as defined herein where coverage should be provided pursuant

21  to the CCR as being high-priced warranted parts in the warranty books for the Class vehicles,

22  which purport to identify all parts covered under the high-priced California Emissions Warranty

23  for 7 years and 70,000 miles. MBUSA failed to designate all parts that should be identified as

24  emissions related.  Thus, MBUSA's violation of Section 2037(c)(1)(B) directly affected

25  communications with consumers. By violating Section 2037(c)(1)(B), MBUSA was able to

26  avoid disclosing in the warranty books all of the parts that should have been included as high-

27  priced warranted parts.

28

200.     MBUSA's conduct also violates the unlawful prong in that MBUSA has violated the CLRA as further alleged below.

201.     MBUSA's acts of unlawful competition as set forth above have caused members of the Classes to suffer damage, present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. Section 1021.5.

**Unfair Prong**

202.     MBUSA's conduct violates the unfair prong of the UCL.

203.     An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions. MBUSA's conduct violates all of these definitions.

204.     As alleged above, MBUSA engages and has engaged in a systematic business practice of intentionally failing to identify in the Class Vehicles' warranty books at the time of distribution, and in resources provided to its dealerships, numerous parts that MBUSA is obligated to identify as high-priced warranted parts and emission related parts by operation of law, including specifically the coolant thermostats installed in the Class Vehicles, the vacuum pumps installed in the Class Vehicles, and all other parts as defined herein where coverage should be provided pursuant to the CCR. MBUSA does this in an effort to reduce the amount of money that MBUSA spends on warranty-related repairs knowing that it would be very difficult if not impossible for most consumers to discover this unlawful conduct. If MBUSA complied with California law and properly identified all of the parts that should be identified as high-priced warranted parts, then MBUSA dealerships would properly provide warranty coverage for said high-priced warranted parts.

1     205.    Further, MBUSA's conduct is unfair because it intentionally refuses to provide

2   warranty coverage for the coolant thermostats installed in the Class Vehicles and the vacuum

3   pumps installed in the Class Vehicles and other high priced parts and emission related parts as

4   defined herein for the sole purpose of wrongfully limiting its warranty claims, with no regard

5   for the fact that the public is being forced to pay for repairs which should be covered under the

6   7-year and 70,000-mile California Emissions Warranty. Plaintiff and members of the Classes

7   have suffered injury in fact and lost money or property as a result of MBUSA's unfair business

8   acts and practices as set forth in detail.

9     206.    MBUSA's failure to properly identify the coolant thermostats installed in the

10   Class Vehicles and the vacuum pumps installed in the Class Vehicles and all other parts as

11   defined herein where coverage should be provided pursuant to the CCR, is a uniform,

12   systematic, and intentional business practice on the part of MBUSA to minimize the amount of

13   money that MBUSA has to pay out in warranty claims. This conduct violates California law.

14     207.    As a direct and proximate result of MBUSA's acts and practices in violation of

15   the UCL, Plaintiff and members of the Classes have paid out of pocket to repair or replace the

16   coolant thermostats installed in the Class Vehicles, the vacuum pumps installed in the Class

17   Vehicles, all other parts where coverage should be provided pursuant to the CCR and/or other

18   high-priced warranted parts and emissions related parts as defined herein that should have been

19   covered by MBUSA under the 7-year and 70,000-mile California Emissions Warranty. As a

20   result, consumers were denied warranty coverage, which is clearly unfair.

21     208.    MBUSA's conduct does not benefit consumers or competition. Plaintiff and

22   members of the Classes could not reasonably avoid the injury each of them suffered or will

23   suffer, which injury is substantial. MBUSA's conduct only benefits MBUSA, by MBUSA

24   wrongfully avoiding having to pay warranty claims which should be covered by the California

25   Emissions Warranty.

26     209.    The gravity of the consequences of MBUSA's conduct as described above

27   outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous.

28

210.    MBUSA's conduct also offends established public policy that is tethered to legislatively declared policies as set forth in the laws detailed above, including California laws and regulations regarding the California Emissions Warranty, or is substantially injurious to the public, for the reasons set forth above.

211.    To the extent that any definition of "unfair" requires a balancing test or weighing various factors, such an inquiry is fact intensive and requires a full factual record as to MBUSA's justification and motives for its conduct, and as to the impact of MBUSA's conduct on Plaintiff and members of the Classes.

212.    MBUSA's acts of unfair competition as set forth above present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. § 1021.5.

### **Deceptive Prong**

213.    Plaintiff's claim under this prong is predicated on omissions, not misrepresentations. While the warranty booklets for Class Vehicles claim to identify all of the parts covered under the 7-year and 70,000-mile California Emissions Warranty, the warranty books omit the coolant thermostats installed in the Class Vehicles, the vacuum pumps installed in the Class Vehicles, and all other emissions-related parts as defined herein that that should have been listed by MBUSA as covered by the California Emissions Warranty pursuant to the CCR.

214.    MBUSA engages in a uniform and systematic business practice of intentionally failing to identify in the MBUSA warranty books, and in resources provided to its dealerships, all high-priced and emissions related warranted parts, including the coolant thermostats installed in the Class Vehicles, the vacuum pumps installed in the Class Vehicles, and all other parts as defined and limited herein where coverage should be provided pursuant to the CCR installed in the Class Vehicles as high-priced warranted parts. MBUSA does this in an effort to intentionally conceal the identity of the parts which should be covered under the 7-year and 70,000-mile California Emissions Warranty for high-priced emissions parts. This has intentionally misled

consumers with regard to what parts are covered under the 7-year and 70,000-mile California Emissions Warranty for high-priced parts, and reduced the amount of money that MBUSA spends on warranty-related repairs. As warranted parts necessary for the operation of the vehicles, the parts that MBUSA failed to properly identify as high-priced relate to the central functionality of the vehicles and are critical to the vehicles' operation. If MBUSA complied with California law, and properly identified all parts as defined and limited herein as high-priced warranted parts which should be identified as such, then MBUSA dealerships would properly provide warranty coverage for said high-priced warranted parts.

215.    MBUSA's failure to properly identify the coolant thermostats installed in the Class Vehicles, the vacuum pumps installed in the Class Vehicles and all other high-priced warranted parts and emissions related parts as high-priced warranted parts as defined and limited herein is a systematic and intentional business practice on the part of MBUSA to minimize the amount of money that MBUSA has to pay out in warranty claims. This conduct violates California law.

216.    Said conduct is likely to deceive an ordinary consumer as MBUSA concealed this information from consumers and from MBUSA's dealerships, in an effort by MBUSA to minimize the amount of money that MBUSA has to pay out in warranty claims. One of the ways MBUSA misleads consumers relates to the information that MBUSA provides to consumers in the MBUSA warranty books. MBUSA intentionally omits information from the warranty books by intentionally failing to classify all of the high-priced warranted parts as parts that should be covered under the 7-year and 70,000-mile California Emissions Warranty.

217.    In evaluating the repair costs to be charged, Plaintiff and members of the Classes have justifiably relied on the information in the warranty booklets about parts that should be covered under the high-priced emissions warranty and have been deceived and suffered damage as a result of MBUSA's intentional and wrongful conduct.

218.    MBUSA is fully aware of its obligations pursuant to the CCR and purports to comply with them. However, in derogation if its legal obligations, MBUSA willfully and intentionally conceals from consumers, and from the MBUSA dealerships, the coolant

1   thermostats installed in the Class Vehicles, the vacuum pumps installed in the Class Vehicles,

2   and all other parts as defined herein where coverage should be provided pursuant to the CCR as

3   parts that should be covered as high-priced warranted parts and emissions related parts as

4   defined herein pursuant to the California Emissions Warranty, in order to reduce the amount of

5   money that MBUSA has to pay in warranty claims.

6        219.   MBUSA is and was under a duty to disclose to consumers and to its dealerships

7   that the coolant thermostats installed in the Class Vehicles, the vacuum pumps installed in the

8   Class Vehicles, and/or all the other high-priced parts and emissions-related parts as defined and

9   limited herein are required to be covered under the California Emissions Warranty pursuant to

10  the CCR.

11       220.   MBUSA is and was further under a duty to disclose to consumers and to its

12  dealerships all of the parts as defined herein which it is required to cover under the 7-year and

13  70,000-mile California Emissions Warranty because:

14            (1)   MBUSA is and was in a superior position to know the true state of facts

15        about the duration of the California Emissions Warranty and which parts should be

16        covered as high-priced warranted parts;

17            (2)   MBUSA has made partial disclosures about the extent of the California

18        Emissions Warranty;

19            (3)   MBUSA has actively concealed and failed to identify all of the parts that

20        are covered under the California Emissions Warranty; and,

21            (4)   Members of the Classes, including Plaintiff, have suffered actual loss due

22        to MBUSA's concealment and false representations.

23       221.   The facts concealed and not disclosed by MBUSA to Plaintiff and members of

24  the Classes are material. Had Plaintiff and members of the Classes known the true extent of the

25  California Emissions Warranty and had MBUSA been truthful to its dealerships and members of

26  the Classes with regard to identifying all of the parts and repairs as defined herein that are

27  covered under the California Emissions Warranty, Plaintiff and members of the Classes would

28

1    have been able to avoid spending money in order to repair MBUSA vehicles sold and leased in

2    California. As a result, Plaintiff and members of the Classes have suffered damage.

3        222.    In order to minimize the amount of money that MBUSA spends on warranty

4    related repairs, MBUSA continues to conceal that the coolant thermostats installed in the Class

5    Vehicles, the vacuum pumps installed in the Class Vehicles, all other parts as defined herein

6    where coverage should be provided pursuant to the CCR, and other high priced warranted parts

7    and emissions related parts as defined herein are warranted parts that should be covered under

8    the California Emissions Warranty.

9        223.    Furthermore, MBUSA has refused to, and continues to refuse to provide 7-year

10   and 70,000-mile California Emissions Warranty coverage relating to all repairs for the coolant

11   thermostats installed in the Class Vehicles, the vacuum pumps installed in the Class Vehicles,

12   all other parts as defined herein where coverage should be provided pursuant to the CCR, and

13   other high-priced warranted parts and emissions related parts as defined herein which should be

14   covered under said warranty pursuant to California law. This refusal is intentional, willful,

15   unfair, and unlawful.

16                              **SECOND CLAIM FOR RELIEF**

17                  **Violation of California Consumers Legal Remedies Act**

18                        **(Cal. Civil Code § 1750, *et seq*.)**

19       224.    Plaintiff re-alleges and incorporates by reference each allegation set forth above.

20       225.    MBUSA has violated Section 1770 of the California Consumers Legal Remedies

21   Act, Cal. Civ. Code Section 1750, *et seq*. (the "CLRA"). The violation results from MBUSA's

22   failure to keep its promise to the State of California, and members of the Classes, including

23   Plaintiff, that it would honor the terms of the MBUSA warranty, and by doing so, that it would

24   honor the terms of the CCR. Furthermore, the MBUSA warranty book provided by MBUSA to

25   consumers, including Plaintiff, specifically references the California Emissions Warranty, and

26   both inferentially and specifically represents that it will honor the terms of the CCR, however

27   MBUSA has refused, and continues to refuse to honor the terms of the CCR, as stated herein.

28

226.     Plaintiff is a consumer who was wrongfully required to pay for repairs which should have been paid for by MBUSA pursuant to the CCR. The Vehicle was presented by Plaintiff for repairs at MBUSA authorized repair facilities, in compliance with the terms and conditions of the MBUSA warranty. The Vehicle required repairs which should have been covered pursuant to the CCR, based upon the Vehicle's mileage and age. MBUSA wrongfully failed and refused to pay for the warranty repairs due to the unlawful pattern and practice set forth herein. Thus, Plaintiff suffered damage.

227.     MBUSA knows that it is violating the terms of the CCR, however MBUSA intentionally violates the CCR in order to save money. Plaintiff and members of the Classes are generally unaware of the terms and scope of the CCR, thus MBUSA is able to get away with said wrongful conduct. As a result, Plaintiff and members of the Classes have suffered damage. MBUSA engages in a systemic pattern of denying warranty claims under the CCR relating to high-priced warranted parts.

228.     Plaintiff and members of the Classes have presented Class Vehicles to MBUSA authorized repair facilities for repairs that should have been covered under the CCR, but coverage has been wrongfully denied to them. As a result, Plaintiff and members of the Classes have thus suffered damage. Plaintiff brings this claim on behalf of Plaintiff and members of the Classes.

229.     MBUSA's conduct in warranting, advertising, leasing, selling and distributing Class Vehicles in the State of California, while at the same time knowingly and wrongfully failing to honor the terms of the CCR, constitutes the following violations of Section 1770:

(a)     MBUSA represents and has represented that Class Vehicles sold and leased in the State of California have characteristics or benefits which they did not have (in violation of Section 1770(a)(5));

(b)     MBUSA has falsely represented that Class Vehicles sold and leased in the State of California were of a particular standard, quality, or grade when they were of another (in violation of Section 1770(a)(7)); and,

1    (c)    MBUSA advertised Class Vehicles that have been sold and leased in the State of

2    California with the intent not to sell them as advertised (in violation of Section 1770(a)(9)).

3    230.    Civil Code section 1780(a) provides that any consumer who suffers damage as a

4    result of a violation of the CLRA may bring an action to recover: 1) actual damages, but in no

5    case shall the total award of damages in a class action be less than $1,000; 2) an order enjoining

6    the methods, acts, or practices; 3) restitution of property; 4) punitive damages; and 5) any other

7    relief that the court deems proper.

8    231.    Civil Code section 1781 provides that Plaintiff may pursue this case as a class

9    action.

10    232.    Plaintiff requests injunctive relief pursuant to Civil Code 1782(d).

11    233.    Plaintiff is entitled to attorney fees pursuant to Civil Code section 1780(e).

**PRAYER FOR RELIEF**

13    WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for

14    relief and judgment against MBUSA as follows:

15    (a)    An order certifying the proposed Classes, designating Plaintiff as named

16    representative of the Classes, and designating the Plaintiff's Counsel as Class Counsel;

17    (b)    A declaration that MBUSA is financially responsible for notifying all members

18    of the Classes about the wrongful conduct set forth herein; that MBUSA's conduct as alleged

19    herein violates the California Emissions Warranty including, without limitation, that MBUSA

20    has used, and continues to use, the wrong or incorrect standards for identifying "emission-

21    related" parts and "high-priced warranty parts" under the California Emissions Warranty; that

22    MBUSA failed and is failing to properly identify and warrant under the California Emissions

23    Warranty all of the parts, components or systems as defined and limited that should have been

24    properly covered for emissions-related defects as identified, *inter alia*, per the fault codes on the

25    Class Vehicles OBD2 Summaries described herein, per Appendix B of the CARB regulations,

26    and/or as high-priced warranty parts; and/or that Plaintiff and the members of the Classes are

27    entitled to warranty coverage under California Emissions Warranty for all Mercedes vehicle

28    parts not properly identified as warranted parts under the California Emissions Warranty as

described or defined herein.

c)      An order requiring MBUSA to, *inter alia*,  (1) review its warranty books for all Class Vehicles and properly identify and warrant all "emissions-related parts" and (2) for all such parts, and for all parts that MBUSA already identified in its warranty books or that MBUSA previously identified and submitted to CARB in OBD2 Summaries or elsewhere as "emissions parts" or "emissions-related parts," recalculate whether those parts, in fact, should properly be characterized as "high priced parts" when the correct, customer pay rate is used; (3) on a going forward basis, use the proper standard for determining whether a part is "emissions-related" under the California Emissions Warranty; (4) on a going forward basis cease its current practice of using the warranty pay rate and instead use the customer pay rate to determine whether a part covered under the California emissions warranty is high-priced under the California Emissions Warranty; (5) otherwise accurately and comprehensively apply the CCR in order to properly identify all parts as defined and limited herein that should be covered under the California Emissions Warranty; and (6) enjoin MBUSA from further deceptive distribution, sales, and lease practices, and to reimburse both Plaintiff and members of the Classes for the money wrongfully paid by Plaintiff and members of the Classes relating to repairs which should have been covered by MBUSA under the California Emissions Warranty .

(d)      An award to Plaintiff and members of the Classes of any repair costs they are owed, reimbursement for all out-of-pocket expenses, including diagnostic costs, that MBUSA owners and lessees wrongly paid for repairs that should properly have been covered by MBUSA under the California Emissions Warranty and other amounts to which they may be legally entitled;

(e)      An award to Plaintiff and members of the Classes of damages in an amount to be proven at trial, including disgorgement, for the benefit of the Classes, all or part of the ill-gotten profits it received as a result of the wrongful conduct set forth herein;

(f)      An award of attorneys' fees and costs as allowed by law and/or pursuant to California Code of Civil Procedure § 1021.5;

(g)      An award of pre-judgment and post-judgment interest;

1        (h)     Leave to amend the Complaint to conform to the evidence produced at trial;

2  and,

3        (i)     Other relief as may be appropriate under the circumstances.

## **DEMAND FOR JURY TRIAL**

Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiff hereby demands a trial by jury as to all claims so triable.

Dated:  February 16, 2022                Respectfully submitted,

**POMERANTZ LLP**
**THE LAW OFFICE OF ROBERT STARR**

By:  _____/s/ Ari Y. Basser_____
Jordan L. Lurie
Ari Y. Basser
Robert L. Starr

*Attorneys for Plaintiff*