UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY HAZDOVAC,<br><br>Plaintiff,<br><br>v.<br><br>MERCEDES-BENZ USA, LLC,<br><br>Defendant. | Case No. 20-cv-00377-RS<br><br>**ORDER GRANTING MOTION TO STRIKE AND DENYING MOTION TO DISMISS** |

## I. INTRODUCTION

In this putative class action concerning Mercedes misrepresenting which car parts are covered by a certain warranty, Plaintiff moved to file a Second Amended Complaint ("SAC") and appended that proposed amended Complaint. Plaintiff was given leave to file "the" proposed Complaint. Instead of filing that Complaint, Plaintiff filed a different amended Complaint, with many changes. This was inappropriate, especially as the changes affected the substance of the case in at least some way. Mercedes's motion to strike the currently filed SAC is granted, and Plaintiff is directed to file the approved SAC in its stead.

Mercedes also moves to dismiss the Complaint, on a plethora of different grounds: Rule 9(b), equitable abstention, primary jurisdiction, various standing issues, knowledge and reliance, adequate remedies at law, choice of law rules for non-California buyers, issues with the warranty, and supposed problems with specific parts of the Complaint. Mercedes throws much at the wall but ultimately nothing sticks. Its motion to dismiss ("MTD") is denied. Both motions are suitable for disposition without oral argument and the hearing tomorrow is vacated pursuant to Local Rule

7-1(b).

## II. BACKGROUND

The full background of this case is set out in previous orders. In brief, Plaintiff avers that Mercedes systematically misclassifies certain parts as not being emissions-related or not being high-priced, which allows them to give lesser warranties on those parts than California law would require if they were classified correctly. For example, Plaintiff argues Mercedes misuses the prices given to dealers instead of consumers. Plaintiff's previous motion to amend sought to clarify that her suit reached all parts Mercedes misclassified. While Mercedes argued this was a drastic expansion of the suit, the motion was granted because Plaintiff had sought injunctive relief requiring Mercedes to identify all misclassified parts throughout the suit.

## III. LEGAL STANDARD

Pursuant to Rule 12(f), a court may strike claims from a pleading for failure to comply with a court order. *See, e.g.*, *Siskiyou Reg'l Educ. Project v. U.S. Forest Serv.*, No. CIV. 03-3013-CO, 2005 WL 2675189, at *2 (D. Or. Oct. 19, 2005) (striking claims because they were in contravention of the court's previous order limiting such claims), *aff'd*, 565 F.3d 545 (9th Cir. 2009). Striking is a severe measure and facts should be viewed in the light most favorable to plaintiffs, yet there is wide discretion in this area. *Jeanniton v. City of Honolulu*, 2021 U.S. Dist. LEXIS 145737 at *9 (D. Haw. Aug. 4, 2021); *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1528 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A motion to dismiss for failure to meet this standard may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). In other words, the complaint must contain "factual content allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009), and be "sufficiently detailed to give fair notice to the opposing party of the nature of the claim so that the party may effectively

1 defend against it[.]" *Sensible Foods, LLC v. World Gourmet, Inc.*, 2011 WL 5244716, at *3 (N.D.
2 Cal. Nov. 3, 2011) (citing *Starr v. Baca*, 633 F.3d 1191, 1204 (9th Cir. 2011)).

### IV. DISCUSSION

**A. Motion to Strike**

Plaintiff was not granted leave to file whatever Complaint she wished. She was granted leave to file a specific proposed Complaint, and any assumption otherwise was not reasonable. The motion was so predicated; the order discussed the specifics of the proposed Complaint; and granted leave to file only "the" proposed Complaint. The new Complaint is littered with hundreds of changes compared to the proposed complaint, with paragraph after paragraph of new material in certain sections. While Plaintiff may be correct that these new averments do not significantly change the heft of the Complaint, they do modify the substance to at least some degree. In any case, filing anything but the proposed complaint was inappropriate. (This is unlike a situation in which plaintiffs have not submitted a specific proposed amended complaint, or an order is phrased as granting leave to file a complaint amending a specific count.) Thus, as in *Hyatt v. Miller*, striking the overreaching Complaint is an appropriate remedy. 2020 U.S. Dist. LEXIS 177179, at *5-*6 (W.D.N.C. Sept. 25, 2020); *see also, e.g.*, *F.D.I.C. v. Kooyomjian*, 220 F.3d 10, 15 (1st Cir. 2000).

The purpose of motions to strike is to avoid time and cost on spurious litigation. Material should be stricken only if it should have no impact on the outcome of the litigation. Given Plaintiff herself argued her previous motion to amend was only out of an abundance of caution, and the previous order granted it more to clarify the pleadings than to change them, striking is appropriate here. *See Wailua Assocs. v. Aetna Cas. & Sur. Co.*, 183 F.R.D. 550, 554 (D. Haw. 1998). While the material stricken is not itself spurious, it still furthers the policy aim of Rule 12 to strike it. Parties should not have to run redlines on filed documents to make sure there has been no funny business. Plaintiff filed a proposed amended Complaint, and the parties and the court focused on the specifics of that proposed Complaint. If Plaintiff had sought a more general leave to amend, this motion might have been avoided. Instead, by committing to a specific proposed amended

complaint, and not indicating it was merely an example of the sort of amendment she had in mind, Plaintiff has now wasted time of the court and other litigants.

The sole remaining question on this motion is whether to force Plaintiff to revert to the First Amended Complaint, or to allow her to file the originally proposed Second Amended Complaint. Courts striking material in this situation generally do not force a further rollback to a previous version of the Complaint. *See, e.g.*, *Kooyomjian*, 220 F.3d at 15. In this case, the 20 days given for filing the proposed Complaint might have contributed to the assumption that further changes were permissible, even though that would not have been a reasonable interpretation. Still, it is enough reason that no further sanctions are justified beyond striking the unapproved Complaint. Plaintiffs are directed to file the approved SAC within two days of this order.

**B. Motion to Dismiss**

**1. Rule 9(b)**

Mercedes moves to dismiss the Complaint, on a long list of grounds. (Several of these are effectively motions for reconsideration from the previous MTD.) First, it argues Plaintiff's Consumer Legal Remedies Act ("CLRA") and Unfair Competition Law ("UCL") claims must satisfy Rule 9(b)'s heightened pleading standard requiring specifics for claims sounding in fraud. (Somewhat ironically, Mercedes itself advances this argument in only a conclusory fashion.) Not all claims under these statutes must satisfy the heightened pleading requirements; only those grounded in fraud. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). Plaintiff does not address this issue in her opposition. Elsewhere in her brief, however, Plaintiff makes clear that her case does not depend on there being an intentional misrepresentation. *See* Opp. at 17-18 (discussing reliance and scienter). Thus, Rule 9(b) is not a bar at this stage.

**2. Equitable Abstention**

Mercedes next argues adjudication of Plaintiff's UCL claim and the equitable portion of her CLRA claim should be subject to abstention on equitable grounds. Specifically, Mercedes argues Plaintiff effectively asks for a judicial assumption of the role of the California Air Resources Board ("CARB"), the group that approves the list of warranted parts. Mercedes notes

that determining whether something is a high-priced emissions-related part can involve repeated consultation with CARB and detailed technical investigation inappropriate for resolution through a lawsuit. Further, courts "cannot assume general regulatory powers … through the guise of enforcing [the UCL]." *Samura v. Kaiser Found. Health Plan, Inc.*, 17 Cal. App. 4th 1284, 1301-02 (1993).

That is not at all what Plaintiff asks for here. She seeks only a determination of whether Mercedes is complying with the law generally or flouting it systematically, using basic factfinding and statutory interpretation litigation tools. Courts are well-suited for this task. *See, e.g.*, *Arce v. Kaiser Foundation Health Plan, Inc.*, 181 Cal. App. 4th 471, 495-96 (2010). Plaintiff does not knock on the courthouse door again and again with a motley collection of quibbles about different classifications, each with unique reasoning. Instead, she levels a few general allegations, e.g., Mercedes uses the wrong type of price across the board in classifying parts.

Thus, this case is unlike *Alvarado*, where, in Mercedes's words, the court was asked to "apply the statute's formula … calculate the legally mandated staffing levels, and to determine the defendant's compliance or noncompliance in each skilled nursing facility serving the class." Mot. at 9, citing *Alvarado v. Selma Convalescent Hosp.*, 153 Cal. App. 4th 1292, 1297 (2007). Finally, it bears mentioning that Mercedes's concern for CARB is curious given CARB has submitted a declaration in support of one of Plaintiff's positions earlier in the case without objecting to the case as a whole. Equitable abstention is inappropriate on this ground.

Mercedes also argues for equitable abstention because administrative remedies are available and more effective. In outlining these supposed remedies, Mercedes simply describes the existing regulatory process through which CARB approves lists of parts. This does not advance Mercedes' case. Mercedes does not point to any mechanism by which Plaintiff can petition CARB directly for review of Mercedes' parts, or any similar administrative remedy. Plaintiff argues the existing administrative process has failed, and asks the court for redress. Equitable abstention is not justified in this case.

### 3. Primary Jurisdiction

Mercedes also argues the Complaint should be dismissed in deference to CARB under the prudential primary jurisdiction doctrine. "The primary jurisdiction doctrine allows [a district] court[] to stay proceedings or to dismiss a complaint without prejudice pending the resolution of an issue within the special competence of an administrative agency." *Clark v. Time Warner Cable*, 523 F.3d 1110, 1114 (9th Cir. 2008). Mercedes walks through the factors that are traditionally considered in this area: in short, the need to resolve an issue placed by Congress with the jurisdiction of an administrator with a comprehensive regulatory scheme requiring expertise or uniformity. Mercedes makes a superficially convincing case for why that applies here.

Yet declining jurisdiction under this doctrine is inappropriate, for similar reasons as to why equitable abstention is unjustified. Mercedes' argument would justify declining jurisdiction in nearly every case involving the auto industry, and a host of others. This doctrine is reserved for a "limited set of circumstances" that "'requires resolution of an issue of first impression, or of a particularly complicated issue that Congress has committed to a regulatory agency.'" *In re JUUL Labs, Inc., Marketing, Sales Practices, and Products Liability Litigation*, 497 F. Supp. 3d 552, 580 (N.D. Cal. 2020) (quoting *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 760 (9th Cir. 2015.) The existence of an administrative agency with a mandate from Congress does not mean jurisdiction should be declined in the normal case; as is the situation here. Further, "common sense tells us that even when agency expertise would be helpful, a court should not invoke primary jurisdiction when the agency is aware of but has expressed no interest in the subject matter of the litigation." *Astiana*, 783 F.3d at 761. Here, CARB has not objected to this case proceeding. To the contrary, it submitted a declaration for Plaintiff.

### 4. Remedies at Law

Another reason Plaintiff's Complaint should be dismissed, Mercedes argues, is because she has an adequate remedy at law. Unlike the two discretionary doctrines discussed above, if there is an adequate remedy at law a plaintiff's claim for equitable relief must be dismissed. *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 841-44 (9th Cir. 2020). Plaintiff requests money damages

1   under the CLRA and restitution under the CLRA and UCL. Plaintiff argues she lacks an adequate

2   remedy at law because she makes a restitution claim for her out of pocket expenses, distinct from

3   damages for the diminished value of her vehicle's warranty. Mercedes argues *Sharma* rejected this

4   sort of logic as a distinction without a difference. *Sharma v. Volkswagen AG*, 524 F. Supp. 3d 891

5   (N.D. Cal. 2021). *Sharma* involved misrepresentations about a braking system; plaintiffs alleged a

6   loss of money or value. This case is arguably closer to another case Mercedes cites, *Gibson*, when

7   a court held that plaintiffs had an adequate remedy at law for Jaguar improperly denying high-

8   priced warranty coverage for certain parts. *Gibson v. Jaguar Land Rover N. Am.*, 2020 U.S. Dist.

9   LEXIS 168724, at *9 (C.D. Cal. Sept. 9, 2020). It is true that a nominal difference in value

10  between restitution and damages does not necessarily excuse plaintiffs from complying with

11  *Sonner*.

12        Plaintiff responds that the order on the previous motion to dismiss decided this issue, and

13  there is no reason to revisit it. Dkt. No. 33. Further, she argues recent caselaw has limited *Sonner*'s

14  scope, e.g., *Martin v. Ford*, CV 20-10365-DMG (JPRx) (C.D. Cal. Feb. 17, 2022). (Plaintiff's

15  Request for Judicial notice of this decision and its other similar requests are denied as moot; any

16  court's public order can be considered without such a request.) *Martin* allowed both theories to

17  survive a MTD because "[i]f Plaintiff fails to prove deception but still establishes unlawfulness,

18  restitution would be the only available remedy." *Id.* at 8. Just such an outcome seems possible

19  here, so it is not clear Plaintiff indeed has an adequate remedy at law, and Mercedes's motion

20  cannot be granted on this basis.

21        Mercedes also argues injunctive relief is inappropriate as the complained-of future

22  environmental harms are neither real nor imminent. *Clark v. City of Lakewood*, 259 F.3d 996,

23  1007 (9th Cir. 2001). It notes Plaintiff repaired each defect despite the lack of warranty coverage.

24  Yet there are likely some Mercedes owners who do not perform a repair because it is not covered

25  by the warranty, or at least delay it, which—assuming there is at least one misclassified emissions-

26  related part under Plaintiff's theory—would lead to environmental harm. Thus, assuming Plaintiff

27  is correct about at least one part, and the factual inferences must be drawn in her favor for this

motion, there is real environmental harm.

### 5. Knowledge or Reliance

Mercedes also argues Plaintiff's UCL and CLRA claims should be dismissed because she has not sufficiently pled that Mercedes knew its parts list was incomplete, or that Plaintiff relied on any misrepresentation or omission about the high-priced parts warranty. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012). Mercedes notes it obtained CARB's approval for its list. That does not show Mercedes lacked knowledge that its list was incomplete. Indeed, Plaintiff avers that Mercedes knew it had omitted parts, at least after a certain date. SAC at ¶ 44. (All citations to a specific paragraph of the SAC refer to the approved SAC.) Plaintiff adequately pleads at least the possibility that Mercedes knew its representations were false, which is all these statutes require.

As to reliance, eventually Plaintiff must show the misrepresentation was an immediate cause of her purchase, and "in its absence the plaintiff in all reasonable probability would not have engaged in the injury-producing conduct." *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (2009) (internal quotation marks omitted). Mercedes argues that Plaintiff makes only a "single allegation" about reliance: "In evaluating the repair costs to be charged, Plaintiff and members of the Classes have justifiably relied on the information in the warranty booklets about parts that should be covered under the high-priced emissions warranty[.]" SAC ¶ 205. To be sure, Plaintiff may not be able to prove there was reliance. Yet the "single allegation" Plaintiff makes is enough to survive a motion to dismiss, as all facts must be inferred in favor of the nonmoving party. Indeed, this was ruled on in the prior MTD order. Dkt. No. 33 at 8–9.

### 6. Standing for Unpurchased Vehicles and Repairs

Next on Mercedes' list of reasons why the Complaint should be dismissed, at least in part, is that Plaintiff asserts claims on behalf of all Mercedes owners who bought vehicles with misclassified parts. This is effectively a motion to reconsider, as the purpose of the previous motion for leave to amend was to clarify that Plaintiff could make claims for all purportedly misclassified parts. The cases Mercedes cites here are inapposite; indeed they actually support

Plaintiff's position, e.g., she suffered a "similar or same injury," that is, Mercedes misclassifying parts, *Wiener v. Dannon*, 255 F.R.D. 658, 666 (C.D. Cal. 2009), and as a named Plaintiff she personally sustained some direct injury as a result of the challenged conduct, *Armstrong v. Davis*, 275 F.3d 849, 860 (9th Cir. 2001).

### 7. Non-California Class Members

Mercedes also frames an issue around the non-California class members. Plaintiff's SAC asserts claims on behalf of purchasers in 12 states outside California. Mercedes argues *Mazza* forecloses Plaintiff sweeping these consumers into this suit, because it held that under California's choice of law rules, "each class member's consumer protection claim should be governed by the consumer protection laws of the jurisdiction in which the transaction took place." *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir. 2012). This was so even though American Honda had its headquarters in California, so the alleged misrepresentations emanated from within the state. Here, Mercedes notes, it is headquartered in Delaware. It argues that there is no nexus between the misrepresentations and California.

There are multiple clear nexuses between California and the other states: each state at issue chose to use California's Emissions Warranty law (Opp. at 15); Mercedes chose to incorporate California's emissions warranty into its warranty in other states (*see* SAC at ¶ 158); and Mercedes allegedly made misrepresentations to California's regulator, CARB. Further, as Plaintiff points out, there is no credible allegation that these other states would choose to apply their own consumer protection law in this situation, given that they have already chosen to piggyback off California's consumer protection law. California and the other states each have an interest in having California's law interpreted correctly: their interests are not in tension, and even if they must be balanced, California's outweighs the other states'. *Mazza*, 666 F.3d at 590.

### 8. Defect in Materials or Workmanship

Mercedes next argues Plaintiff does not allege facts showing that the defects were from materials or workmanship, and the product warranty was limited to those defects, i.e., not design defects. Plaintiff responds that the California Emissions Warranty covers both design defects and

materials and workmanship defects. 13 Cal. Code Regs. § 2037(b) ("The manufacturer of each motor vehicle or motor vehicle engine shall warrant […] that the vehicle or engine is (1) designed, built and equipped so as to conform […] and (2) free from defects in materials and workmanship [for greater or lesser periods of time or mileage depending on whether the part is a high-priced emissions-related part or not].") Mercedes, in turn, contends that the warranty it provided to customers does not mention design defects. Yet Mercedes incorporated the California Emissions Warranty into its own warranty, and California's includes design defects. Reading the facts in the light most favorable to Plaintiff, as required, Plaintiff has framed her case so that either type of defect would qualify. (Drawing inferences in favor of Plaintiff at this stage also means the points Mercedes raises in its reply, about the parts possibly being excluded from coverage because of alterations or incorrect maintenance, for example, do not pose an issue for Plaintiff.)

### 9. Vacuum Pump

Finally, Mercedes argues that Plaintiff alleges no facts showing that the vacuum pump should have been covered by the high-priced warranty. To the contrary, Plaintiff asserts that this part's failure causes the check engine light to illuminate, which seems to be enough for CARB (per its declaration). Mercedes is understandably confused as to how CARB can assert this position, which may sweep nearly every part into the high-priced warranty, and conflicts with CARB's approving a list without it, but that is a question to answer down the road. Plaintiff's assertions regarding the vacuum pump are sufficient for this stage of litigation.

## V. CONCLUSION

For the reasons set forth above, Mercedes's motion to strike the filed SAC is granted; Plaintiff is directed to file the originally proposed SAC within two days. Mercedes' MTD is denied.

**IT IS SO ORDERED**.

Dated: June 15, 2022

_____
RICHARD SEEBORG
Chief United States District Judge