**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

**THE LAW OFFICE OF ROBERT L. STARR**
Robert L. Starr, State Bar No. 183052
robert@starrlaw.com
23901 Calabasas Road, Suite 2072
Calabasas, CA 91302

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY HAZDOVAC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MERCEDES BENZ USA, LLC, and DOES MBUSA 1 through 10, inclusive,<br><br>Defendants. | Case No. 20-cv-00377-RS<br><br><u>**CLASS ACTION**</u><br><br>**SECOND AMENDED COMPLAINT FOR:**<br><br>**(1) VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS CODE, SECTION 17200, *et seq.***<br><br>**(2) VIOLATION OF THE CONSUMERS LEGAL REMEDIES ACT, CAL. CIV. CODE SECTION 1770, *et seq.***<br><br><u>**JURY TRIAL DEMANDED**</u> |

Plaintiff Cory Hazdovac ("Plaintiff"), individually and on behalf of all other members of the public similarly situated, brings this action against Defendant Mercedes Benz USA, LLC ("Defendant" or "MBUSA"), and upon information and belief, except as to her own actions, the investigation of her counsel, and facts that are a matter of public record, alleges as follows:

**INTRODUCTION**

1. This class action arises out of MBUSA's failure to accurately and comprehensively identify all of the Mercedes vehicle parts, including Mercedes C300 vehicle parts, that should properly be classified as "high-cost emissions warranty parts" under California's emissions warranty requirements and covered under the Emissions Warranty for 7 years and 70,000 miles.

2. In an effort to minimize MBUSA's warranty costs, MBUSA has unilaterally and unlawfully limited the parts that it designates as high-cost emissions warranty parts, in order to limit the parts for which it provides 7-year and 70,000-mile coverage.

3. By not identifying all of the parts that should be included as high-priced emissions warranted parts, MBUSA has attempted to wrongfully limit the warranty coverage for many emissions-related parts to MBUSA's standard 4-year and 50,000-mile warranty.

4. Plaintiff has identified three (3) vehicle parts in Mercedes C300 vehicles that should properly be classified as "high-cost emissions warranty parts" under California's emissions warranty requirements and covered under the California Emissions Warranty for 7-years and 70,000 miles: (1) the coolant thermostat (which was properly identified as a high-priced emissions part in MY 2017 and MY 2018 C300 vehicles but not in MY 2015 and MY 2016 vehicles); (2) the coolant pump; and, (3) the vacuum pump. Not only were the coolant pump and the vacuum pump not identified by MBUSA as high-priced emissions parts, they were not identified by MBUSA as emissions-related parts at all.

5. As further alleged below, MBUSA's misconduct is not limited to the three specific vehicle parts identified herein. The essence of this lawsuit is that MBUSA has systemically willfully and without justification violated its regulatory obligations under the California Emissions Warranty. In a systemic effort to minimize MBUSA's warranty costs,

1   MBUSA has unilaterally and unlawfully failed to identify all parts installed on vehicles

2   distributed by MBUSA which should be covered by the California Emissions Warranty and

3   failed to apply the proper methodology to determine if the parts that are covered by the

4   California Emissions Warranty are high priced, which would obligate MBUSA to provide a 7-

5   year 70,000-mile warranty.  While the Class Period alleged herein only goes back four years,

6   the wrongful conduct exposed in this lawsuit involves every vehicle that has been distributed by

7   MBUSA dating back to 2011, if not earlier, and every vehicle that MBUSA continues to

8   distribute. MBUSA has relied on self-reporting and a lack of sufficient governmental resources

9   to allow for third party oversight as a way to avoid any consequences for its wrongful conduct.

10          6.      MBUSA has limited the parts that it designates as high-priced emissions

11   warranty parts, in order to limit the parts for which it provides 7-years and 70,000-mile

12   coverage.  By not identifying all of the parts that should be included as high-priced emissions

13   warranted parts, MBUSA has wrongfully limited the warranty coverage for many emissions-

14   related parts to MBUSA's standard 4-year and 50,000-mile warranty.

15          7.      Specifically, discovery has confirmed that MBUSA systemically has been using

16   the wrong standard for calculating the retail labor cost in determining whether a part is a "high-

17   priced part" under the California Code of Regulations.  Instead of using the retail labor cost *i.e.*,

18   the number of labor hours that the *customer pays* for the repair ("customer pay"), MBUSA uses,

19   and has always used, the number of hours that the *manufacturer pays its dealers to perform the*

20   *repairs under warranty* ("warranty pay"), which is a lesser amount.   As a result, MBUSA is

21   grossly understating the parts that are designated as high-priced warranty parts under the CCR.

22          8.      MBUSA also has been using the wrong standard to determine if a warranted part

23   is "emissions-related," as detailed below.  Any vehicle part that causes the MIL to illuminate

24   and/or affects regulated emissions is an emissions related part under the California emissions

25   law.  This is not the standard that MBUSA has been using.

26          9.      As a result of MBUSA grossly understating the parts that are designated as high-

27   price warranty parts, and by MBUSA using the wrong standard to determine if a warranted part

28

1    is "emissions-related," consumers have been wrongfully charged for repairs that should have
2    been covered under the California Emissions Warranty.

3           10.     By this action, Plaintiff seeks reimbursement for, *inter alia*, all out of pocket
4    costs paid for the repairs identified herein for the three vehicle parts, and all other parts not
5    properly identified, that should have been covered by MBUSA under the 7-years and 70,000-
6    mile Emissions Warranty. Plaintiff also seeks an injunction requiring MBUSA to properly
7    identify and cover, under the California high-priced Emissions Warranty, repair/replacement of
8    each of the three parts at issue and all other parts that MBUSA has failed to properly identify
9    which should be covered under the 7-years and 70,000-mile warranty for high-priced emissions
10   warranted parts.  Plaintiff also seeks an order requiring MBUSA to (1) change its practice and
11   policy on a going forward basis to properly determine which emissions parts are "emissions
12   related" parts; and, (2) change its practice and policy on a going forward basis to properly
13   determine which emissions parts are "high priced parts" by using the customer pay rate in
14   calculating labor costs under the CCR.

15                                         **JURISDICTION AND VENUE**

16          11.     This Court has removal jurisdiction over this action pursuant to 28 U.S.C.
17   § 1441 and § 1332(d)(2)(A). Members of the Class are citizens of a state different from that of
18   Defendant MBUSA, and aggregating the claims of individual members of the Classes, the
19   total matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and
20   costs. Further, 28 U.S.C. § 1332(d)(5) does not apply because (i) MBUSA is not a state, state
21   official, or other governmental entity against whom the Court may be foreclosed from
22   ordering relief, and (ii) the number of members of the Class in the aggregate exceeds 100.

23          12.     This Court has personal jurisdiction over Defendant because Defendant has
24   sufficient minimum contacts with California, having intentionally availed itself of the
25   California market so as to render the exercise of jurisdiction over it by this District Court
26   consistent with traditional notions of fair play and substantial justice. Further, by removing
27   this action to this Court, Defendant concedes personal jurisdiction.

28          13.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because Defendant

conducts business within the State of California and a substantial part of the events giving rise to the claims alleged herein occurred in this District.

**PARTIES**

14.    Plaintiff Cory Hazdovac is, and at all times relevant hereto has been, a resident and citizen of the State of California, County of Kern.

15.    MBUSA was and is, upon information and belief, a Delaware limited liability company doing business in California.

16.    The true names and capacities of Defendants sued in this Complaint as Does 1 through 10, inclusive, are currently unknown to Plaintiff, and therefore Plaintiff sues such Defendants by such fictitious names.

17.    Plaintiff is informed and believes, and thereon alleges, that DOES 1 through 10 were the partners, agents, owners, shareholders, managers, or employees of MBUSA at all relevant times.

18.    Plaintiff is informed and believes, and on that basis alleges that each of the fictitiously named Defendants was in some manner legally responsible for the actionable and unlawful actions, policies and practices as alleged herein. Plaintiff will amend this Complaint to set forth the true names and capacities of said Defendants, along with the appropriate charging allegations, when the same have been ascertained, as may be necessary. Each reference in this Complaint to "MBUSA" or "Defendant" is also a reference to all Defendants sued as Does 1 through 10.

19.    Plaintiff reserves the right to expand, limit, modify, or amend these allegations at any time, based upon, inter alia, changing circumstances and/or new facts obtained during discovery.

**BACKGROUND**

20.    For decades, MBUSA has been in the business of importing and distributing MBUSA vehicles in the State of California, with the intent of its MBUSA dealerships selling and leasing MBUSA vehicles to consumers in the state of California. Thus, MBUSA vehicles have been subject to California state and federal regulations regarding emissions standards and

1  regarding MBUSA's obligation to provide consumers with warranties relating to emissions

2  parts.

3          21.     Specifically, dating back over 20 years, California Code of Regulations, Title 13,

4  Section 2035, *et seq*., entitled "Emission Control System Warranty Requirements for 1990 and

5  Subsequent Model Year Passenger Car, Light-Trucks, and Medium-Duty Vehicles and Engines

6  ("the CCR") has required MBUSA to identify to the California Air Resources Board ("CARB")

7  all the vehicle parts that are "high-priced" "warranted parts" and has required MBUSA to

8  provide a 7-year and 70,000-mile warranty to California consumers relating to all "high-priced"

9  "warranted parts." This provision is sometimes referred to as the "High-Cost Emissions-Related

10  Parts Warranty" or the "California Emission Control System Warranty."

11          22.     The CCR very clearly defines the methodology that MBUSA is required to use in

12  order to identify which parts should be covered by the 7-year and 70,000-mile warranty.

13          23.     Pursuant CCR Section 2035, with regard to 1990 and subsequent model year

14  vehicles, a warranted part is defined as, any part installed on a motor vehicle or motor vehicle

15  engine by the vehicle or engine manufacturer, or installed in a warranty repair, which affects

16  any regulated emission from a motor vehicle or engine which is subject to California emission

17  standards.

18          24.     Furthermore, CCR Section 2037(b) states: "The manufacturer of each motor

19  vehicle or motor vehicle engine shall warrant to the ultimate purchaser and each subsequent

20  purchaser that the vehicle or engine is:

21      (1)     Designed, built, and equipped so as to conform with all applicable regulations

22              adopted by the Air Resources Board pursuant to its authority in chapters 1 and 2,

23              part 5, division 26 of the Health and Safety Code; and

24      (2)     Free from defects in materials and workmanship which cause the failure of a

25              warranted part to be identical in all material respects to the part as described in

26              the vehicle or engine manufacturer's application for certification, including any

27              defect in materials or workmanship which would cause the vehicle's on-board

28

1    diagnostic malfunction indicator light to illuminate, for a period of three years or

2    50,000 miles, whichever first occurs; and

3    (3)    Free from defects in materials and workmanship which cause the failure of a

4    warranted part described in section (c) below for seven years or 70,000 miles,

5    whichever first occurs."

6    25.    California Code of Regulations Section 2037(c) deals with high-priced warranted

7    parts under the California Emission Control System Warranty and states:

8    (1)    Each manufacturer shall identify in its application for certification the high-

9    priced warranted parts which are:

10    (a)    For 1990 through 2007 model year vehicles: [i] included on the Board's

11    "Emissions Warranty Parts List" as last amended February 22, 1985,

12    incorporated herein by reference, and; [ii] have an individual replacement

13    cost at the time of certification exceeding the cost limit defined in section

14    (c)(3);

15    (b)    For 2008 and subsequent model year vehicles: [i] subject to coverage as a

16    warranted part in section (b)(2) above, and; [ii] have an individual

17    replacement cost at the time of certification exceeding the cost limit

18    defined in section (c)(3).

19    (2)    The replacement cost shall be the retail cost to a vehicle owner and include the

20    cost of the part, labor, and standard diagnosis. The costs shall be those of the

21    highest-cost metropolitan area of California.

22    (3)    The cost limit shall be calculated using the following equation:

23    Cost limit $\{n)\} = \$300$ x (CPI$\{n-2\}$)/ 118.3

24    Cost limit $\{n\}$ is the cost limit for the applicable model year of the vehicle

25    rounded to the nearest ten dollars.

26    26.    In summary, any part that either effects a vehicle's emissions, or causes a

27    vehicle's on-board diagnostic malfunction indicator light to illuminate is, for the purpose of

28

determining coverage under the CCR, considered a warranted part. If a part is a warranted part, the part shall have a 3-year and 50,000-mile California emissions warranty.

27.     However, if the part is a high-priced warranted part, as defined by 2037(c) of the CCR, the part, the labor cost of diagnosing the part failure, and the labor cost of replacing the part shall have a 7-year and 70,000-mile California Emissions Warranty pursuant to the High-Cost Emissions-Related Parts Warranty.

## CARB DECLARATION

28.     CARB has provided a Declaration from Allen Lyons, Chief of the Emissions Certification and Compliance Division of CARB regarding the California Emissions Warranty (the "CARB Declaration") "for the sole purpose of educating the Courts about CARB's interpretation and implementation of California's warranty requirements." The CARB Declaration sets forth CARB's interpretation of certain of the foregoing CCR provisions, including how to define a "warranted part" for purposes of the California Emissions Warranty and how to properly determine whether an emissions part is also a "high price emissions part" entitled to extended warranty coverage for 7 years and 70,000 miles.

29.     The CARB Declaration states, in relevant part, that "warranted parts" under the California Emissions Warranty "include any components that can or are required to illuminate the OBD Malfunction Indicator Light (MIL) in the event of a malfunction, even if the primary function of the component is not emission control, within the warranty period. (Cal. Code Regs., tit. 13, § 2037, subd. (b)(2).) The MIL is a light located on the driver's side instrument panel that, when illuminated, is amber in color and displays "Check Engine/Powertrain," "Service Engine/Powertrain Soon," or the International Standards Organization (ISO) engine symbol; the MIL illuminates to notify the driver of detected malfunctions of OBD-monitored emissions systems on the vehicle. (Cal. Code Regs., tit. 13, § 1968.2, subds. (a), (d)(2.1.1) & (2.2.).)"

30.     The CARB Declaration further provides that "When calculating the cost of labor portion of the replacement cost equation, in order to determine if a part is a "high-priced" warranted part for the purposes of California Code of Regulations, title 13, section 2037, subdivision (c), manufacturers first calculate the amount of time it would take to diagnose and

repair or replace the part (the labor hours). A dollar amount is then attributed to the number of labor hours to come up with a cost of labor for each part. In doing this, manufacturers should use the labor hours and associated costs that would be charged to consumers to perform any required diagnosis and repairs to or replacement of the part, not the labor hours that manufacturers' service dealerships are allowed to charge manufacturers."

31.     As further alleged below, MBUSA has systemically failed to follow the foregoing methodology. MBUSA's failure reaches far beyond the thermostat, vacuum pump and the coolant pump in the Class Vehicles and pertains to all of the vehicle models distributed by MBUSA.  MBUSA has engaged in a custom and practice of completely disregarding its obligations under the CCRs with respect to the California Emissions Warranty.

32.     Specifically, Defendant has an obligation under the California Emissions Warranty to identify all emissions-related vehicle components for which there should be warranty coverage.   As a custom and practice, MBUSA has interpreted this obligation too narrowly, resulting in MBUSA wrongfully failing to identify numerous vehicle components as emissions-related vehicle components under the California Emissions Warranty. The CARB Declaration also clarifies the standard for determining whether a warranted part is emissions related.  According to CARB, as set forth above, any vehicle part that causes the MIL to illuminate and/or affects regulated emissions is an emissions related part under the California emissions law.  This is not the standard that MBUSA has been using.

33.     Based on the CARB Declaration, MBUSA is required to provide coverage for all components whose failure: (1) affects any regulated emission from a motor vehicle; and, (2) can *or* are required to illuminate the on-board diagnostic ("OBD") malfunction indicator light ("MIL"), *even if the primary function of the component is not emissions control*. The MIL is a light located on the driver's side instrument panel that, when illuminated, is amber in color and displays "check engine/powertrain," "Service engine/powertrain soon," or the International Standards Organization ("ISO") engine symbol. The California Code of Regulations mandates that the purpose of the MIL is to notify the driver of defective malfunctions of the OBD

1  monitored emissions systems of the vehicle; and/or failures which will cause a vehicle to fail a

2  smog test as mandated by the California Health and Safety Code.

3        34.    A review of the components identified by MBUSA as covered components, as

4  produced in discovery, reveals that MBUSA as a matter of custom and practice has failed to

5  identify as covered components all components which *can or are* required to illuminate the

6  MIL.  Furthermore, MBUSA fails to identify all components whose failure affects a regulated

7  emission.

8        35.    MBUSA has the ability to determine what component failures result in the MIL

9  illuminating. Furthermore, California Code of Regulations Section 1968.2 specifically mandates

10  that the MIL should not illuminate unless there is an emissions related defect, and the

11  regulations mandate that if a component's failure can or does cause the MIL to illuminate,

12  coverage under the California Emissions Warranty follows. Yet, MBUSA does not provide the

13  required coverage.

14        36.    The CARB Declaration also repudiates any contention by MBUSA that to be

15  considered an "emission-related" component under the California Emissions Warranty, the

16  component must be part of the "emissions control system."

17        37.    Further, as set forth above, MBUSA has an obligation to provide 7-year/70,000-

18  mile coverage under the California Emissions Warranty for all "high priced" emissions related

19  components.  MBUSA is supposed to determine if a component is high-priced by analyzing the

20  cost to the consumer to diagnose and repair the component, including what the consumer would

21  pay for parts and labor.

22        38.    As part of the certification process for a vehicle, the manufacturer determines

23  which parts it considers to be "emission parts" and submits a list of those parts to CARB.

24  Section 2037(c).   At the same time, the manufacturer also identifies the parts from the emission

25  parts list that the manufacturer has determined, based on the cost calculation set forth in the

26  CCR, exceeds the cost limit and therefore are "high price" parts entitled to extended 7-

27  year/70,000-mile coverage.

28

39.     California Code of Regulations Section 2037(c)(1) states, in relevant part, that in calculating whether an individual replacement cost at the time of certification exceeds the cost limit, "the replacement cost shall be the *retail cost* to a vehicle owner and include the cost of the part, labor, and standard diagnosis." Emphasis added.  Similarly, Section 2037(c)(2) states that "the replacement cost shall be the *retail cost* to a vehicle owner and include the cost of the part, labor, and standard diagnosis."  Emphasis added.

40.     On June 29, 2021, Plaintiff took the deposition of MBUSA's corporate designee, Matthew Hill.  Among other things, the deponent testified about MBUSA's methodology for calculating the retail labor cost in determining whether a part is a "high-priced part" under the California Code of Regulations.

41.     Mr. Hill's deposition confirmed that MBUSA does not use, and has never used, the retail labor cost *i.e.*, the number of labor hours that the *customer pays* for the repair ("customer pay").  Instead, MBUSA incorrectly uses the number of hours that the *manufacturer pays its dealers to perform the repairs under warranty* ("warranty pay").  MBUSA is using the wrong standard and, in so doing, is failing to the comply with the express terms of the CCR. Mr. Hill further confirmed that there are reliable sources of information available to determine how many hours a customer is charged versus how many hours MBUSA is charged by factory authorized repair facilities, that consumers are always charged more hours than MBUSA for repairs, and that MBUSA's position is that it is irrelevant for the purpose of conducting pricing analysis to determine the amount of hours a consumer is charged.

42.     As the CARB Declaration confirms, when calculating the retail cost of labor portion of the replacement cost equation, in order to determine if a part is a "high-priced" warranted part for the purposes of complying with the California Code of Regulations, "*manufacturers should use the labor hours and associated costs that would be charged to consumers to perform any required diagnosis and repairs to or replacement of the part, not the labor hours that manufacturers' service dealerships are allowed to charge manufacturers*." This is also consistent with the language in the CCRs which states that the "the replacement cost

shall be the *retail cost* to a vehicle owner and include the cost of the part, labor, and standard diagnosis."

43.     Indeed, documents produced by CARB in this case have confirmed that MBUSA failed to correctly identify *other* parts as high-priced warranted parts, in addition to those specifically identified by Plaintiff.

44.     For example, as recently as November 6, 2020, in CARB's efforts to respond to the subpoena in this litigation, CARB concluded that "There are no coolant thermostat, vacuum pump or coolant pump in the EWIR. *By checking the list of components in the EWIR, it appears some components definitely incorrectly labeled as low cost part (e.g., piston, cylinder head gasket.)*" CARB 019187.  Emphasis added.  Furthermore, an email sent by CARB's Staff Air Pollution Specialist to Mercedes on December 11, 2014, states that "ARB would like to review the high vs. low cost part list for Mercedes."  CARB 017464.  It appears that CARB was aware, dating back to December of 2014, that MBUSA failed to list all high-priced parts, including specifically the piston and cylinder head gasket.  MBUSA was also aware of this omission and failed to take any action in response.  As further detailed below, it is possible to identify the parts that MBUSA has failed to properly identify as high-priced parts, and MBUSA should be required to do so.

45.     Accordingly, MBUSA's misconduct extends far beyond the three specific parts at issue in this case.  In fact, Defendant *has never used the correct, customer pay rate in determining whether an emissions part is also a high-priced warranty part*.  MBUSA's failure to use the correct, customer pay calculation has resulted in a massive scheme to deprive MBUSA vehicle owners and lessees of coverage under the California Emissions Warranty and has resulted in massive out of pocket payments for repairs to parts that should have been covered under the California Emissions Warranty.  Plaintiff's action intends to hold MBUSA accountable for its failure to identify all parts that should be covered under the California Emission Warranty and for its high-priced parts cost miscalculation. Plaintiff's action intends to extend to as many MBUSA vehicles and parts as possible, as limited only by the applicable statutes of limitations.

46.     MBUSA has failed to conduct the price analysis for high-priced warranty parts in a manner which comports with the California Emissions Warranty, resulting in MBUSA failing to provide high-priced coverage for the thermostat, vacuum pump and coolant pump, as well as other components which are, and should be, identified as covered components. As a result, Plaintiff and other members of the Classes have suffered damage.

47.     The CARB Declaration repudiates MBUSA's entire methodology for determining whether a covered part is also a high-priced part under the California Code of Regulations.

48.     Similarly, MBUSA and its manufacturing counterpart are well aware of what component failures cause a MIL to illuminate and cause an increase in regulated emissions. MBUSA's conduct in this case underscores its failure to comply with the Regulations. The failed vacuum pump and coolant pump installed in Plaintiff's Vehicle caused both the MIL to illuminate and an increase in regulated emissions, yet MBUSA boldly and wrongfully declares that there should be no coverage for these components. But the failure to provide Emissions Warranty coverage for these components is the tip of the iceberg, and illustrative of MBUSA's systemic failure to provide coverage for numerous other components in the entire line of vehicles distributed by MBUSA.

49.     Based on the foregoing, not only is liability established with respect to the parts at issue in the Class Vehicles, MBUSA faces massive exposure based on its failure to provide California emissions coverage for all parts where coverage is required and for its failure to use the correct customer pay calculation in determining high-priced warranty parts.  MBUSA's misconduct has resulted in a massive scheme to deprive MBUSA owners and lessees of coverage under the California Emissions Warranty and has resulted in massive out of pocket payments for repairs to parts that should have been covered under the California Emissions Warranty.

///

///

///

# PLAINTIFF'S FACTS

## *Vehicle Purchase*

50.     On October 25, 2018, Plaintiff purchased a used 2015 Mercedes C300, VIN 55SWF4JBXFU060151 ("Vehicle"), from Bakersfield Acura (the "Bakersfield Dealership") located in Kern County, California. The Bakersfield Dealership is a vehicle dealership authorized to sell new and used vehicles in the State of California.

51.     At the time that Plaintiff purchased the Vehicle, the Vehicle still had in place the remainder of the factory warranty, the remainder of the federal emissions warranty, and the remainder of the California Emissions Warranty. Plaintiff received a warranty book. The warranty booklet provided to Plaintiff indicated that the Vehicle's warranty included coverage pursuant to the California Emissions Warranty.

## *Thermostat Repair*

52.     On June 10, 2019, at 58,502 miles, the Vehicle underwent repairs at Alfano Motorcars ("Alfano"), an authorized MBUSA repair facility, where consumers can present their vehicles for repair pursuant to the MBUSA warranty. Plaintiff visited Alfano because Plaintiff was reporting that the Vehicle became very hot and almost overheated. Alfano generated Invoice 446775 relating to this repair visit.

53.     Alfano ran a short test, and found fault code P021700 present, indicating that the coolant temperature was too high. This is a fault code stored in the Vehicle's diagnostic system. Alfano diagnosed the Vehicle as having a faulty coolant thermostat. Alfano subsequently notified Plaintiff that there was no warranty coverage provided by MBUSA at that time relating to the coolant thermostat, and that Plaintiff had to pay out of pocket for the repairs. The Vehicle at that time was below the 7-year and 70,000-mile mark.

*54.*     The total cost of the repairs on June 14, 2019 was $1,040.85. Plaintiff had an aftermarket service contract that paid for $992.85 of the repairs. Plaintiff paid $148.00 out of pocket for the remaining portion of the cost of the repairs.

///

///

*Vacuum Pump Repair*

55.     On June 26, 2019, at 59,229 miles, the Vehicle again underwent repairs at Sangera Automotive Group ("Sangera"), an authorized MBUSA repair facility, where consumers can present their vehicles for repair pursuant to the MBUSA warranty. Plaintiff visited Sangera because the check engine light was illuminated.

56.     Sangera ran a short test, and found fault code P029921, indicating that the boost pressure for the turbo charger was too low. This fault code is stored in the Vehicle's diagnostic system. Sangera diagnosed the Vehicle as having a non-functioning turbo charger. Sangera determined that the problems with the turbo charger were the result of a malfunctioning vacuum pump. Sangera subsequently notified the Plaintiff that there was no warranty coverage being provided by MBUSA at that time relating to the vacuum pump and that she had to pay for the repairs. The Vehicle at that time was below the 7-year and 70,000-mile mark.

57.     The total cost of the repairs on July 2, 2019 was $873.26. Plaintiff had an aftermarket service contract that paid $773.26 for the repairs. Plaintiff paid $100.00 out of pocket for the remaining portion of the cost of the repairs.

*Coolant Pump Repair*

58.     On July 19, 2019, at 59,693 miles, the Vehicle again underwent repairs at Sangera because the Vehicle's check engine light was illuminated. Sangera generated Invoice 157444 relating to this repair visit.

59.     Sangera ran a short test, and found fault code 260013, indicating a fault in the coolant pump. This fault code is stored in the Vehicle's diagnostic system. Sangera subsequently notified the Plaintiff that there was no warranty coverage being provided by MBUSA at that time relating to the coolant pump and that she had to pay for the repairs. The Vehicle at that time was below the 7-year and 70,000-mile mark.

60.     The total cost of the repairs on July 19, 2019 was $882.50. Plaintiff had an aftermarket service contract that paid $782.50 for the repairs. Plaintiff paid $100.00 out of pocket for the remaining portion of the cost of the repairs.

///

**MBUSA'S CONDUCT**

61.     At all times herein relevant, for each new motor vehicle intended to be distributed by MBUSA in the State of California, at the time of distribution, MBUSA has purported to accurately notify CARB of the parts which should be covered under the 7-year and 70,000-mile California Emissions Warranty.

62.     Furthermore, at all times herein relevant, for each new vehicle intended to be distributed by MBUSA in the State of California, at the time of distribution, MBUSA has purported to provide accurate written warranty documents with the vehicles, including a warranty booklet, which purports to accurately identify all of the vehicle parts that are covered under the 7-year and 70,000-mile California Emissions Warranty.

63.     MBUSA has engaged in a systematic business practice of omitting from the MBUSA warranty book provided to owners and lessees at the time of sale or lease, and in resources provided by MBUSA to its dealerships both at the time of sale or lease and afterwards, identification of all of the parts that should be identified as high-priced emissions warranted parts, covered under the 7-year and 70,000-mile California Emissions Warranty. MBUSA classifies *some* of the "high-priced" warranted parts as being parts covered under the 7-year and 70,000-mile California emissions warranty, but not all of the high-priced warranted parts that should be covered under the 7-year and 70,000-mile California Emissions Warranty.

64.     Thereafter, when MBUSA vehicles are presented by consumers to MBUSA authorized repair facilities for repair, MBUSA fails to provide coverage under the 7-year and 70,000-mile California Emission Warranty for all of the repairs that should be covered under the California Emissions Warranty.

65.     As a result, California consumers have to pay out of pocket for these repairs which, by operation of California law, should be paid for by MBUSA.

66.     MBUSA engages in the alleged misconduct in order to reduce the amount of money that MBUSA has to pay out for warranty related repairs and warranty claims.

67.     If MBUSA properly identified all of the high-priced emissions warranty parts that should be correctly identified as such, then MBUSA dealerships would properly provide coverage for said high-priced parts under warranty.

68.     The failure by MBUSA to properly identify parts as "high-priced" warranted parts under the CCR violates California Business and Professions Code Section 17200, *et seq*. (the "UCL") and the California Consumers Legal Remedies Act, Cal. Civ. Code Section 1750, *et seq*. (the "CLRA"), and is intended to minimize the amount of money that MBUSA has to pay out in warranty claims.

69.     Plaintiff and other consumers have suffered damage and lost money or property as a result of MBUSA's wrongful conduct.

70.     Plaintiff's theory does not depend on the premise that CARB was deceived by the information that MBUSA submitted, and Plaintiff is not accusing CARB of mismanagement or blaming CARB for MBUSA's inaccuracy. MBUSA alone is responsible for selecting and identifying to CARB the parts that MBUSA has unilaterally identified as high-priced emissions warranty parts as part of its application for vehicle certification. That list may be correct as far as CARB may know. But, as Plaintiff alleges, the list is incomplete, as evidenced by Plaintiff's own experience.

71.     Moreover, as set forth above, CARB has identified the standards to be applied in determining whether a vehicle part should be warranted as an "emissions-related part" and whether the emissions part is also a high-priced warranty part under the California Emissions Warranty.  As alleged herein, Defendant has failed, and is failing, to properly comply with those standards.

**THE COOLANT THERMOSTAT IS A HIGH-PRICED WARRANTY PART**

72.     The coolant thermostat installed in the Thermostat Class Vehicles regulates the flow of coolant throughout the engine cooling system.

73.     MBUSA's warranty books for the Thermostat Class Vehicles acknowledges that the coolant thermostat is an emissions-related part, and the MBUSA warranty book for MY

2017 through MY 2018 Mercedes C300 vehicles also identifies the coolant thermostat as being a high-priced emissions warranted part covered for 7 years or 70,000 miles.

74.     However, the MBUSA warranty book for the MY 2015 and MY 2016 Mercedes C300 vehicles ("Thermostat Class Vehicles") does *not* identity the coolant thermostat as being a high-cost emissions warranty part. As a result, the warranty coverage for the coolant thermostat for the Thermostat Class Vehicles is limited to 4 years and 50,000 miles. The parts and labor costs to replace the coolant thermostat are the same for all of the Thermostat Class Vehicles, MY2015-2018.

75.     As explained below, the cost associated with diagnosing and replacing a defective coolant thermostat for Thermostat Class Vehicles exceeds the high-priced emissions warranted parts threshold.  Thus, the coolant thermostat for Thermostat Class Vehicles should have been classified as a high-priced warranty part entitled to extended warranty coverage for 7-years 70,000-miles under the California High-Cost Emissions-Related Parts Warranty.

76.     The following analysis identifies the applicable cost limit for the MY 2015 and 2016 Thermostat Class Vehicles and the estimated replacement cost for the coolant thermostats installed in the Thermostat Class Vehicles.

***Cost Limit Analysis – Generally***

77.     CARB publishes Manufacturer's Advisory Correspondence (MAC) every year, advising manufacturers of the cost threshold for the upcoming model year vehicles. The cost threshold is supposed to be used by manufacturers in determining if an emissions related part is a high-priced emissions warranty part. The analysis is supposed to be performed prior to distributing the vehicles. If the manufacturer determines that the total cost to the customer of diagnosing the defective emissions related part, paying for the labor to replace the part, and paying for the replacement part exceeds the threshold, then the part must be deemed a high-priced emissions warranty part. If it is deemed a high-priced emissions warranty part, the manufacturer shall provide a 7-year and 70,000-mile warranty for the part.

1    78.    On July 9, 2014, CARB published the MAC for model year 2015 vehicles,

2    including the Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and

3    replace emissions related parts was $590.00.

4    79.    On March 26, 2015, CARB published the MAC for model year 2016 vehicles,

5    including the Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and

6    replace emissions related parts was $600.00.

7    80.    Thus, if the cost to diagnose and repair the coolant thermostats installed in the

8    Thermostat Class Vehicles exceeded $590 for MY 2015 or $600 for MY 2016, the part should

9    have been identified as a high-priced emissions warranty part covered for 7-years or 70,000-

10   miles.

11   ***Cost Limit Analysis – Thermostat***

12   81.    There is no legitimate reason why the coolant thermostats installed in the

13   Thermostat Class Vehicles were not identified as high-priced emissions warranty parts and did

14   not receive a 7-year and 70,000-mile warranty when the same identical part, with the same

15   functionality, the same repair procedures and protocols, and the same costs of repair was

16   properly identified as a high-priced emissions warranty part for MY 2016-2018 vehicles.

17   82.    The coolant thermostat is the same part number in MY 2015-2018 C Class

18   vehicles, the engine serviced by the coolant thermostat is the same in MY 2015-2018 C Class

19   vehicles, and the functionality of the coolant thermostat in all of the Thermostat Class Vehicles

20   did not change from MY 2015 through MY2018.

21   83.    Further, the reason that MBUSA determined that the part was a high-priced

22   warranty part in 2017-2018, but not in 2015-2016 is not due to an increase in the cost of the

23   repair for MY 2017-2018.   The cost of repair for the coolant thermostat did not change

24   significantly from MY 2015-2018.  This is because the repair protocol relating to the coolant

25   thermostat has not changed from Model Year 2015 through 2018 and therefore the time needed

26   to perform the repair also has not have changed. Thus, (1) the labor cost to diagnose and repair

27   the part did not significantly change; (2) The cost of the part did not significantly change; and,

28   (3) The consumer price index has grown very little from 2015 to 2020. The growth in the

consumer price index has been so low that there is only a $50.00 increase in the high-priced cost threshold from 2015 to 2020 and the amount that Plaintiff was charged at a MBUSA factory authorized repair facility in 2019 to replace the coolant thermostat was $1,040.85, which is $450.85 above the high-priced threshold. This is far greater than the $50.00 increase in the consumer price index.  Furthermore, the function of the coolant thermostat did not change from 2015 through 2018. Thus, there is no legitimate explanation as to why the coolant thermostat would not be included as a high-priced emissions part in 2015-2016 but included as a high-priced emissions part in 2017-2018 based upon the price of the part or the functionality of the part.  Rather, MBUSA wrongfully failed to include the thermostat as a high-priced emissions part for the 2017-2018 Mercedes C300 vehicles.

84.     The retail cost of the repairs, even when taking into consideration the escalation in cost over time, clearly exceeds the high-priced emissions parts threshold. There is no legitimate reason for this increase.

85.     In addition to the foregoing, evidence adduced to date confirms that the coolant pump in the Class Vehicles is a high-priced emissions part, regardless of the information in the CARB Declaration.

86.     MBUSA's response to Plaintiff's Special Interrogatory, Set No. 1, No. 6 indicates that for Model Year 2015 C300 vehicles, the cost to replace the thermostat is $555.32. The cost is broken down as $179.00 for the cost of the thermostat, and 2.1 hours to replace the thermostat, at $179.20 per hour.  The Operations Items List provided by Mercedes (Bates MBUSA_00003656) allocates the total 2.1 labor hours as follows: 1.5 hours of the time is attributable to removing and installing the coolant thermostat (Bates MBUSA 00003662-MBUSA 00003664, Operations Item AR20.10-P-2460MRA), and .6 hours is attributable to drain/fill correct coolant (not provided by MBUSA in discovery, but Operations Item AR20.00-P-1142LW), for a total of 2.1 hours.

87.     The critical deficiency with MBUSA's labor hours calculation is that MBUSA has understated the correct labor time to replace the coolant thermostat because MBUSA used the warranty rate, not the customer pay rate, as described above. The customer pay rate to

remove and replace the thermostat, as confirmed by Alldata, indicates a labor charge of **3.0** hours standard time and 2.2 hours OEM warranty time, not 2.1 hours OEM time, as provided by MBUSA. Alldata gets the warranty rate number from documentation provided by Mercedes to Alldata (MBUSA document confirming 2.2 hours warranty time).  This discrepancy alone is sufficient to make the thermostat a high-priced warranty part.  The reason for this is that 3 hours x $179.20 per hour (as stated in MBUSA's response to Plaintiff's Special Interrogatory, Set No. 1, No. 6) equals $537.60, plus $179.00 for the price of the thermostat (as stated in MBUSA's response to Plaintiff's Special Interrogatory, Set No. 1, No. 6), which totals $716.60, which exceeds the high-priced threshold of $590.00 for Model Year 2015. For Model Year 2016, 3 hours x $184.00 per hour (as stated in MBUSA's response to Plaintiff's Special Interrogatory, Set No. 1, No. 7) equals $552.00, plus $179.00 for the price of the thermostat (as stated in MBUSA's response to Plaintiff's Special Interrogatory, Set No. 1, No. 7), which totals $731.00, which exceeds the high-priced threshold of $600.00 for Model Year 2016.

88. Even using the warranty pay rate, MBUSA's calculation is wrong because MBUSA fails to take into account the time to diagnose the defect and the failure to include the cost of coolant used for the repair. Mr. Hill confirmed during his deposition that the total amount of labor time to diagnose and replace the coolant thermostat, is 2.4 hours. Mr. Hill also confirmed that although the coolant needed to be drained and refilled in order to replace the coolant thermostat, MBUSA did not take into consideration the cost of the coolant, which at the time, without question exceeded $10.00.

89. When including the warranty pay rate of .3 for diagnosis, the total of 2.4 hours causes the cost of the repair to exceed the $590.00 threshold for Model Year 2015, and when adding in the cost of coolant, the amount exceeds the $600.00 threshold for Model Year 2016. Using the customer pay rate causes the numbers to be even greater.

90. Therefore, pursuant to California law, MBUSA is required to provide 7-year and 70,000-mile warranty coverage for the coolant thermostat installed in Thermostat Class Vehicles. MBUSA currently unlawfully fails to provide this coverage. The reason that the coolant thermostats installed in the Thermostat Class Vehicles did not receive 7-year and

1    70,000-mile warranty coverage, and as to why the Thermostat Class Vehicles' MBUSA

2    warranty books did not state that the coolant thermostats were entitled to 7-year and 70,000-mile

3    warranty coverage, is because MBUSA engaged in wrongful conduct by failing to properly

4    identify the coolant thermostats installed in the Thermostat Class Vehicles as high-priced

5    emissions warranty parts.

**THE COOLANT PUMP IS A HIGH-PRICED WARRANTY PART**

6

7    91.    The coolant pump is an emissions related part.  The engine's coolant pump

8    creates circulation so that coolant can flow through the engine's cooling system, similar to the

9    function of the coolant thermostat. If either the coolant pump or the coolant thermostat stops

10   functioning, then there will not be coolant flowing through the engine's cooling system. For the

11   same reasons that MBUSA designated the coolant thermostat in the Thermostat Class Vehicles

12   as being an emissions related part, MBUSA should have designated the coolant pump as being

13   an emissions related part.

14   92.    The distinction between the coolant pump and the engine thermostat, from an

15   emissions perspective, is that the engine thermostat has the ability to prevent coolant from

16   circulating through the engine when the engine is cold. This shortens the time period for the

17   engine to reach operating temperature, which reduces vehicle emissions. If the thermostat

18   malfunctions, and coolant circulates through the engine while the engine is cold, this increases

19   emissions. Similarly, the lack of coolant circulation through the engine after the engine has

20   reached operating temperature, as the result of a defect in the coolant pump or the thermostat,

21   will also result in an increase in regulated emissions. The reason that regulated emissions will

22   increase when coolant is not circulating through the engine is that the engine will overheat.

23   Overheating results in head gasket failure. Head gasket failure results in the combustion of

24   coolant and engine oil, and increased fuel consumption, all of which results in an increase in

25   regulated emissions.

26   93.    When Plaintiff's Vehicle experienced the failure of the coolant pump, the check

27   engine light illuminated and the Vehicle's engine began to overheat. When an engine overheats,

28   the overheating increases regulated emissions. The fact that a defective coolant pump results

both in the illumination of the check engine light and in increased regulated emissions means that the coolant pump should be designated as an emissions related part.

94.     As explained below, the coolant pump should also have been designated as a high-priced warranted part for the Coolant Pump Class Vehicles because the cost associated with diagnosing and replacing a defective coolant pump for the Coolant Pump Class Vehicles exceeds the high-cost emission parts threshold. Thus, it is unlawful for MBUSA to not provide 7-year and 70,000-mile warranty coverage for the coolant pumps installed in the Coolant Pump Class Vehicles.

95.     The MBUSA warranty book for Coolant Pump Class Vehicles does not identity the coolant pump as being a high-priced emissions warranty part. As a result, the warranty coverage for the coolant pump is limited to 4 years and 50,000 miles. The parts and labor costs to replace the coolant pump are the same for all of the Coolant Pump Class Vehicles.

***Cost Limit Analysis – Coolant Pump***

96.     As set forth above, the costs limits, per CARB, for 2015 and 2016, were $590 and $600, respectively.

97.     On March 15, 2016, CARB published the MAC for model year 2017 vehicles, including the Coolant Pump Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and replace emissions related parts was $600.00.

98.     On August 21, 2017, CARB published the MAC for model year 2018 vehicles, including the Coolant Pump Class Vehicles. The MAC indicated that the threshold for the cost to diagnose and replace emissions related parts was $610.00.

99.     Thus, if the cost to diagnose and repair the coolant pumps installed in the Coolant Pump Class Vehicles exceeded the foregoing cost limits, these parts should have been identified as high-cost emissions warranty parts covered for 7 years or 70,000 miles.

100.    The amount that Plaintiff was charged at a MBUSA factory authorized repair facility in 2019 to replace the coolant pump was $882.50, which is $292.50 above the high-priced threshold.  There is no legitimate reason for this increase.

101.    The price of the part did not significantly change from 2015 to 2018.

102.    The labor cost did not significantly increase.  The repair protocol relating to the coolant pump has not changed from MY 2015 through MY 2018. The time needed to perform the repair could not have changed. The parts and labor costs to replace the coolant pump are the same for all of the Coolant Pump Class Vehicles. Thus, the reason why the coolant pump was not included in the Coolant Pump Class Vehicles' warranty book is not because the price changed significantly.

103.    Inflation also did not cause the cost to increase.  The consumer price index has grown very little from 2015 to 2020. The growth in the consumer price index has been so low that there was only a $50.00 increase in the high-priced cost threshold from 2015 to 2020.

104.    Finally, Plaintiff had an aftermarket service contract that paid $782.50 for the repairs.  The aftermarket service would not have paid that amount if it believed that the MBUSA repair dealership was price gouging for the cost of the part or the repair.

105.    Accordingly, MBUSA wrongfully failed to identify the coolant pump as a high-priced warranty part.  Pursuant to California law, MBUSA is required by law to provide 7-year and 70,000-mile warranty coverage for the coolant pump installed in the Coolant Pump Class Vehicles. MBUSA currently unlawfully fails to provide this coverage.

## THE VACUUM PUMP IS A HIGH-PRICED WARRANTY PART

106.    The vacuum pump is an emissions part. The vacuum pump in the Vacuum Pump Class Vehicles is used to open and close the turbo charger, in order to create boost. If the vacuum pump is defective, the turbo charger will not work properly. Virtually all of a Vacuum Pump Class Vehicle's systems will work even if the Vacuum Pump Class Vehicle's vacuum pump is defective, however if a Vacuum Pump Class Vehicle has a defective vacuum pump, the defect will cause the Vacuum Pump Class Vehicle's check engine light to illuminate, and will increase the Vacuum Pump Class Vehicle's regulated emissions.

107.    The warranty book for the Vacuum Pump Class Vehicles designates the turbo charger as being an emissions related component. This is because the failure of the turbo charger to function increases regulated emissions and causes the check engine light to illuminate.

1    108.    The failure of the vacuum pump can prevent the turbo charger from working,

2    increases regulated emissions and causes the check engine light to illuminate. Thus, MBUSA

3    should have designated the vacuum pump as being an emissions related component.

4    109.    As explained below, the vacuum pump should also have been designated as high-

5    priced warranted part for the Vacuum Pump Class Vehicles because the cost associated with

6    diagnosing and replacing a defective vacuum pump for the Vacuum Pump Class Vehicles

7    exceeds the high-priced emission parts threshold. Thus, it is unlawful for MBUSA to not

8    provide 7-year and 70,000-mile warranty coverage for the vacuum pumps installed in the

9    Vacuum Pump Class Vehicles.

10   ***Cost Limit Analysis – Vacuum Pump***

11   110.    As forth above, the costs limits, per CARB, for 2015 and 2016, were $590 and

12   $600, respectively.

13   111.    On March 15, 2016, CARB published the MAC for model year 2017 vehicles,

14   including the Vacuum Pump Class Vehicles. The MAC indicated that the threshold for the cost

15   to diagnose and replace emissions related parts was $600.00.

16   112.    On August 21, 2017, CARB published the MAC for model year 2018 vehicles,

17   including the Vacuum Pump Class Vehicles. The MAC indicated that the threshold for the cost

18   to diagnose and replace emissions related parts was $610.00.

19   113.    Thus, if the cost to diagnose and repair the vacuum pumps installed in the

20   Vacuum Pump Class Vehicles exceeded the foregoing cost limits, these parts should have been

21   identified as high-priced emissions warranty parts covered for 7 years or 70,000 miles.

22   114.    The amount that Plaintiff was charged at a MBUSA factory authorized repair

23   facility in 2019 to replace the vacuum pump was $873.26, which is $283.26 above the high-

24   priced threshold.  There is no legitimate reason for this increase.

25   115.    The price of the part did not significantly change from 2015 to 2018.

26   116.    The labor cost did not significantly increase.  The repair protocol relating to the

27   coolant pump has not changed from MY 2015 through MY 2018 vehicles. The time needed to

28   perform the repair could not have changed. The parts and labor costs to replace the vacuum

1   pump are the same for all of the Vacuum Pump Class Vehicles. Thus, the reason why the

2   coolant pump was not included in the Vacuum Pump Class Vehicles' warranty book for the

3   Vacuum Pump Class vehicles is not because the price changed significantly.

4       117.    Inflation also did not cause the cost to increase.  The consumer price index grew

5   very little from 2015 to 2020. The growth in the consumer price index has been so low that there

6   was only a $50.00 increase in the high-priced cost threshold from 2015 to 2020.

7       118.    Finally, Plaintiff had an aftermarket service contract that paid $773.26 for the

8   repairs.  The aftermarket service would not have paid that amount if it believed that MBUSA

9   was price gouging for the cost of the part or the repair.

10      119.    Accordingly, the only logical explanation is that MBUSA wrongfully failed to

11  identify the coolant pump as a high-priced warranty part.

12      120.    Pursuant to California law, MBUSA is required by law to provide 7-year,

13  70,000-mile warranty coverage for the vacuum pump installed in the Vacuum Pump Class

14  Vehicles. MBUSA currently unlawfully fails to provide this coverage.

15              **ADDITIONAL COST LIMIT ANALYSIS ALLEGATIONS**

16        **WITH RESPECT TO THE VACUUM PUMP AND COOLANT PUMP**

17      121.    MBUSA also has wrongfully failed to identify the vacuum pump and coolant

18  pump as being covered.  On June 26, 2019, the Hazdovac vehicle was presented to Sangera

19  Automotive Group, an MBUSA authorized repair facility, for repairs. The repair records

20  indicate that the check engine light was on, which would trigger extended emissions coverage.

21  Furthermore, the vacuum pump ceased to function, resulting in the turbo being incapable of

22  producing boost, which increases regulated emissions.  Under these circumstances, the

23  regulations mandate coverage, yet MBUSA does not provide coverage for the vacuum pump.

24      122.    Similarly, on July 19, 2019, the Hazdovac vehicle again was presented to

25  Sangera Automotive Group for repairs. The repair records indicate that the check engine light

26  was on, which would trigger coverage. The coolant pump was found to be defective. MBUSA

27  does not provide coverage for the coolant pump.

28

123.    The vacuum pump and coolant pump are also high-priced emissions parts.  In addition to the foregoing allegations, another clear indication that these parts should be covered under the California Emissions Warranty is the fact that their performance is monitored by the OBD system installed in the Vacuum Pump and Coolant Pump Class Vehicles, fault codes relating to their performance are disclosed in MBUSA's applications for certification with CARB, a MIL is illuminated when these parts fail, any fault of these components causes an increase in emissions regulated by the State of California and the federal government, and the cost to repair and/or replace these components exceeds the cost threshold for the years in question.  Based on clarification provide by the CARB Declaration, these parts are emissions related parts.

124.    Furthermore, with regard to the vacuum pump, although MBUSA has not identified the vacuum pump as a covered part, MBUSA has already identified the turbo components which are directly actuated by the vacuum pump as being covered under the Emissions Warranty. Other documents also confirm that the vacuum pump is an integral component which must function properly for the vehicle to be emissions compliant. For example:

- Beginning at Bates MBUSA 00003827 there is a diagnostic protocol for locating the root cause of OBDII fault codes relating to turbo boost. The protocol relates to checking the vacuum system for proper vacuum. Bates MBUSA 00003847 and MBUSA 00003848 specifically identify OBDII fault code P029921 (turbo lack of sufficient boost) as being caused by lack of sufficient vacuum. This fault code is an OBDII fault code which is triggered when the vehicle has a defect which increases regulated emissions. As described in the diagnostic protocol, the root cause is sometimes directly attributable to a lack of vacuum, either due to a vacuum leak, or due to a failure of the vacuum pump;

- The CARB production identified as CARB 17181 MED17x ECU indicates, "Stroke of boost pressure control active, parameters are 'Wastegate full open during catalyst heating.'" This means that actuation of the wastegate is necessary in order to facilitate rapid heating of the catalyst during a cold start. Failure of the wastegate to open elongates the time period necessary to heat the catalyst, thus increasing regulated emissions. Rapid heating of the catalyst is an integral part of a vehicle being emissions compliant. The only way to open the wastegate on Vacuum Pump Class vehicles is for the vacuum pump to produce vacuum. Thus, the vacuum pump is an integral and necessary part of the

emissions system;

• CARB 015768-015769 contains an "Emission Diagram." The Emissions Diagram both inferentially and literally includes the vacuum system, including the vacuum pump and vacuum lines which lead to the turbo; and,

• Both the CARB and MBUSA document productions contain several references throughout to lack of boost being caused by lack of vacuum, with correlating OBDII fault codes, and correlating protocols to identify the root cause of the lack of vacuum.

125. According to Alldata, the retail cost of the vacuum pump is currently $370.00, and the customer pay labor rate to replace the vacuum pump is 1.3 hours. Additionally, according to Mr. Hill, the warranty rate for standard diagnosis is .3, with the customer pay rate certainly being more. But even at 1.6 hours at $179.20 an hour, plus $370.00, the cost to replace the vacuum pump is $656.72, which exceeds the high-priced threshold for Model Years 2015, 2016, 2017, and 2018.

126. Similarly, according to Alldata, the retail cost of the coolant pump is currently $222.00, and the customer pay labor rate to replace the coolant pump is 2.9 hours. Additionally, according to Mr. Hill, the warranty rate for standard diagnosis is .3, with the customer pay rate certainly being more. But even at 3.2 hours at $179.20 an hour, plus $222.00, the cost to replace the coolant pump is $795.44, which exceeds the high-priced threshold for Model Years 2015, 2016, 2017, and 2018.

**ADDITIONAL COST LIMIT ANALYSIS ALLEGATIONS AS TO ALL THREE PARTS**

127. The cost associated with the diagnosis and repairs relating to the coolant thermostat, vacuum pump, and coolant pump for the Class Vehicles should be covered and paid for by MBUSA under the 7-year and 70,000-mile California Emissions Warranty. This is because, pursuant to California Code of Regulations section 2037(c), the coolant thermostat, vacuum pump, and coolant pump should have been identified by MBUSA as high-priced emissions warranty parts, and the parts, labor and diagnostic expenses relating to those repairs should have been covered under Section 2037(c).

128. Furthermore, the warranty booklet relating to the Class Vehicles should have identified the coolant thermostat, vacuum pump, and coolant pump as being high-priced

emissions warranty parts. This is because, at the time of initial distribution, the costs associated with diagnosing the parts as being defective, purchasing the parts, and installing the parts, qualified the parts as high-priced emissions parts, as described in the statute.

129.     On information and belief, there is no legitimate explanation for why, based on these facts, the coolant thermostat, vacuum pump, and coolant pump were not identified by MBUSA as high-priced emission parts relating to the Class Vehicles. To date, MBUSA has not explained the basis for MBUSA's determination.

130.     On information and belief, MBUSA's failure to include the coolant thermostat, vacuum pump, and coolant pump installed in the Class Vehicles as high-priced emissions warranty parts was an intentional omission by MBUSA, designed by MBUSA in an effort to reduce the money that MBUSA pays out in warranty claims. On information and belief, this is just one example of MBUSA's scheme to fail to properly and comprehensively identify all of the parts that should be identified as high-priced warranted parts and covered for 7 years and 70,000 miles under the California Emissions Warranty.

131.     Plaintiff has provided an analysis of why the coolant thermostat, vacuum pump, and coolant pump should have been designated by MBUSA as high-priced emissions warranted parts. The details of how MBUSA applied the CCR formula with respect to the coolant thermostat, vacuum pump, and coolant pump are exclusively within, or should be within MBUSA's possession, since MBUSA applied for certification of the vehicles distributed by MBUSA. Similarly, the information regarding what other parts satisfied the CCR requirements but were not identified by MBUSA as high-priced emissions warranty parts is also exclusively within or should be within the possession of MBUSA.

132.     When Class Vehicles are presented to MBUSA dealerships for repairs which should be covered under the 7-year and 70,000-mile California Emissions Warranty, but are not identified by MBUSA's Warranty Information booklet as being covered, MBUSA refuses to provide 7-year and 70,000-mile California Emissions Warranty coverage. Plaintiff presented her Vehicle to MBUSA authorized repair facilities for repairs to the coolant thermostat, vacuum pump, and coolant pump. All of these repairs should have been covered under the 7-year and

70,000-mile California Emissions Warranty. Plaintiff was wrongfully denied warranty coverage for these repairs, all of which should have been covered under the 7-year and 70,000-mile California Emissions Warranty.

133.    The reason that Plaintiff was charged for said repairs was not the result of anything Plaintiff had done, an individual issue relating to the Sangera or Alfano dealerships, or an oversight by Sangera, or Alfano in failing to identify the repairs as repairs that should have been covered under the 7-year and 70,000-mile California Emissions Warranty. Rather, Plaintiff was charged for said repairs because of MBUSA's uniform and systematic business practice of intentionally refusing to identify in the MBUSA warranty booklet, and in resources provided to its dealerships, all of the parts that should be identified as high-priced emissions warranty parts under California law in order to limit the amount of warranty claims paid by MBUSA.

134.    CCR section 2037(c)(1)(B) regarding "High-priced Warranty Parts" requires MBUSA to identify the "high-priced warranted parts . . . which have an individual replacement cost at the time of certification exceeding the cost limit defined in section (c)(3)."

135.    MBUSA intentionally failed to identify all said components in order to reduce the amount of money that MBUSA spends on warranty related repairs. If MBUSA complied with California law and properly identified all parts as high-priced emissions warranty parts that should be identified as such, then MBUSA dealerships would properly provide warranty coverage for said high-priced emissions warranty parts.

136.    MBUSA's conduct violates California's unfair business practices statute, California Business and Professions Code section 17200, *et seq*. (the "UCL"), and violates the Consumers Legal Remedies Act, Civil Code section 1750, *et seq* (the "CLRA").

137.    Plaintiff and other members of the Classes have suffered damage as a result of MBUSA's wrongful conduct.

138.    MBUSA may attempt to justify not including the coolant thermostat, vacuum pump, and coolant pump as high-priced emissions parts based upon the amount of money in parts and labor that MBUSA pays its factory authorized repair facilities to perform repairs relating to these parts. But in determining if a part should be considered a high-priced part, a

manufacturer is supposed to consider the total amount of money in parts and labor that consumers pay to diagnose and perform repairs to the parts in question, not a negotiated book rate that factory authorized repair facilities are mandated to charge MBUSA. The repairs to the coolant thermostat, vacuum pump, and coolant pump were performed at MBUSA factory authorized repair facilities that charged Plaintiff the retail cost of these repairs.

139.    The United States Bureau of Labor and Statistics uses an inflation calculator to estimate how much buying power changes based upon inflation. The calculator can be found at, "https://data.bls.gov/cgi-bin/cpicalc.pl." Using this calculator provides further evidence that the coolant thermostat, vacuum pump, and coolant pump should have been identified by MBUSA as high-priced emissions warranted parts.

140.    A calculation using the inflation calculator provides guidance. Using the baseline date of January 2010, which significantly predates the relevant date for this analysis, and using January 2020, which is after all of the repairs were performed, $590.00 in 2010 would have the same buying power as $702.41 in 2010. This means that MBUSA cannot use inflation as an explanation for why the costs charged to Plaintiff for the repairs to the coolant thermostat, vacuum pump, and coolant pump in 2019 are so much more than the threshold amount when the original analysis was done. Although Plaintiff does not yet know how MBUSA conducted its analysis, inflation is not an appropriate or reasonable explanation for why the coolant thermostat, vacuum pump, and coolant pump were not considered high-priced emissions warranty parts when the Class Vehicles were sold.

141.    Furthermore, MBUSA cannot use the explanation that Plaintiff was overcharged by a rogue repair facility. Two separate MBUSA factory authorized repair facilities performed the repairs in question and there is no evidence that either of these repair facilities engaged in price gouging. Quite the opposite is true. A third-party service contract provider paid for a portion of these repairs. The service contract provider is in the business of paying for vehicle repairs and would not pay charges that were inflated or unnecessary.

142.    The retail cost of the repairs, even when taking into consideration the escalation in cost over time, clearly exceeds the high-priced emissions parts threshold.

143.    Looking at the MAC for 2020 vehicles, which was published on March 18, 2019, further illuminates MBUSA's wrongful conduct. The MAC for 2020 states that the high-priced emissions parts threshold is $640.00, which is hundreds of dollars less than what Plaintiff and Plaintiff's third-party service contract paid for the repairs to the Vehicle. Thus, an analysis of the repairs to the coolant thermostat, vacuum pump, and coolant pump today would determine that the price of each of the repairs exceeds the high-priced cost threshold.

144.    Similarly, MBUSA cannot credibly argue that it incorrectly estimated the replacement costs of the coolant thermostat, vacuum pump, or coolant pump as an explanation for why MBUSA wrongfully failed to conclude that these were high-priced emissions warranty parts. Varying designs of coolant thermostats, vacuum pumps, and coolant pumps are used in virtually every vehicle sold and leased in the United States. The repair protocols are equally common. Although the actual parts and repair protocols for each different vehicle do have some unique aspects, these are very common parts. Furthermore, the actual consumer cost to repair the coolant thermostat, vacuum pump and coolant pump for the Class Vehicles is hundreds of dollars above the threshold. And the parts are clearly emissions related parts. Finally, even now, MBUSA only acknowledges the coolant thermostat as being a high-priced emissions related part.

145.    On September 10, 2019, pursuant to California Civil Code Section 1782, counsel for Plaintiff sent MBUSA a letter, notifying MBUSA in writing of Plaintiff's claims under the Consumers Legal Remedies Act relating to said MBUSA warranty concealment. Said letter provided MBUSA with an opportunity to take actions to remedy said unlawful practices. Specifically, the letter indicated that MBUSA wrongfully failed to identify the vacuum pump, coolant pump, and coolant thermostat relating to the Vehicle as being high-priced emissions parts, having a 7-year, 70,000-mile California Emissions Warranty, and failed to provide said coverage.

146.    On November 12, 2019, MBUSA's counsel sent a letter in response, indicating in essence that MBUSA had done nothing wrong, and refusing to take any corrective action.

147.    By failing to provide a 7-year, 70,000-mile warranty for the coolant thermostat, vacuum pump, and coolant pump, MBUSA violated the UCL and CLRA.

**ALLEGATIONS REGARDING IDENTIFICATION OF ADDITIONAL PARTS**

148.    This litigation identifies two systemic actionable business practices that MBUSA has engaged in which harm members of the Classes. First, MBUSA has failed to identify all parts that should be covered under the California Emissions Warranty. Second, MBUSA has failed to identify all of the parts which MBUSA concedes are covered under the California Emissions Warranty that qualify as high priced.  These parts are readily identifiable. With respect to all emissions parts that should be covered under the California Emissions Warranty, every year, as part of the vehicle certification process, MBUSA has provided documentation to CARB regarding all vehicle malfunctions which can or are required to illuminate the OBD MIL.  Review of this documentation needs to be done in order to add those parts that have not already been identified as emissions parts but which, when defective, can or do result in illumination of the OBD MIL.  These parts, pursuant to the CCR, are emissions related.  Plaintiff has already begun this review using a qualified automotive consultant. The results can be used at the time of trial in order to identify how MBUSA's wrongful conduct has resulted in harm to members of the Classes and to provide members of the Classes with an appropriate remedy.

149.    The second step is to identify which of the emission parts previously identified, as described above, are also high-priced warranty parts.  MBUSA already performs this analysis as part of the certification process but has performed it incorrectly using the wrong standard. Therefore, the next required process is to calculate the replacement cost of each part identified on the revised list using the customer pay rate.  This would be done as follows: (1) identify the standard labor time charged to consumers to diagnose if the part is defective. The time charged to consumers for standard diagnosis will be determined using the two leading data aggregators in the automotive industry, Mitchell and Alldata. It is an automotive industry standard for repair facilities to use these data aggregators as guides to determine the appropriate time to charge consumers for a standard diagnosis. The information provided by Mitchell and Alldata provides

vehicle specific and defect specific diagnostic protocols and accurately estimated diagnostic labor time for evaluating virtually all symptoms and defects; (2) identify the standard labor time paid by consumers to repair and/or replace a defective part. Mitchell and Alldata also provide this information with the same degree of accuracy and reliability; (3) add the standard diagnosis and repair time to arrive at the total time, then multiply the total time by the respective labor rate identified MBUSA for each year, to arrive at the total labor charge. The information that has been provided by MBUSA regarding the labor rate applicable to each year appears to be accurate; (4) add the retail cost of the part, as identified by MBUSA, along with all incidental supplies that are needed to complete the repair, such as coolant, etc.; and (5) the sum of the aforementioned is the total cost to repair. This process will result in determining the total cost of the repair. If the total cost for the repair exceeds the price threshold for the respective year, the part shall be covered for 7 years or 70,000 miles.

150.    All of the information and data needed to conduct this two-part audit and review process are readily available. The results of this process are not subjective in nature but are merely the mathematical and scientific certainties that derive from complying with the California Emissions Warranty laws. The reason this lawsuit exists is not that there is confusion, mathematical complexity, or ambiguity regarding MBUSA's obligations. The reason that this lawsuit exists is simply because MBUSA has failed to follow the very simple, thoroughly explained, and easily implemented instructions provided by the CCR. As a result, consumers are being harmed in a very ascertainable, common and predictable manner.

151.    The aforementioned analysis has already been commenced by Plaintiff's counsel and has confirmed that there is a pervasive failure on the part of MBUSA to provide proper warranty coverage and that this failure is not isolated to the C300 MBUSA vehicles.

152.    The following is just one example of implementing the second step of the protocol to identify MBUSA's wrongful conduct with respect to identifying high-priced warranted parts for vehicles that are not C300 MBUSA vehicles.  Plaintiff's review of the applicable data and standards has determined that the fuel injectors installed in the 2015 MBUSA SL65AMG are high priced emissions parts. The warranty book for this vehicle

identifies the part as covered under the California Emissions Warranty, but not as being high-priced.  Alldata has identified the customer pay rate for the labor time to remove and replace the part. This labor time is multiplied by the labor rate that MBUSA has already submitted to CARB.  Alldata indicates that, while the part cost of one injector is less than $100.00, the customer pay labor time to remove and replace the part is 5.5 hours.  MBUSA documentation submitted to CARB as part of the certification process for the 2015 MBUSA SL65AMG has identified the labor rate for 2015 as $179.20 per hour.   As a result, the retail labor cost alone, when properly calculated, is over $900.00 ($179.20 x 5.5 = $985.60).  This amount well exceeds the $590.00 threshold for the cost to diagnose and replace emissions related parts as set forth in MAC (which advises manufacturers of the cost threshold for model year 2015 vehicles, as alleged above).  Thus, MBUSA has wrongfully failed to designate this part as high-priced, thus depriving consumers of the 7-year 70,000-mile warranty.  This part would now be properly identified as a high-priced part entitled to the extended 7-year, 70,000-mile warranty.

**PLAINTIFF'S CLASS ACTION ALLEGATIONS**

153.     Plaintiff re-alleges and incorporates by reference each allegation set forth above.

154.     Plaintiff brings this class action pursuant to Federal Rules of Civil Procedure Rules 23(a), (b)(2) and (b)(3) on behalf of herself and members of the Classes as defined below.

155.     Excluded from the Classes are Defendant, and its subsidiaries and affiliates; its current and former officers, directors, and employees (and members of their immediate families); and the legal representatives, heirs, successors or assigns of any of the foregoing.

156.     All claims alleged on behalf of Plaintiff and members of the Classes herein arise under California law for which Plaintiff seeks relief authorized by California law.

157.     As previously alleged, Plaintiff had reserved the right, based on further investigation and discovery, to redefine or expand the Class and/or to add subclasses to include other high-priced warranted parts and/or Classes based on Defendant's own Emissions Warranty.

158.     Per the express terms of the MBUSA warranty book, the "California Emission Control System Warranty applies to "all vehicles (except those certified to PZEV standards) that

1    are registered in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New

2    Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, or Washington. The warranty

3    period for the vehicle begins on the date of first retail sale, or on the date of entry into

4    demonstrator or company service, whichever occurs first."

5        159.    Defendant's warranty representations arise out of California law that Defendant

6    has chosen to apply outside of California to the vehicles in the States listed.  Accordingly,

7    Defendant's conduct was specifically intended to have effects outside of California and was

8    specifically intended to apply to vehicles and members of the Classes in those States that

9    Defendant chose to include by the express terms of the California Emissions Warranty. Under

10   these unique circumstances, California has a specific interest in regulating conduct outside of

11   California that specifically invokes California emissions requirements and California emissions

12   regulations and has an interest in preventing illegal practices that involve breach of California

13   emissions law that Defendant has chosen to invoke outside of California in the States covered

14   by the Registered Vehicle Class.  As Defendant seeks to apply the California Emission System

15   Warranty to members of the Classes and vehicles in the listed States outside of California,

16   members of the Classes in those States likewise should have the ability to have their rights

17   under that warranty asserted in California and pursuant to California law.

18       160.    Therefore, Plaintiff exercises her right to expand the Classes to include the same

19   parts on vehicles registered in States other than California.

20       161.    Furthermore, Plaintiff seeks to expand the class to include consumers who have

21   suffered damage due to MBUSA's wrongful business practice relating to other warranted parts

22   and due to diagnostic fees wrongfully incurred.

23       162.    Plaintiff's proposed Thermostat Class consists of and is defined as follows:

24          All persons in California, Connecticut, Delaware, Maine,
            Maryland, Massachusetts, New Jersey, New York, Oregon,
25          Pennsylvania, Rhode Island, Vermont, and/or Washington who,
            within the last four years, have been owners or lessees of Mercedes
26          C300 vehicles MY2015-2016 and who have paid for repairs and
            parts for the thermostat, which should have been covered under the
27          7-year, 70,000-mile California "high-priced" emissions warranty
            (the "Thermostat Class").

28

---

163. Plaintiff's proposed Vacuum Pump Class consists of and is defined as follows:

> All persons in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and/or Washington who, within the last four years, have been owners or lessees of Mercedes C300 vehicles MY2015-2018 and who have paid for repairs and parts for the vacuum pump, which should have been covered under the 7-year, 70,000-mile California "high-priced" emissions warranty (the "Vacuum Pump Class").

164. Plaintiff's proposed Coolant Pump Class consists of and is defined as follows:

> All persons in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and/or Washington who, within the last four years, have been owners or lessees of Mercedes C300 vehicles MY2015-2018 and who have paid for repairs and parts for the coolant pump, which should have been covered under the 7-year, 70,000-mile California "high-priced" emissions warranty (the "Coolant Pump Class").

165. Plaintiff's proposed High-Priced Warranted Part Class consists of and is defined as follows:

> All persons in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and/or Washington who, within the last four years, have been owners or lessees of Mercedes vehicles and who have paid out of pocket for diagnostics, repairs and parts for other parts (in addition to the Thermostat, Vacuum Pump and Coolant Pump) that should have been covered under Mercedes "high-priced warranted parts" 7-year, 70,000-mile California Emissions Warranty.

166. Plaintiff's proposed Emissions Related Part Class consists of and is defined as follows:

> All persons in California, Connecticut, Delaware, Maine, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, and/or Washington who, within the last four years, have been owners or lessees of Mercedes vehicles and who have paid out of pocket for diagnostics, repairs and parts for other emission related parts (in addition to the Thermostat, Vacuum Pump and Coolant Pump) that should have been covered under the California Emissions Warranty.

167.     On behalf of the Classes, Plaintiff seeks injunctive relief requiring MBUSA to identify all of the parts or components that should have been, and that should be, properly covered under the California Emissions Warranty.

168.     On behalf of the Classes, Plaintiff also seeks reimbursement for the money wrongfully paid by Plaintiff and members of the Classes relating to repairs that should have been covered by MBUSA California Emissions Warranty during the Class periods.

169.     Plaintiff reserves the right to redefine the Classes and to add subclasses as appropriate based on further investigation, discovery, and specific theories of liability.

170.     As required by Fed. R. Civ. P. 23(a)(2) and (b)(3), there are questions of law and fact common to the Classes, and those common questions predominate over any questions affecting only individual members. Among the common questions of law and fact include:

(a)     Whether MBUSA has failed, and is failing, to comply with the High-Cost Emissions-Related Parts Warranty by failing to provide a 7-year and 70,000-mile California emissions warranty for the vacuum pump, coolant pump, coolant thermostat and/or all parts that should be defined by MBUSA as high-priced warranted parts pursuant to the CCR.

(b)     Whether MBUSA has failed, and is failing, to identify for consumers and dealerships the vacuum pump, coolant pump, coolant thermostat and/or all parts that should be identified as high-priced warranted parts, and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(c)     Whether MBUSA has engaged in, and is engaging in, a systematic business practice of intentionally failing to identify the vacuum pump, coolant pump, coolant thermostat and/or all parts that should be identified as high-priced warranted parts and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty under the CCR.

(d)     Whether MBUSA has failed, and is failing, to identify the vacuum pump, coolant pump, coolant thermostat and/or all parts that should be identified as high-priced warranted parts and thus covered by the 7-year and 70,000-mile California High-

Cost Emissions-Related Parts Warranty in an effort to reduce the amount of money that MBUSA spends on warranty related repairs.

(e)     Whether MBUSA's conduct of failing to identify the vacuum pump, coolant pump, coolant thermostat and/or all parts that should be identified as high-priced warranted parts and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty results in consumers suffering financial loss.

(f)     Whether MBUSA's conduct of failing to identify the vacuum pump, coolant pump, coolant thermostat and/or all parts that should be identified as high-priced warranted parts and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty results in wrongfully minimizing the amount of money that MBUSA has to pay out in warranty claims.

(g)     Whether MBUSA's conduct of failing to identify the vacuum pump, coolant pump, coolant thermostat and/or all parts that should be identified as high-priced warranted parts and thus covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty violates California law.

(h)     Whether MBUSA has engaged in, and is engaging in, unlawful and unfair business practices in violation of California Business & Professions Code section 17200, *et seq.* with regard to MBUSA's failure to identify the vacuum pump, coolant pump, coolant thermostat and/or all of the high-priced warranted parts that should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(i)     Whether Plaintiff and members of the Classes are entitled to injunctive relief regarding MBUSA's failure to identify the vacuum pump, coolant pump, coolant thermostat and/or all of the high-priced warranted parts that should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty.

(j)  Whether MBUSA has used, and continues to use, the wrong standard for determining whether a warranted part is emissions related;

(k)  Whether and to what extent members of the Classes have suffered damage as a result of MBUSA using the wrong standard for determining whether a part should be covered under the California emissions warranty;

(l)  The appropriate amount of restitution, or monetary penalties resulting from MBUSA's violations of California law.

(m)  Whether MBUSA has engaged in, and is engaging, in concealment relating to MBUSA's failure to identify the vacuum pump, coolant pump, coolant thermostat and/or all of the high-priced warranted parts that should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty; and,

(n)  Whether MBUSA has violated and is violating the Consumers Legal Remedies Act, Civil Code section 1750, *et seq*., with regard to MBUSA's failure to identify the vacuum pump, coolant pump, coolant thermostat and/or all of the high-priced warranted parts which should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty.

171.  Numerosity: As required by Fed. R. Civ. P. 23(a)(1), the members of the Classes are so numerous that joinder of all members of the Classes would be unfeasible and impractical, and the resolutions of their claims through the procedure of a class action will be of benefit to the Parties and the Court. The membership of the Classes is unknown to Plaintiff at this time; however, the membership of the Classes is estimated to be greater than one hundred (100) individuals and the identity of such membership is readily ascertainable by inspection of Defendant's records.

172.  Typicality: As required by Fed. R. Civ. P. 23(a)(3), Plaintiff's claims are typical of the claims of all members of the Classes since Plaintiff and all members of the Classes suffered damages as result of Defendant's concealment and wrongful conduct set forth herein.

173.  Adequacy: As required by Fed. R. Civ. P. 23(a)(4), Plaintiff will fairly and

1  adequately protect the interests of the members of the Classes. Plaintiff has no interests adverse

2  or antagonistic to those of the Classes and has retained counsel competent and experienced in

3  class action litigation who will zealously prosecute this matter on behalf of the Classes to its

4  conclusion

5       174.   <u>Superiority</u>: As required by Fed. R. Civ. P. 23(b)(3), the nature of this action

6  makes the use of class action adjudication superior to other methods. A class action will achieve

7  economies of time, effort, and expense as compared with separate lawsuits, and will avoid

8  inconsistent outcomes because the same issues can be adjudicated in the same manner and at the

9  same time for the entire class.

10       175.   Defendant keeps extensive computerized records of its customers. Defendant has

11  one or more databases through which a significant majority of members of the Classes may be

12  identified and ascertained, and it maintains contact information, including email and home

13  mailing addresses, through which notice of this action could be disseminated in accordance with

14  due process requirements.

15       176.   Class certification of Plaintiff's claims is also appropriate pursuant to Fed. R.

16  Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable

17  to Plaintiff and members of the Classes, making appropriate both declaratory and injunctive

18  relief with respect to Plaintiff and members of the Classes.

19  **TOLLING OF THE STATUTE OF LIMITATIONS**

20       177.   MBUSA has actively engaged in misleading, and dishonest conduct relating to

21  its failure to properly identify all of the parts that should be identified as high-priced warranted

22  parts covered under the 7-year and 70,000-mile California Emissions Warranty. Despite acting

23  diligently, Plaintiff and members of the Classes cannot be reasonably expected on their own to

24  learn or discover what parts and repairs should be identified as high-priced and covered under

25  the 7-year and 70,000-mile California Emissions Warranty. Therefore, the discovery rule is

26  applicable to the claims asserted by Plaintiff and members of the Classes, and the statute of

27  limitations for bringing the claims set forth herein should be tolled.

28

178.    MBUSA has actual and constructive knowledge that it is violating California law by failing to identify all of the parts that should be identified as high-priced warranted parts, and by failing to provide a 7-year and 70,000-mile California Emissions Warranty relating to said parts. MBUSA has concealed from Plaintiff and members of the Classes that MBUSA is violating California law as set forth herein.

179.    Any applicable statute of limitation is tolled by MBUSA's knowledge, active concealment, and wrongful conduct set forth herein. MBUSA is further estopped from relying on any statute of limitation because of its concealment set forth herein.

**FIRST CLAIM FOR RELIEF**

**Violation of California Unfair Competition Law**

**(Cal. Bus. & Prof. Code § 17200, *et seq*.)**

180.    Plaintiff re-alleges and incorporates by reference each allegation set forth above.

181.    California Business and Professions Code section 17200, *et seq*. (the "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice." MBUSA has committed acts of unfair competition proscribed by the UCL, including the acts and practices alleged herein.

182.    The UCL imposes strict liability. Plaintiff need not prove that MBUSA intentionally or negligently engaged in unlawful or unfair business practices – only that such practices occurred.

183.    MBUSA is a "person" as defined by Business & Professions Code § 17201.

184.    As a direct and proximate result of MBUSA's acts and practices in violation of the UCL, Plaintiff and members of the Class have suffered injury in fact and lost money or property as set forth above and will continue to do so.

**<u>Unlawful Prong</u>**

185.    A business practice is "unlawful" under the UCL if it is forbidden by law or regulations, including standard of professional conduct. The violation of any law or regulation may serve as the predicate for a violation of the "unlawful" prong of the UCL.

186.     MBUSA failed to comply with the California Emissions Warranty requirements pursuant to the CCR by failing to provide 7-year and 70,000-mile warranty coverage for the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, the coolant pumps installed in the Coolant Pump Class Vehicles, and all other parts where coverage should be provided pursuant to the CCR. The California Emissions Warranty applies to all Class Vehicles. 13 CCR 2037(a). Pursuant thereto, manufacturers shall warrant that vehicles conform with the California Air Resources Board regulations, and are free from defects which cause the failure of a warranted part to perform as described in the application for certification, including defects which would cause the vehicle's on-board diagnostic malfunction indicator to illuminate, for 3 years or 50,000 miles. 13 CCR 2037(b)(1)-(2). The vehicle manufacturer is MBUSA, which is the manufacturer granted certification for the Class Vehicles. 13 CCR 2035(c)(5). The parts at issue are all warranted parts. The warranty period shall be 7- years and 70,000 miles for high-priced emissions parts. 13 CCR 2037(b)(3). High-priced emissions parts are those parts which, when taking into consideration the cost to diagnose, replace and pay for the failed part, exceed the cost limit defined in 13 CCR 2037(c)(3). The California Air Resources Board published memos which calculated the cost limit for years 2015, 2016, 2017, and 2018. Although the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, the coolant pumps installed in the Coolant Pump Class Vehicles, and other parts installed in the Class Vehicles exceeded the cost limit for the correlating years and should have received California Emissions Warranty coverage, MBUSA failed to provide 7-year and 70,000-mile warranty coverage for said parts. The failure has resulted in damage to Plaintiff and members of the Classes.

187.     MBUSA did not designate the parts as high-priced warranted parts that should be covered by the 7-year and 70,000-mile California High-Cost Emissions-Related Parts Warranty. Thereby, MBUSA also was able to avoid identifying the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, the coolant pumps installed in the Coolant Pump Class Vehicles, and all other parts where

coverage should be provided pursuant to the CCR as being high-priced warranted parts in the warranty books for the Class vehicles, which purport to identify all parts covered under the high-priced California Emissions Warranty for 7 years and 70,000 miles. MBUSA failed to designate all parts that should be identified as emissions related.  Thus, MBUSA's violation of Section 2037(c)(1)(B) directly affected communications with consumers. By violating Section 2037(c)(1)(B), MBUSA was able to avoid disclosing in the warranty books all of the parts that should have been included as high-priced warranted parts.

188.    MBUSA's conduct also violates the unlawful prong in that MBUSA has violated the CLRA as further alleged below.

189.    MBUSA's acts of unlawful competition as set forth above have caused members of the Class to suffer damage, present a continuing threat and will persist and continue to do so unless and until this Court issues appropriate injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. Section 1021.5.

## Unfair Prong

190.    MBUSA's conduct violates the unfair prong of the UCL.

191.    An act or practice is unfair if the consumer injury is substantial, is not outweighed by any countervailing benefits to consumers or to competition and is not an injury the consumers themselves could reasonably have avoided. An act or practice also is unfair if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. An act or practice also is unfair if Plaintiff's claims are "tethered" to specific constitutional, statutory or regulatory provisions. MBUSA's conduct violates all of these definitions.

192.    As alleged above, MBUSA engages and has engaged in a systematic business practice of intentionally failing to identify in the Class Vehicles' warranty books at the time of distribution, and in resources provided to its dealerships, numerous parts that MBUSA is obligated to identify as high-priced warranted parts and emission related parts by operation of law, including specifically the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, the coolant pumps installed in

1    the Coolant Pump Class Vehicles, and all other parts where coverage should be provided

2    pursuant to the CCR. MBUSA does this in an effort to reduce the amount of money that

3    MBUSA spends on warranty-related repairs knowing that it would be very difficult if not

4    impossible for most consumers to discover this unlawful conduct. If MBUSA complied with

5    California law and properly identified all of the parts that should be identified as high-priced

6    warranted parts, then MBUSA dealerships would properly provide warranty coverage for said

7    high-priced warranted parts.

8        193.   Further, MBUSA's conduct is unfair because it intentionally refuses to provide

9    warranty coverage for the coolant thermostats installed in the Thermostat Class Vehicles, the

10   vacuum pumps installed in the Vacuum Pump Class Vehicles, the coolant pumps installed in the

11   Coolant Pump Class Vehicles and other high priced parts and emission related parts for the sole

12   purpose of wrongfully limiting its warranty claims, with no regard for the fact that the public is

13   being forced to pay for repairs which should be covered under the 7-year and 70,000-mile

14   California Emissions Warranty. Plaintiff and members of the Classes have suffered injury in

15   fact and lost money or property as a result of MBUSA's unfair business acts and practices as set

16   forth in detail.

17       194.   MBUSA's failure to properly identify the coolant thermostats installed in the

18   Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles,

19   the coolant pumps installed in the Coolant Pump Class Vehicles, all other parts where coverage

20   should be provided pursuant to the CCR and/or all parts as high-priced warranted and emissions

21   related parts that should be identified as such, is a uniform, systematic, and intentional business

22   practice on the part of MBUSA to minimize the amount of money that MBUSA has to pay out

23   in warranty claims. This conduct violates California law.

24       195.   As a direct and proximate result of MBUSA's acts and practices in violation of

25   the UCL, Plaintiff and members of the Classes have paid out of pocket to repair or replace the

26   coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in

27   the Vacuum Pump Class Vehicles, the coolant pumps installed in the Coolant Pump Class

28   Vehicles, all other parts where coverage should be provided pursuant to the CCR and/or other

1   high-priced warranted parts and emissions related parts that should have been covered by

2   MBUSA under the 7-year and 70,000-mile California Emissions Warranty. As a result,

3   consumers have been forced to pay out of pocket to repair or replace vehicle components that

4   should be covered under warranty is clearly unfair.

5        196.   MBUSA's conduct does not benefit consumers or competition. Plaintiff and

6   members of the Classes could not reasonably avoid the injury each of them suffered or will

7   suffer, which injury is substantial. MBUSA's conduct only benefits MBUSA, by MBUSA

8   wrongfully avoiding having to pay warranty claims which should be covered by the California

9   Emissions Warranty.

10       197.   The gravity of the consequences of MBUSA's conduct as described above

11  outweighs the justification, motive or reason therefor, is immoral, unethical and unscrupulous.

12       198.   MBUSA's conduct also offends established public policy that is tethered to

13  legislatively declared policies as set forth in the laws detailed above, including California laws

14  and regulations regarding California's Emission Control System Warranty Requirements, or is

15  substantially injurious to the public, for the reasons set forth above.

16       199.   To the extent that any definition of "unfair" requires a balancing test or weighing

17  various factors, such an inquiry is fact intensive and requires a full factual record as to

18  MBUSA's justification and motives for its conduct, and as to the impact of MBUSA's conduct

19  on Plaintiff and members of the Classes.

20       200.   MBUSA's acts of unfair competition as set forth above present a continuing

21  threat and will persist and continue to do so unless and until this Court issues appropriate

22  injunctive relief. Plaintiff also seeks attorneys' fees and costs pursuant to, *inter alia*, C.C.P. §

23  1021.5.

24                              **Deceptive Prong**

25       201.   Plaintiff's claim under this prong is predicated on omissions, not

26  misrepresentations. While the warranty booklets for Class Vehicles claim to identify all of the

27  parts covered under the 7-year and 70,000-mile California emissions warranty, the warranty

28  books omit the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum

1   pumps installed in the Vacuum Pump Class Vehicles, the coolant pumps installed in the Coolant

2   Pump Class Vehicles, all other parts where coverage should be provided pursuant to the CCR,

3   and other high priced and emissions related  parts that that should have been listed as covered by

4   the California Emissions Warranty.

5         202.    MBUSA engages in a uniform and systematic business practice of intentionally

6   failing to identify in the MBUSA warranty books, and in resources provided to its dealerships,

7   all high-priced and emissions related warranted parts, including the coolant thermostats installed

8   in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class

9   Vehicles, the coolant pumps installed in the Coolant Pump Class Vehicles, and all other parts

10  where coverage should be provided pursuant to the CCR installed in the Class Vehicles as high-

11  priced warranted parts. MBUSA does this in an effort to intentionally conceal the identity of the

12  parts which should be covered under the 7-year and 70,000-mile California Emissions Warranty

13  for high-priced emissions parts. This has intentionally misled consumers with regard to what

14  parts are covered under the 7-year and 70,000-mile California Emissions Warranty for high-

15  priced parts, and reduced the amount of money that MBUSA spends on warranty-related repairs.

16  As warranted parts necessary for the operation of the vehicles, the parts that MBUSA failed to

17  properly identify as high-priced relate to the central functionality of the vehicles and are critical

18  to the vehicles' operation. If MBUSA complied with California law, and properly identified all

19  parts as high-priced warranted parts which should be identified as such, then MBUSA

20  dealerships would properly provide warranty coverage for said high-priced warranted parts.

21        203.    MBUSA's failure to properly identify the coolant thermostats installed in the

22  Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles,

23  the coolant pumps installed in the Coolant Pump Class Vehicles, all other parts where coverage

24  should be provided pursuant to the CCR, and other high-priced warranted parts and emissions

25  related parts as high-priced warranted parts is a systematic and intentional business practice on

26  the part of MBUSA to minimize the amount of money that MBUSA has to pay out in warranty

27  claims. This conduct violates California law.

28

204.     Said conduct is likely to deceive an ordinary consumer as MBUSA concealed this information from consumers and from MBUSA's dealerships, in an effort by MBUSA to minimize the amount of money that MBUSA has to pay out in warranty claims. One of the ways MBUSA misleads consumers relates to the information that MBUSA provides to consumers in the MBUSA warranty books. MBUSA intentionally omits information from the warranty books by intentionally failing to classify all of the high-priced warranted parts as parts that should be covered under the 7-year and 70,000-mile California Emissions Warranty.

205.     In evaluating the repair costs to be charged, Plaintiff and members of the Classes have justifiably relied on the information in the warranty booklets about parts that should be covered under the high-priced emissions warranty and have been deceived and suffered damage as a result of MBUSA's intentional and wrongful conduct.

206.     MBUSA is fully aware of its obligations pursuant to the CCR and purports to comply with them. However, in derogation if its legal obligations, MBUSA willfully and intentionally conceals from consumers, and from the MBUSA dealerships, the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, the coolant pumps installed in the Coolant Pump Class Vehicles, and all other parts where coverage should be provided pursuant to the CCR as parts that should be covered as high-priced warranted parts and emissions related parts pursuant to the California Emissions Warranty, in order to reduce the amount of money that MBUSA has to pay in warranty claims.

207.     MBUSA is and was under a duty to disclose to consumers and to its dealerships that the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, the coolant pumps installed in the Coolant Pump Class Vehicles, all other parts where coverage should be provided pursuant to the CCR and/or all the other high-priced parts and emissions related parts are required to be covered under the California Emissions Warranty.

208.    MBUSA is and was further under a duty to disclose to consumers and to its dealerships all of the parts which it is required to cover under the 7-year and 70,000-mile California Emissions Warranty because:

(1)    MBUSA is and was in a superior position to know the true state of facts about the duration of the California Emissions Warranty and which parts should be covered as high-priced warranted parts;

(2)    MBUSA has made partial disclosures about the extent of the California Emissions Warranty;

(3)    MBUSA has actively concealed and failed to identify all of the parts that are covered under the California Emissions Warranty; and,

(4)    Members of the Classes, including Plaintiff, have suffered actual loss due to MBUSA's concealment and false representations.

209.    The facts concealed and not disclosed by MBUSA to Plaintiff and members of the Classes are material. Had Plaintiff and members of the Classes known the true extent of the California Emissions Warranty, and had MBUSA been truthful to its dealerships and members of the Classes with regard to identifying all of the parts and repairs that are covered under the California Emissions Warranty, Plaintiff and members of the Classes would have been able to avoid spending money in order to repair MBUSA vehicles sold and leased in California. As a result, Plaintiff and members of the Classes have suffered damage.

210.    In order to minimize the amount of money that MBUSA spends on warranty related repairs, MBUSA continues to conceal that the coolant thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the Vacuum Pump Class Vehicles, the coolant pumps installed in the Coolant Pump Class Vehicles, all other parts where coverage should be provided pursuant to the CCR, and other high priced warranted parts and emissions related parts are warranted parts that should be covered under the California Emissions Warranty.

211.    Furthermore, MBUSA has refused to, and continues to refuse to provide 7-year and 70,000-mile California Emissions Warranty coverage relating to all repairs for the coolant

1   thermostats installed in the Thermostat Class Vehicles, the vacuum pumps installed in the

2   Vacuum Pump Class Vehicles, the coolant pumps installed in the Coolant Pump Class Vehicles,

3   all other parts where coverage should be provided pursuant to the CCR, and other high-priced

4   warranted parts and emissions related parts which should be covered under said warranty

5   pursuant to California law. This refusal is intentional, willful, unfair, and unlawful.

**SECOND CLAIM FOR RELIEF**

**Violation of California Consumers Legal Remedies Act**

**(Cal. Civil Code § 1750, *et seq*.)**

9   212.   Plaintiff re-alleges and incorporates by reference each allegation set forth above.

10   213.   MBUSA has violated Section 1770 of the California Consumers Legal Remedies

11   Act, Cal. Civ. Code Section 1750, *et seq*. (the "CLRA"). The violation results from MBUSA's

12   failure to keep its promise to the State of California, and members of the Classes, including

13   Plaintiff, that it would honor the terms of the MBUSA warranty, and by doing so, that it would

14   honor the terms of the CCR. Furthermore, the MBUSA warranty book provided by MBUSA to

15   consumers, including Plaintiff, specifically references the California Emissions Warranty, and

16   both inferentially and specifically represents that it will honor the terms of the CCR, however

17   MBUSA has refused, and continues to refuse to honor the terms of the CCR, as stated herein.

18   214.   Plaintiff is a consumer who was wrongfully required to pay for repairs which

19   should have been paid for by MBUSA pursuant to the CCR. The Vehicle was presented by

20   Plaintiff for repairs at MBUSA authorized repair facilities, in compliance with the terms and

21   conditions of the MBUSA warranty. The Vehicle required repairs which should have been

22   covered pursuant to the CCR, based upon the Vehicle's mileage and age. MBUSA wrongfully

23   failed and refused to pay for the warranty repairs due to the unlawful pattern and practice set

24   forth herein. Thus, Plaintiff suffered damage.

25   215.   MBUSA knows that it is violating the terms of the CCR, however MBUSA

26   intentionally violates the CCR in order to save money. Plaintiff and members of the Classes are

27   generally unaware of the terms and scope of the CCR, thus MBUSA is able to get away with

28   said wrongful conduct. As a result, Plaintiff and members of the Classes have suffered damage.

1  MBUSA engages in a systemic pattern of denying warranty claims under the CCR relating to

2  high-priced warranted parts.

3       216.    Plaintiff and members of the Classes have presented Class Vehicles to MBUSA

4  authorized repair facilities for repairs that should have been covered under the CCR, but

5  coverage has been wrongfully denied to them. As a result, Plaintiff and members of the Classes

6  have thus suffered damage. Plaintiff brings this claim on behalf of Plaintiff and members of the

7  Classes.

8       217.    MBUSA's conduct in warranting, advertising, leasing, selling and distributing

9  Class Vehicles in the State of California, while at the same time knowingly and wrongfully

10  failing to honor the terms of the CCR, constitutes the following violations of Section 1770:

11       (a)    MBUSA represents and has represented that Class Vehicles sold and leased in

12              the State of California have characteristics or benefits which they did not have (in

13              violation of Section 1770(a)(5));

14       (b)    MBUSA has falsely represented that Class Vehicles sold and leased in the State

15              of California were of a particular standard, quality, or grade when they were of

16              another (in violation of Section 1770(a)(7)); and,

17       (c)    MBUSA advertised Class Vehicles that have been sold and leased in the State of

18              California with the intent not to sell them as advertised (in violation of Section

19              1770(a)(9)).

20       218.    Civil Code section 1780(a) provides that any consumer who suffers damage as a

21  result of a violation of the CLRA may bring an action to recover: 1) actual damages, but in no

22  case shall the total award of damages in a class action be less than $1,000; 2) an order enjoining

23  the methods, acts, or practices; 3) restitution of property; 4) punitive damages; and 5) any other

24  relief that the court deems proper.

25       219.    Civil Code section 1781 provides that Plaintiff may pursue this case as a class

26  action.

27       220.    Plaintiff requests injunctive relief pursuant to Civil Code 1782(d).

28       221.    Plaintiff is entitled to attorney fees pursuant to Civil Code section 1780(e).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for relief and judgment against MBUSA as follows:

(a)      An order certifying the proposed Classes, designating Plaintiff as named representative of the Classes, and designating the Plaintiff's Counsel as Class Counsel;

(b)      A declaration that MBUSA is financially responsible for notifying all members of the Classes about the wrongful conduct set forth herein;

(c)      An order enjoining MBUSA from further deceptive distribution, sales, and lease practices, and to reimburse both Plaintiff and members of the Classes for the money wrongfully paid by Plaintiff and members of the Classes relating to repairs which should have been covered by MBUSA under the California emissions warranty.  Specifically, such an order would, *inter alia*, compel MBUSA to accurately and comprehensively apply the CCR in order to properly identify all parts which should be covered under the California emissions warranty.

(d)      An order enjoining MBUSA from further deceptive distribution, sales, and lease practices, and to reimburse both Plaintiff and members of the Classes for the money wrongfully paid by Plaintiff and members of the Classes relating to repairs which should have been covered by MBUSA under the California emissions warranty.  Specifically, such an order would, *inter alia*, compel MBUSA to: (1) on a going forward basis, cease its current practice of using the warranty pay rate and instead use the customer pay rate to determine whether a part covered under the California emissions warranty is high priced under the California Emissions Warranty; (2) recalculate whether all of the "emissions parts" that Mercedes previously identified and submitted to CARB and that could still be covered by the California Emissions Warranty, in fact, should properly be characterized as high priced parts when the correct, customer pay rate is used; (3) calculate whether all of the parts that should be covered under the California emissions warranty should properly be characterized as high priced parts; (4) on a going forward basis, use the proper standard for determining whether a part is" emission related" under the California Emissions Warranty; and, (5) reimburse all out of pocket costs incurred as a result of the use of the incorrect standard.

(e)      An award to Plaintiff and members of the Classes of compensatory, exemplary, and statutory damages, including interest, in an amount to be proven at trial;

(f)      An award to Plaintiff and members of the Classes of any repair costs they are

1  owed and reimbursement for all out-of-pocket expenses that MBUSA owners and lessees

2  wrongly paid for repairs that should properly have been covered by MBUSA under the

3  California Emissions Warranty;

4        (g)    A declaration that MBUSA must disgorge, for the benefit of the Classes, all or

5  part of the ill-gotten profits it received as a result of the wrongful conduct set forth herein, or

6  make full restitution to Plaintiff and members of the Classes;

7        (h)    An award of attorneys' fees and costs, as allowed by law;

8        (i)    An award of attorneys' fees and costs pursuant to California Code of Civil

9  Procedure § 1021.5;

10        (j)    An award of pre-judgment and post-judgment interest;

11        (k)    Leave to amend the Complaint to conform to the evidence produced at trial;

12  and

13        (l)    Other relief as may be appropriate under the circumstances.

14  **<u>DEMAND FOR JURY TRIAL</u>**

15  Pursuant to Federal Rules of Civil Procure, Rule 38(b), Plaintiff hereby demands a trial

16  by jury as to all claims so triable.

17

18  Dated:  June 16, 2022               Respectfully submitted,

19                 **POMERANTZ LLP**
20                 **THE LAW OFFICE OF ROBERT L. STARR**

21            By: _____
                  /s/ Ari Y. Basser
22                 Jordan L. Lurie
               Ari Y. Basser
23                 Robert L. Starr

24                 *Attorneys for Plaintiff*

25

26

27

28