**POMERANTZ LLP**
Jordan L. Lurie, State Bar No. 130013
jllurie@pomlaw.com
Ari Y. Basser, State Bar No. 272618
abasser@pomlaw.com
1100 Glendon Avenue, 15th Floor
Los Angeles, CA 90024
Telephone: (310) 432-8492

*Attorneys for Plaintiff and the Class*

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CORY HAZDOVAC, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>MERCEDES BENZ USA, LLC, and DOES MBUSA 1 through 10, inclusive,<br><br>Defendants. | Case No. 20-cv-00377-RS<br><br>**CLASS ACTION**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARD; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**DECLARATION OF JORDAN L. LURIE FILED CONCURRENTLY**<br><br>Judge:  Hon. Richard Seeborg<br><br>Date:          June 25, 2026<br>Time:         1:30 p.m.<br>Courtroom: 12, 19th Floor |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**NOTICE IS HEREBY GIVEN** that on June 25, 2026 at 1:30 p.m., or as soon thereafter as the matter may be heard, before the Honorable Richard Seeborg in Courtroom 12, located at the United States District Court for the Northern District of California, San Francisco Division, 450 Golden Gate Avenue, San Francisco, California 94103, Plaintiff Cory Hazdovac ("Plaintiff") on behalf of herself and all others similarly situated, will and hereby does, move for an Order pursuant to Rules 23(h)(1) and 54(d)(2) of the Federal Rules of Civil Procedure awarding attorneys' fees, costs and expenses to Plaintiff's Counsel and a service award to Plaintiff pursuant to the Class Action Settlement Agreement ("Settlement Agreement" or "Agreement").

This Motion is based upon: (1) this Notice of Motion; (2) the accompanying Memorandum of Points and Authorities in Support of the Motion; (3) the concurrently filed Declaration of Jordan L. Lurie, Declaration of Manny Starr, and Declaration of Plaintiff Cory Hazdovac; (4) the records, pleadings, and papers filed in this action; and, (5) such other documentary and oral evidence or argument as may be presented to the Court at, or prior to, the hearing of this Motion that may be considered by the Court.

Dated: April 15, 2026                           Respectfully submitted,

                                                **POMERANTZ LLP**


                                                By:  _____/s/ Ari Y. Basser_____
                                                         Jordan L. Lurie
                                                         Ari Y. Basser

                                                *Attorneys for Plaintiff and the Class*

**TABLE OF CONTENTS**

I.      INTRODUCTION ........................................................................................... 1

II.     THE LITIGATION AND PLAINTIFF'S COUNSEL'S EFFORTS ON BEHALF OF THE CLASS ................................................................................................ 2

      A.      Pleadings........................................................................................... 2

      B.      Discovery .......................................................................................... 4

      C.      Settlement Negotiations and Mediations ........................................... 5

      D.      Notice to the Settlement Class........................................................... 6

III.    PLAINTIFF'S REQUESTED FEES ARE REASONABLE ......................................... 7

      A.      The Fee Request is Reasonable Under the Lodestar Method............................ 8

            1.      The Hourly Rates are Reasonable .......................................... 9

            2.      The Number of Hours Devoted to the Case Is Reasonable .................. 11

      B.      The Requested Fee Represents a Negative Multiplier ..................................... 14

      C.      Plaintiff's Counsel Achieved an Excellent Result for the Class ...................... 15

            1.      Warranty Extension ............................................................. 15

            2.      Out-of-Pocket Reimbursement Program............................................. 16

      D.      Skill of Plaintiff's Counsel................................................................ 19

      E.      The Settlement's Benefits were Achieved in the Face of Substantial Litigation Risk and Risk of Nonpayment................................................................... 21

IV.     THE REQUESTED SERVICE AWARD IS REASONABLE .................................. 22

V.      THE REQUESTED COSTS ARE REASONABLE................................................. 24

VI.     CONCLUSION................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abrogina v. Kentech Consulting Inc.*,
2023 U.S. Dist. LEXIS 177257 (S.D. Cal. Sept. 5, 2023) ........................................................14

*In re Apple Inc. Device Performance Litig.*,
2021 U.S. Dist. LEXIS 50546 (N.D. Cal. March 17, 2021) ........................................................8

*In re Apple Inc. Device Performance Litig.*,
2023 U.S. Dist. LEXIS 27892 (N.D. Cal. February 17, 2023) ...........................................20, 21

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022)........................................................................................................22

*Beauchamp v. Anaheim Union High Sch. Dist.*,
816 F.3d 1216 (9th Cir. 2016)........................................................................................................9

*In re Bluetooth Headset Prod. Liab. Litig.*,
654 F.3d 935 (9th Cir. 2011)...................................................................................................8, 15

*Camacho v. Bridgeport Fin., Inc.*,
523 F.3d 973 (9th Cir. 2008).........................................................................................................9

*Ching v. Siemens Indus., Inc.*,
2014 U.S. Dist. LEXIS 89002 (N.D. Cal. June 27, 2014) .........................................................22

*Cunningham v. County of Los Angeles*,
879 F.2d 481 (9th Cir. 1988).........................................................................................................8

*Curran v. City of Oakland*,
2025 U.S. Dist. LEXIS 251945 (N.D. Cal. Dec. 4, 2025) ...................................8, 10, 12, 23

*Graham v. DaimlerChrysler Corp.*,
34 Cal. 4th 553 (2004)..................................................................................................................15

*Grant v. Martinez*,
973 F.2d 96 (2nd Cir. 1992)...................................................................................................12, 13

*Harris v. Marhoefer*,
24 F.3d 16 (9th Cir. 1994)............................................................................................................24

*In re HP Printer Firmware Update Litig.*,
2019 U.S. Dist. LEXIS 108959 (N.D. Cal. June 28, 2019) .........................................................7

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019) (*en banc*)......................................................................................19

*Kelly v. Wengler*,
822 F.3d 1085 (9th Cir. 2016)............................................................................................8

*Kim v. Fujikawa*,
871 F.2d 1427 (9th Cir. 1989)..........................................................................................14

*Kuraica v. Dropbox, Inc.*,
2021 U.S. Dist. LEXIS 235394 (N.D. Cal. Dec. 8, 2021) ...............................................15

*Lagunas v. Young Adult Inst., Inc.*,
2024 U.S. Dist. LEXIS 41242 (N.D. Cal. March 8, 2024) ..............................................23

*Missouri v. Jenkins*,
491 U.S. 274 (1989) .........................................................................................................10

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) .....................................................................................12, 14

*In re Omnivision Techs., Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008) ...........................................................................15

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)..............................................................................................9

*Parkinson v. Hyundai Motor Am.*,
796 F. Supp. 2d 1165 (C.D. Cal. 2010).............................................................................12

*Radcliffe v. Experian Info. Sols., Inc.*,
715 F.3d 1157 (9th Cir. 2013)...........................................................................................22

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009)...............................................................................8, 15, 22

*Serrano v. Priest*,
20 Cal. 3d 25 (1977).........................................................................................................19

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003)................................................................................7, 22, 24

*Vizcaino v. Microsoft Corp.*,
290 F.3d 1043 (9th Cir. 2002)...........................................................................................14

*Walsh v. Kindred Healthcare*,
2013 U.S. Dist. LEXIS 176319 (N.D. Cal. Dec. 16, 2013) ...............................................8

*In re Washington Pub. Power Supply Sys. Sec. Litig.*,
19 F.3d 1291 (9th Cir. 1994)............................................................................................22

*Weeks v. Google LLC*,
2019 U.S. Dist. LEXIS 215943 (N.D. Cal. Dec. 13, 2019) ..............................................22

*Willner v. Manpower Inc.*,
  2015 U.S. Dist. LEXIS 80697 (N.D. Cal. June 22, 2015) ........................................................14

*Wilson v. Metals USA, Inc.*,
  2019 U.S. Dist. LEXIS 39854 (E.D. Cal. Mar. 12, 2019)..........................................................9

*Yamada v. Nobel Biocare Holding AG*,
  825 F.3d 536 (9th Cir. 2016)........................................................................................................9

*Yun-Fei Lou v. American Honda Motor Co.*,
  2025 U.S. Dist. LEXIS 89346 (N.D. Cal. May 9, 2025) ......................................................8, 10

*Zakikhani v. Hyundai Motor Co.*,
  2023 U.S. Dist. LEXIS 123158 (C.D. Cal. May 5, 2023)...................................................10, 12

**Statutes**

Cal. Bus. & Prof. Code § 17200, *et seq*. ........................................................................................2

Cal. Civ. Code § 1750, *et seq*.........................................................................................................2

California Code of Regulations (CCR) ............................................................................................3

**Other Authorities**

Fed. R. Civ. P. 23 ........................................................................................................................6, 7

## I.    INTRODUCTION

After nearly six years of hard-fought and highly contested litigation, Plaintiff and her counsel have achieved a remarkable and groundbreaking Settlement for the Class.[1]  Plaintiff's original Complaint, brought on behalf of certain Mercedes owners in California only, alleged that MBUSA failed to identify three (3) vehicle parts as "warranted parts" entitled to extended 7 years/70,000 miles warranty coverage ("Emissions Warranty" or "Warranty").  As a result of the efforts of Plaintiff and her counsel, MBUSA now has agreed to cover *fourteen (14)* vehicle parts (the "Subject Parts") under the Emissions Warranty for vehicles registered in Colorado, Connecticut, Delaware, Maine, Maryland, Massachusetts, Minnesota, Nevada, New Jersey, New York, Oregon, Pennsylvania, Rhode Island, Vermont, Virginia, and Washington (also referred to as "Reg. 177 States") *i.e.*, States in which the California Emissions Warranty applies pursuant to the express terms of the vehicles' warranty books,  in addition to California (the "Subject Vehicles"), and has agreed to reimburse Class Members for qualifying out-of-pocket costs to diagnose, repair, or replace the Subject Parts, as fully set forth in the Settlement Agreement and summarized below.  This is an extraordinary accomplishment.

The Settlement was achieved after three (3) years of mediation and ongoing negotiations, initially by (Ret.) Judge Jay Gandhi and, more recently, by Michelle Yoshida, and following years of extensive motion practice, amended pleadings, discovery disputes and depositions, as detailed below and in the Declaration of Jordan L. Lurie ("Lurie Decl."), filed concurrently.

In recognition of the substantial work performed by Plaintiff and Plaintiff's Counsel and the significant relief obtained for the Settlement Class as further described below, Plaintiff respectfully requests an award of $2,812,500 consisting of $2,723,012.84 in attorneys' fees, $79,487.16 in reimbursable litigation costs, and a service award of $10,000 to the named Plaintiff.

---

[1] Unless otherwise defined, capitalized terms herein have the meaning set forth in the Class Action Settlement Agreement and Release ("SA" or "Agreement"), filed on November 13, 2025 (ECF 121-4). "Plaintiff's Counsel" as used herein includes refers to Class Counsel (Pomerantz LLP) and to Frontier Law, which also participated in this litigation. This Motion also incorporates by reference the details set forth Plaintiff's Motion for Preliminary Approval (ECF 121) and the supporting Declarations and Court's Order granting preliminary approval (ECF 125).

-1-
NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS AND SERVICE AWARD

These amounts were negotiated by Ms. Yoshida subject to final approval by the Court, after the principal terms of the Settlement were agreed to by the Parties.   The requested amounts are being paid by MBUSA separate and apart from the relief provided to the Class and, therefore, do not impair, offset, or reduce any monetary relief available to the Settlement Class.

The requested awards are fair, reasonable and justified in light of the results achieved, the time and labor required, the contingent nature of the representation, the quality of the work performed, the significant risks assumed in prosecuting the action, and the value of the Settlement benefits.  Moreover, the attorneys' fee request is less than the "lodestar" or actual time incurred by Class Counsel in litigating and resolving the case and represents a "negative lodestar." Courts in this Circuit repeatedly have held that a negative multiplier further confirms the reasonableness of the requested fee.

Therefore, for all the reasons set forth below, Plaintiff respectfully requests that the Court grant the requested fees, costs and service award.

## II.    THE LITIGATION AND PLAINTIFF'S COUNSEL'S EFFORTS ON BEHALF OF THE CLASS

This Court is familiar with the basic facts of this case from its prior rulings.  ECF 33, 58, and 76. This case arises out of MBUSA's alleged violation of the Emissions Warranty by failing to identify and cover "high-priced, emissions-related parts" ("HPPs") in various Mercedes-Benz vehicles sold or leased in California and other Reg 177 States (or "Section 177 States").  Plaintiff alleges that MBUSA's failure to classify the parts as high-priced warranted parts improperly limited warranty coverage to 4 years/50,000 miles, rather than the statutorily required 7 years/70,000 miles, thereby shifting repair costs to consumers in violation of the Unfair Competition Law (Bus. & Prof. Code § 17200, *et seq*.) and the Consumers Legal Remedies Act (Civ. Code § 1750, *et seq*.)

### A.    Pleadings

Plaintiff initiated her action in the Superior Court of California for the County of Alameda on December 4, 2019. The initial Complaint was the product of extensive factual investigation and legal research into California emissions-warranty law and challenged MBUSA's warranty

practices as specifically related to the coolant thermostat, coolant pump, and vacuum pump in the Class Vehicles in California.  Lurie Decl., ¶16.

MBUSA removed Plaintiff's action to this Court on January 17, 2020. After MBUSA moved to dismiss, Plaintiff filed her First Amended Complaint on June 15, 2020. ECF 22. MBUSA moved to dismiss the FAC on July 13, 2020 (ECF 24), and Plaintiff filed her opposition on August 10, 2020. ECF 26. On September 16, 2020, the Court denied MBUSA's motion to dismiss in full, holding that Plaintiff plausibly alleged the coolant thermostat, coolant pump, and vacuum pump qualify as "high-priced" and "emissions-related" parts under California law. The Court further found that Plaintiff adequately stated claims under the UCL and CLRA – including fraud-based theories – allowing the case to proceed past the pleading stage and into discovery. ECF 33;  id., at ¶17.

Following significant discovery efforts, on September 6, 2021, Plaintiff sought leave to file a comprehensive Second Amended Complaint ("SAC") to expand the case based on evidence developed in discovery – including testimony from MBUSA's 30(b)(6) designee and regulatory guidance – broadening the claims to encompass additional parts and a multi-state class. ECF 45. MBUSA opposed the motion for leave to amend, but the Court granted Plaintiff's motion on January 13, 2022. ECF 58. This was an extremely significant development.  As a result of Plaintiff's  Counsel's investigation and persistence, Plaintiff successfully expanded her theory of the case to allege that MBUSA used, and continues to use, the wrong standard to calculate a "high price emissions part" under the California Code of Regulations, and the wrong standard to determine if a part is "emissions-related," as evidenced by testimony from MBUSA's own deponent and by a Declaration from the California Air Resources Board ("CARB").  The CARB Declaration sets forth CARB's interpretation of certain of the CCR provisions regarding the California Emissions Warranty, including how to define a "warranted part" for purposes of the Emissions Warranty and how to properly determine whether an emissions part is also a "high-priced emissions part" entitled to extended warranty coverage for 7 years and 70,000 miles. The CARB Declaration also confirms that the standard to use for the high-price cost analysis is the "customer pay" rate, not the "warranty pay rate" that MBUSA has used and is currently using

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS AND SERVICE AWARD

Further, the Court permitted Plaintiff to add Class Members in Reg. 177 States in addition to California. *Id.*, at ¶18.

Plaintiff filed her SAC on February 16, 2022. ECF 63. MBUSA moved to dismiss the SAC on March 16, 2022. ECF 64. On June 15, 2022, the Court denied Defendant's motion to dismiss, rejecting numerous fatal challenges – including abstention, standing, choice-of-law, and adequacy-of-remedy arguments – and allowing Plaintiff's claims to proceed on a broad, multi-state, and multi-part theory. ECF 76. MBUSA answered the SAC on July 20, 2022. ECF 79. As discussed below, the Court's ruling on the SAC created the opportunity to include other vehicle parts and Class Members in Reg. 177 States in any potential settlement. *Id.*, at ¶19.

Following the ruling on the SAC, Plaintiff's Counsel began drafting a motion for class certification. During the course of the litigation, Plaintiff's Counsel also negotiated, drafted and obtained approval of multiple stipulations regarding case scheduling and extensions of deadlines to effectuate settlement negotiations; and devoted significant time to updating the Court regarding mediation-related efforts, including coordinating and preparing multiple joint status reports and associated briefing in compliance with the Court's orders. Plaintiff's Counsel also drafted and filed Plaintiff's Motion for Preliminary Approval of the Settlement, which included preparing and filing supporting declarations and notice documents. *Id.*, at ¶20.

### B.  Discovery

During the litigation, the Parties engaged in protracted and contested formal discovery, including the production and review of over 4,000 documents produced by MBUSA, hundreds of documents produced by third-party repair centers, numerous written discovery requests, the deposition of MBUSA's person most knowledgeable, and the deposition of Plaintiff. As described below, the Parties also engaged in informal discovery and detailed exchanges of technical and warranty data in connection with the mediations. *Id.*, at ¶21.

In addition to preparing and serving initial disclosures, Plaintiff served (and MBUSA responded to) two sets of Requests for Production of Documents, and an initial set of Special Interrogatories and Requests for Admission. Plaintiff also served subpoenas for the production of documents on CARB and three independent repair centers for documents and information relevant

to her Class claims and engaged in extensive negotiations with CARB regarding the scope of document production.  Plaintiff's Counsel devoted significant time to reviewing MBUSA's and third parties' responses and document productions, identifying deficiencies, and conducting extensive meet-and-confer efforts aimed at securing meaningful discovery for settlement and/or trial without court intervention. *Id.*, at ¶22.

Plaintiff also devoted significant time to comprehensively responding to MBUSA's written discovery, which included Requests for Production of Documents, Special Interrogatories, and Requests for Admission, so that MBUSA would be fully apprised of the scope of the relief requested and the basis for the relief. Plaintiff also drafted and served an initial FRCP 30(b)(6) deposition notice of MBUSA, and two amended notices of deposition on MBUSA, which MBUSA responded to. Plaintiff's Counsel prepared detailed deposition topics addressing warranty policies, emissions-warranty compliance, component failure rates, and repair and replacement labor and cost data.  In anticipation of the 30(b)(6) deposition, the Parties met and conferred on the scope of the notice. As referenced above, Plaintiff also deposed MBUSA's corporate deponent.  The testimony elicited by Plaintiff's counsel was critical in moving this case to resolution. Plaintiff's counsel also defended Plaintiff's deposition.  *Id.*, at ¶23.

### C.    Settlement Negotiations and Mediations

Plaintiff and her counsel expended nearly three years in mediation and ongoing negotiations conducted initially by (Ret.) Judge Jay Gandhi and, more recently, by Michelle Yoshida, who also successfully brokered the final agreement.  In light of the Parties' fundamentally opposed views on the merits of this litigation, the scope any settlement and the terms of relief, the Settlement was extremely difficult to achieve. *Id.*, at ¶24.

The Parties participated in two full-day mediations with Jay Gandhi on November 9, 2022, and on March 20, 2023, and two full-day mediations with Ms. Yoshida on January 22, 2024, and May 7, 2024, followed by numerous negotiations with Ms. Yoshida over the next six months. Class Counsel estimate they communicated with Ms. Yoshida no less than twenty-five times to resolve outstanding issues. During the mediation process, counsel for the Parties also met in person twice without a mediator, once in San Francisco and once in Los Angeles, to discuss narrowing

the issues and moving the case towards resolution. In anticipation of these meetings, Plaintiff's Counsel investigated technical and warranty data to support Plaintiff's claims. Plaintiff's Counsel also engaged in numerous pre-mediation calls with counsel for MBUSA in order to streamline the formal mediations and post-mediation calls to keep the negotiations on track over the lengthy resolution process. *Id.*, at ¶25.

Among the many complex issues the Parties needed to resolve were determining which vehicle parts and vehicles to include in the settlement and ultimately agreeing on the Subject Parts and Subject Vehicles; defining the Settlement Class to include purchasers in Reg 177 States; addressing reimbursement parameters; and carefully tailoring the scope of the Release. Class Counsel spent numerous hours drafting and finalizing multiple mediation briefs and supplemental mediation letters, preparing formal and informal presentations to MBUSA's counsel and, ultimately, drafting and finalizing the terms sheet for settlement, which was crafted with the mediator's assistance and took months to finalize. *Id.*, at ¶26.

After nearly 3 years of negotiations, the Parties reached agreement as to principal terms. *Id*. The Parties then separately negotiated fees, costs, and a service award with the active participation and guidance of the mediator, Ms. Yoshida. *Id*. Class Counsel then worked many hours with MBUSA to draft, revise and finalize the Settlement Agreement and all the exhibits. This effort included selecting a Settlement administrator; drafting, revising and finalizing the class notices and the proposed notice program; coordinating with the Settlement Administrator to effectuate the notice program and claims process; preparing supporting declarations and exhibits; and addressing Rule 23's requirements and the fairness, reasonableness, and adequacy of the Settlement. Plaintiff also drafted and filed a Third Amended Complaint to conform to the Settlement terms and that identified the Subject Parts and detailed the claims and allegations for Settlement. *Id.*, at ¶27.

### D.    Notice to the Settlement Class

Plaintiff filed a motion for preliminary approval of the Settlement on November 14, 20205, and the Court granted preliminary approval of the Settlement on December 5, 2025, following an in-person hearing. ECF 125. The Court appointed Plaintiff as Class Representative for settlement

purposes and appointed Pomerantz LLP as Class Counsel. The Court also appointed EisnerAmper as Settlement Administrator and approved the form of the Class Notice and the notification procedures.  The Court set April 15, 2026, as the date for filing the motion for attorneys' fees and costs and any service award payment. *Id*., at ¶28.

According to the Settlement Administrator, Class notice has been sent to 3,168,915 Class Vehicles in California and Reg. 177 States from model year 2015 to the present (the "Subject Vehicles").  Following dissemination of the Class notice, Plaintiff's Counsel have monitored and tracked the notice process and have been in contact with the Settlement Administrator and with Class Members regarding claims and the claims procedure.  *Id*., at ¶29

## III.    PLAINTIFF'S REQUESTED FEES ARE REASONABLE

"Federal Rule of Civil Procedure 23(h) permits the court to award reasonable attorney's fees and costs in class action settlements as authorized by law or by the parties' agreement." *In re HP Printer Firmware Update Litig.*, 2019 U.S. Dist. LEXIS 108959, at *6 (N.D. Cal. June 28, 2019) (citing Fed. R. Civ. P. 23(h).  Here, the Court may award reasonable attorneys' fees because they are authorized by the Parties' Settlement Agreement. *See* Lurie Decl., ¶30.  Notably, the Parties negotiated attorneys' fees only after reaching agreement on the Settlement's key terms for the Settlement Class. *Id*.  Additionally, a well-respected and neutral mediator oversaw the fee negotiations, and the fee agreement was based upon a mediator's proposal that the Parties ultimately agreed on (subject to Court approval). *Id*.

In deciding whether a requested fee amount is appropriate, the Court's role is to determine whether the amount is "fundamentally 'fair, adequate, and reasonable.'" *Staton v. Boeing Co.*, 327 F.3d 938, 963 (9th Cir. 2003). As set forth below and in the Lurie Decl., the fee request is reasonable given the excellent result that required Plaintiff's Class Counsel to litigate and resolve this case over nearly six years; rounds of motions; discovery; three years of mediation and ongoing negotiations; and approval work. Moreover, even applying the full lodestar at current rates, the requested fee represents a negative multiplier, further confirming the reasonableness of the request.

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS AND SERVICE AWARD

### A.     The Fee Request is Reasonable Under the Lodestar Method

"The Ninth Circuit has approved two different methods for calculating a reasonable attorneys' fee depending on the circumstances: the lodestar method or the percentage-of-recovery method." *In re Apple Inc. Device Performance Litig.*, 2021 U.S. Dist. LEXIS 50546, at *18 (N.D. Cal. March 17, 2021) (citation omitted). "For claims-made settlements," as here, the lodestar method is appropriate." *Id*. (citation and internal quotation marks omitted). Indeed, "[u]nder California law, '[t]he primary method for establishing the amount of reasonable attorney fees is the lodestar method.'" *Walsh v. Kindred Healthcare*, 2013 U.S. Dist. LEXIS 176319, at *6 (N.D. Cal. Dec. 16, 2013). Courts may then apply a "percentage of the fund" analysis as a cross-check to confirm the reasonableness of the fee award. *See In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 944 (9th Cir. 2011) ("[W]e have also encouraged courts to guard against an unreasonable result by cross-checking their calculations against a second method . . . [T]he percentage-of-recovery method can . . . be used to assure that counsel's fee does not dwarf class recovery.") (internal quotation marks and citations omitted).

"There is a strong presumption that the lodestar figure represents a reasonable fee." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009). As this Court has noted, "Prevailing plaintiffs should generally recover their lodestar 'unless special circumstances would render such an award unjust.'" *Curran v. City of Oakland*, 2025 U.S. Dist. LEXIS 251945, at *15 (N.D. Cal. Dec. 4, 2025). *See also Kelly v. Wengler*, 822 F.3d 1085, 1099 (9th Cir. 2016) (the lodestar figure is "a presumptively reasonable fee" (citing *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1202 (9th Cir. 2013)). "Only in rare or exceptional cases will an attorney's reasonable expenditure of time on a case not be commensurate with the fees to which he is entitled." *Cunningham v. County of Los Angeles*, 879 F.2d 481, 488 (9th Cir. 1988) (emphasis omitted).

The lodestar method is particularly appropriate where, as here, there is no common fund. *Yun-Fei Lou v. American Honda Motor Co.* ("*American Honda*"), 2025 U.S. Dist. LEXIS 89346, at *6 (N.D. Cal. May 9, 2025) *(citing In re Apple Inc. Device Performance Litig.*, 2021 U.S. Dist. LEXIS 50546, at *1 (N.D. Cal. March 17, 2021); *Hanlon*, *supra*, 150 F.3d at 1029 (approving the district court's use of the lodestar method where calculation of the common fund was uncertain)).

*See also Yamada v. Nobel Biocare Holding AG*, 825 F.3d 536, 546 (9th Cir. 2016) ("The lodestar method is appropriate in class actions where the relief sought and obtained is not easily monetized, ensuring compensation for counsel who undertake socially beneficial litigation.") "Because this is not a common fund case and attorney's fees will be assessed against defendant without reducing the relief available to the class, it appears the lodestar method is the appropriate method for determining whether the attorney's fees provision at issue is reasonable at this stage." *Wilson v. Metals USA, Inc.*, 2019 U.S. Dist. LEXIS 39854, at \*23 (E.D. Cal. Mar. 12, 2019).

"The lodestar method requires 'multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer.'" *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, at 949 (9th Cir. 2015) (citation omitted).

### 1.    The Hourly Rates are Reasonable

Plaintiff's Counsel are entitled to the hourly rates charged by attorneys of comparable experience, reputation, and ability for similar work in the forum district for the action in which fees are sought. *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). The relevant legal community in this case is the San Francisco Bay area. "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *Beauchamp v. Anaheim Union High Sch. Dist.*, 816 F.3d 1216, 1224 (9th Cir. 2016) (quoting *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990)). "Once a fee applicant presents such evidence, the opposing party 'has a burden of rebuttal that requires submission of evidence . . . challenging the accuracy and reasonableness of the . . . facts asserted by the prevailing party in its submitted affidavits.'" *Camacho*, *supra*, 523 F.3d at 980.

In support of their proposed hourly rates, Plaintiff's Counsel have submitted the Lurie Declaration which details the respective hourly rates of the attorneys and other timekeepers that worked on this case and their extensive experience in the area of consumer class actions and complex litigation. Lurie Decl., at ¶¶46, 56-69 and Exs. 1-2 (resumes of Plaintiff's Counsel).

Hourly rates vary according to the experience of the timekeeper. Plaintiff's Counsel's hourly rates range from $750 to $1,250 (for a senior partner with nearly 40 years' experience). *Id.*, at ¶46. Plaintiff's Counsel calculated their lodestar using their firms' current hourly rates (*Id*. at ¶40), which is appropriate given the deferred nature of counsel's compensation, as this Court has confirmed. *See Curran, supra,* 2025 U.S. Dist. LEXIS 251945, at *18 n. 1 ("The Court finds it appropriate for Class Counsel to use their current hourly rates to calculate the lodestar on all time spent since the inception of the case to account for delay in payment. *See Missouri v. Jenkins*, 491 U.S. 274, 283-84 (1989)"). *See also Zakikhani v. Hyundai Motor Co.*, 2023 U.S. Dist. LEXIS 123158, at *31 (C.D. Cal. May 5, 2023) (even if the rates "appear to be high, the Court accepts them in light of Defendants' non-opposition and the fact that this is not a common fund case and so the attorneys' fees award will not reduce the benefits Class Members will receive under the settlement."

Plaintiff's Counsel's hourly rates are consistent with rates that have been approved by other courts in this District, including by this Court. For example, in *Curran v. City of Oakland*, 2025 U.S. Dist. LEXIS 251945 (N.D. Cal. Dec. 4, 2025), this Court recently approved an hourly rate of $1,275 for a senior partner with the same years of experience (38) as Mr. Lurie in this case, and a rate of $900 for an attorney with even less experience than Mr. Basser in this case. In Curran, the Court also relied on an attorney fee expert's declaration confirming that the rates sought by plaintiff's counsel in that case were appropriate for the Bay area legal market. Plaintiff's Counsel's hourly rates in this case are within the range approved in *Curran*. *Id*., at ¶41.

Other courts in this District also have approved similar rates. For example, in *Yun-Fei Lou v. American Honda Motor Co.* ("*American Honda*"), 2025 U.S. Dist. LEXIS 89346, at *27 (N.D. Cal. May 9, 2025) Judge Tigar approved hourly rates ranging from $700 to $1,275 (for senior partners), finding that these rates are "consistent with prevailing rates in the community by comparable lawyers doing similar work." *American Honda, supra,* 2025 U.S. Dist. LEXIS 89346, at *27. *See also* Lurie Decl., at ¶¶42-43 (providing examples of similar approved hourly rates in the Bay Area). Plaintiff's Counsel's hourly rates also compare favorably to, and are even lower than, reported rates charged by the law firms hired to defend class actions and are consistent with

the Laffey Matrix, http://www.laffeymatrix.com/see.html, which has been utilized by some courts in assessing the reasonableness of hourly rates. *See Id.*, at ¶45.

### 2.     The Number of Hours Devoted to the Case Is Reasonable

The number of hours incurred by Plaintiff's Counsel in litigating and resolving this case over a six-year period to reach the Settlement also is reasonable.  Plaintiff's Counsel have logged 3,039.10 hours in uncompensated time (after exercising billing judgment) in order to achieve the Settlement in this case.  Prior to finalizing the lodestar calculations, Plaintiff's Counsel carefully reviewed the hours and voluntarily reduced time where they determined the hours should be reduced or not billed to account for unnecessary duplication, and clerical or other billing errors, further demonstrating the reasonableness of Plaintiff's fee request.  *Id.*, at ¶31.

Moreover, no further reduction is warranted, and the fee request is reasonable and should be approved, because the lodestar also does not include additional time to be incurred after the filing of this Motion, increasing Plaintiff Counsel's uncompensated lodestar.  In addition to preparing final approval papers, providing the Court with supplemental information about Plaintiff's attorneys' fees and costs, and attending the final approval hearing, Plaintiff's Counsel must still respond to possible objections, review claims, address any appeals, oversee and monitor the Settlement (should the Court grant final approval), carry out any further instructions from the Court in response to the Parties' submissions, and take all necessary steps to close out the litigation. This additional time and expense will not be separately reimbursed and is encompassed in Plaintiff's fee request.  *Id.*, at ¶35.

The hours expended by each Plaintiff's Counsel's firm and the resulting lodestar are summarized in the Lurie Decl. and in the Tables contained therein and provide a detailed and sufficient showing of the number of hours counsel incurred and the work performed. *Id.*, at ¶¶39-41.  Table 1 is a summary of the total time incurred by Plaintiff's Counsel in this litigation, as of April 15, 2026. Time is billed in one-tenth hour increments, captured and submitted electronically. Table 2 sets forth the name of each timekeeper that worked on this matter and their respective hourly billing rates, number of hours expended, resulting lodestar, and year of bar admission. The backgrounds and qualifications of the attorneys who worked on the matter are described in the

NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS AND SERVICE AWARD

Lurie Decl. and in the resumes of Plaintiff's Counsel attached to the Lurie Decl.  Table 3 describes the hours spent by Plaintiff's Counsel in this action, grouping the total time entries into tasks performed by categories and describing the work performed in each category.  This detailed information provided by Plaintiff's Counsel is sufficient to confirm that the number of hours Plaintiff's Counsel is requesting, and the overall lodestar calculation, are reasonable.

Plaintiff's Counsel also maintained contemporaneous and detailed time records that include a description of all work performed and expenses incurred.  Courts have held that submission of detailed time records is not required, so long as counsel are willing to provide them to the Court for review if requested, which Plaintiff's Counsel are willing to do.  *Id*.  *See, e.g., Parkinson v. Hyundai Motor Am*., 796 F. Supp. 2d 1165 (C.D. Cal. 2010) (awarding attorneys' fees based on summaries of work performed rather than complete billing records, where counsel offered to provide records to the court *in camera*).  *See also Zakikhani, supra,* 2023 U.S. Dist. LEXIS 123158, at *30 ("Although counsel have not submitted detailed billing records to the Court, in light of the matter's complexity, the extensive discovery conducted to date, multiple rounds of pleading challenges, a formal mediation, and counsel's representations that they strived to work efficiently—and given Defendants' non-opposition—the number of hours counsel asserts appears reasonable and the Court will not require counsel to submit time records for *in camera* review.").

As this Court also has noted, "'An attorney's sworn testimony that, in fact, it took the time claimed is evidence of considerable weight on the issue of the time required (internal citation omitted). Moreover, the Ninth Circuit has instructed district courts to 'defer to the winning lawyer[s'] professional judgment as to how much time [they were] required to spend on the case.'" *Curran*, *supra*, 2025 U.S. Dist. LEXIS 251945 at *18.  Similarly, other courts have noted that a court "may not attempt to impose its own judgment regarding the best way to operate a law firm, nor to determine if different staffing decisions might have led to different fee requests." *Moreno v. City of Sacramento,* 534 F.3d 1106, 1115 (9th Cir. 2008). "The difficulty and skill level of the work performed, and the result achieved—not whether it would have been cheaper to delegate the work to other attorneys—must drive the district court's decision." *Id.*; *see also Grant v. Martinez*,

973 F.2d 96, 99 (2nd Cir. 1992) (courts should avoid engaging in "*ex post facto* determination of whether attorney hours were necessary to the relief obtained"). "The issue is not whether hindsight vindicates an attorneys' time expenditures, but whether at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Id*.

As detailed in the Lurie Decl., the tasks performed by Plaintiff's Counsel to date include: (i) conducting wide-ranging investigations into the Settlement Class's factual and legal claims regarding the 14 different subject parts in the action including pre-filing research regarding any similar claims; (ii) filing an initial and three amended complaints, including a motion for lave to amend; (iii) researching and responding to three motions to dismiss; (iv) engaging in significant party and non-party discovery in both cases and resolving discovery disputes; (v) taking the deposition of MBUSA's 30(b)(6), and defending the deposition of Plaintiff; (vi) consulting with experts; (vii) preparing for, and engaging in, four  full-day mediations with Defendant overseen by (Ret.) Judge Jay Gandhi and Michelle Yoshida at JAMS over the course of 3 years, followed by numerous negotiations and interactions with Ms. Yoshida over the next six months (Plaintiff's Counsel estimate they communicated with Ms. Yoshida no less than twenty-five times to resolve outstanding issues), including stipulations and case management, and the exchange of significant information in connection with the mediations; (viii) negotiating and drafting the Settlement Agreement and its exhibits; (ix) drafting the initial motion for preliminary approval and its supporting documents; (x) preparing the instant motion for attorneys' fees and a service award and supporting documentation; (xi) preparing the motion for final approval, and other tasks including stipulations and case management.  *See* Lurie Decl., at ¶¶47-49 (describing the work performed by specific task categories).

In performing these tasks, Plaintiff's Counsel appropriately and efficiently allocated work among timekeepers of varying expertise based on the difficulty or importance of the task – utilizing more senior attorneys for crucial tasks, such as drafting and arguing major motions, conducting meet-and-confer sessions, and participating in settlement negotiations. *Id*., at ¶37. Plaintiff's Counsel also made sure to efficiently allocate work, coordinate assignments, and prevent the unnecessary duplication of work, effectively reducing its overall lodestars. In

situations in which two or more attorneys participated in any matter, that participation was reasonable because of the complexity of the issues or pleadings involved and the time constraints that existed. *Id.*; *see also Abrogina v. Kentech Consulting Inc.*, 2023 U.S. Dist. LEXIS 177257, at \*44 (S.D. Cal. Sept. 5, 2023) ("An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation." (internal quotation marks and citations omitted); *Kim v. Fujikawa*, 871 F.2d 1427, 1435 n.9 (9th Cir. 1989) (noting that "the participation of more than one attorney does not necessarily constitute an unnecessary duplication of effort" because the complexity of legal issues and the breadth of factual evidence involved in case bear on the reasonable amount of lawyer participation).

Plaintiff's Counsel did not undertake extraneous work nor was there an incentive to do so; as Plaintiff's Counsel litigated this case on a contingent basis, it had no incentive to devote unnecessary time to this matter. Lurie Decl., at ¶38. As courts have noted, in a contingency case such as this one, "[i]t must also be kept in mind that lawyers are not likely to spend unnecessary time on contingency fee cases in the hope of inflating their fees. The payoff is too uncertain, as to both the result and the amount of the fee." *Moreno, supra,* 534 F.3d at 1112. This remains true for work performed even after a settlement in principle was reached. *See Willner v. Manpower Inc.*, 2015 U.S. Dist. LEXIS 80697, at \*11 (N.D. Cal. June 22, 2015) (holding that "if the settlement is not approved, 'there is risk that the Court may deny class certification or, following initial certification, subsequently decertify the class based on unanticipated individualized issues or manageability concerns.'") (citation omitted).

In sum, Plaintiff's Counsel's requested attorneys' fees are reasonable. The time they have spent on this action was efficient, diligently performed, and resulted in an outstanding settlement that provides valuable extended warranty coverage under the Emissions Warranty.

**B.      The Requested Fee Represents a Negative Multiplier**

In contingency fee cases such as this, courts often award multiples of Plaintiff's Counsel's lodestar. *See, e.g., Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 at 1051 & Appendix (9th Cir. 2002) (approving multiplier of 3.65 and citing cases with multipliers as high as 19.6). In this case,

as further demonstration that the fee request is more than reasonable, Plaintiff's Counsel are not seeking a multiplier on their lodestar, despite a modest multiplier being amply justified in this action based on the risk presented by its contingent nature; the skill Plaintiff's Counsel demonstrated; preclusion of other employment; and the excellent result obtained and importance of the lawsuit to the public. *See, e.g., Graham v. DaimlerChrysler Corp.*, 34 Cal. 4th 553 at 582 (2004).

In fact, in this case, Plaintiffs' Counsel's fee request represents a *negative multiplier i.e.*, even if the full requested fee is awarded, Plaintiffs' Counsel will not be fully compensated for their actual time incurred. After subtracting reported costs and expenses and Plaintiff's requested service award totaling $89,487.16, Plaintiffs' Counsel's actual fee request is $2,723,012.84. Plaintiff's Counsel's lodestar is $3,276,670. This represents a negative multiplier of approximately 0.83 (i.e., 83.1% of the lodestar or approximately $0.83 for every $1.00 of time actually incurred) -- a significant downward adjustment from the lodestar calculation. Lurie Decl., at ¶50. Courts within this Circuit have held that a negative multiplier "strongly suggests the reasonableness of the negotiated fee." *See, e.g.*, *Kuraica v. Dropbox, Inc.*, 2021 U.S. Dist. LEXIS 235394, at *21-22 (N.D. Cal. Dec. 8, 2021). *See also* Lurie Decl., at ¶50 (citing cases).

### C.    Plaintiff's Counsel Achieved an Excellent Result for the Class

The result achieved for the Settlement Class is the most important factor in determining whether a requested fee award is reasonable. *In re Bluetooth*, *supra*, 654 F.3d at 942*; see also In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) ("The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award."). There is no "particular formula by which th[e] outcome [of litigation] must be tested." *Rodriguez, supra*, 563 F.3d at 965. Rather, the Court's assessment of the likelihood of success is "nothing more than an amalgam of delicate balancing, gross approximations, and rough justice." *Id*. (citations and quotation marks omitted).

The Settlement offers the following benefits to Class Members.

#### 1.    Warranty Extension

MBUSA has agreed that, on a going forward basis, beginning on the Effective Date and

continuing thereafter, it will provide 100% coverage for the repair, replacement, or diagnosis of a Subject Part on a Subject Vehicle performed at an Authorized Service Center, after the expiration of the Subject Vehicle's 4-year/50,000-mile warranty but before the expiration of the Subject Vehicle's 7-year/70,000-mile warranty upon confirmation that the part(s) presented for repair, replacement, or diagnosis are Subject Parts of a Subject Vehicle and that the repair or replacement is not otherwise excluded from HPP Warranty coverage for the reasons set forth in the warranty book for the Subject Vehicle (e.g., if the vehicle or engine manufacturer demonstrates that the vehicle or engine has been abused, neglected, or improperly maintained, and that such abuse, neglect, or improper maintenance was the direct cause of the need for the repair or replacement of the Subject Parts). S.A. §4.3. All terms and conditions of the HPP Warranty will apply. S.A. §4.4. The HPP Coverage will follow the Subject Vehicles, is not personal to any owner and lessee, and will survive the sale of Subject Vehicles to subsequent purchasers (so long as the Subject Vehicle remains registered in a Section 177 State). HPP Coverage will be processed through MBUSA's standard payment processes with its dealers. S.A. §4.6. The Settlement Class Members will not be required to present any Settlement-related document to receive service covered under this HPP Coverage at an authorized Mercedes-Benz dealership. Settlement Class Members will not have to pay out of pocket for repairs, replacements, or diagnoses covered under the HPP Coverage. MBUSA also will not impose any fees or charges for repairs, replacements, or diagnoses covered under the HPP Coverage. S.A. §4.5. All applicable rights and conditions under preexisting warranties will remain notwithstanding the implementation of this Settlement. Nothing in the Settlement will be construed as diminishing or otherwise affecting any other express or implied warranties covering the Subject Vehicles. S.A. §4.7. 2.

**2.    Out-of-Pocket Reimbursement Program**

The Settlement also provides for a robust notice program (discussed more below) providing Settlement Class Members with information on accessing the claim form from the Settlement Website and submitting a claim, including the required documentation, which includes: (a) a repair order or invoice or other documentation showing that the Subject Vehicle received a Qualified Repair or Qualified Diagnosis and the cost of the relevant repair, replacement, or

diagnosis; (b) proof of the Settlement Class Member's payment for the Qualified Repair or Qualified Diagnosis (e.g., credit card statement, invoice showing zero balance, receipt showing payment, etc.); (c) proof of the Settlement Class Member's ownership or lease of the Subject Vehicle at the time of the Qualified Repair or Qualified Diagnosis; and, (d) proof of the Settlement Class Member's registration in a covered Section 177 State at the time of the claimed Qualified Repair or Qualified Diagnosis. S.A. §9.2. Claimants can submit claims by U.S. mail, by email, or through the dedicated Settlement Website. S.A. §9.4.

The Settlement here justifies finding that Plaintiff's Counsel's requested fee is reasonable. The result achieved in this case is excellent.  As fully described in the Settlement Agreement and in the Motion for Preliminary Approval, under the Settlement, MBUSA has agreed that, on a going forward basis, beginning on the Effective Date and continuing thereafter, it will provide, for the first time, 100% coverage for the repair, replacement, or diagnosis of *14* different Subject Parts on a Subject Vehicle performed at an Authorized Service Center, after the expiration of the Subject Vehicle's 4-year/50,000-mile warranty but before the expiration of the Subject Vehicle's 7-year/70,000-mile warranty (upon confirmation that the part(s) presented for repair, replacement, or diagnosis are Subject Parts of a Subject Vehicle and that the repair or replacement is not otherwise excluded from HPP Warranty coverage for the reasons set forth in the warranty book for the Subject Vehicle, for example, if the vehicle or engine manufacturer demonstrates that the vehicle or engine has been abused, neglected, or improperly maintained, and that such abuse, neglect, or improper maintenance was the direct cause of the need for the repair or replacement of the Subject Parts). S.A. §4.3.  All terms and conditions of the HPP Warranty will apply.  S.A. §4.4. The HPP Coverage will follow the Subject Vehicles, is not personal to any owner and lessee, and will survive the sale of Subject Vehicles to subsequent purchasers (so long as the Subject Vehicle remains registered in a Section 177 State).  HPP Coverage will be processed through MBUSA's standard payment processes with its dealers.

The Settlement Class Members will not be required to present any Settlement-related document to receive service covered under this HPP Coverage at an authorized Mercedes-Benz dealership.  Settlement Class Members will not have to pay out of pocket for repairs, replacements,

or diagnoses covered under the HPP Coverage. MBUSA also will not impose any fees or charges for repairs, replacements, or diagnoses covered under the HPP Coverage. In addition, the Settlement establishes an out-of-pocket reimbursement program under which Settlement Class Members who previously paid for qualifying repairs to their Subject Vehicles and timely submit claims may obtain 50% reimbursement for out-of-pocket costs for parts, labor, and diagnosis for Valid Claims for such Qualified Repairs that were incurred after the expiration of the Subject Vehicle's 4-year/50,000-mile warranty but before the expiration of the Subject Vehicle's 7-year/70,000-mile warranty. MBUSA also agreed to provide 100% reimbursement for out-of-pocket costs (limited to the labor and diagnosis) for Valid Claims for such Qualified Diagnoses that were incurred after the expiration of the Subject Vehicle's 4-year/50,000-mile warranty but before the expiration of the Subject Vehicle's 7-year/70,000-mile warranty.

There are no terms allowing a reversion of any sort to MBUSA. The Settlement provides Class Members with full coverage of Subject Parts on a going forward basis, 100% reimbursement for the cost of diagnosis between 4-years/50,000-miles and 7-years/70,000-miles, and 50% reimbursement 50% reimbursement for the costs for parts, labor, and diagnosis for repairs without any arbitrary caps. The Settlement benefits are non-reversionary, do not depend on speculative future conduct, and do not consist of coupons or illusory relief. From an injunctive relief and reimbursement of diagnostic costs perspective, the Settlement effectively provides Class Members the same remedies that they would otherwise have expected to receive if the case had been successfully tried, but without the delay and risks associated with continued litigation and trial.

The Settlement addresses the central allegation in this action, achieves the relief sought by Plaintiff and the Settlement Class, and directly addresses the injury alleged – reimbursement of diagnostic, repair and replacement costs, and ongoing warranty coverage, for all of the Subject Parts in virtually every non-electric MBUSA vehicle registered in California and a Section 177 State from model year 2015 to the present. This is a remarkable result that took 6 years of litigation, including nearly 3 years of mediation, to achieve.

Further, the value of the injunctive relief is 100% of the cost of diagnosis and repairs, as MBUSA is agreeing to fully cover all diagnostic and repair costs for the Subject Parts in Subject

Vehicles on a going forward basis, after the expiration of the vehicle's 4-year/50,000-mile warranty but before the expiration of the vehicle's 7-year/70,000-mile warranty. In addition, Settlement Class Members are receiving reimbursement of 100% of out-of-pocket costs already paid for Qualified Diagnoses of Subject Parts in the Class Vehicles and 50% of out-of-pocket costs for Qualified Repairs of the Subject Parts (a compromise negotiated by the mediator).

This Settlement also represents a significant and tangible benefit to the Settlement Class and the environment. The Settlement relief ensures that Settlement Class Members receive warranty coverage consistent with California law and guarantees uniform compliance with emissions warranty obligations for the Subject Parts going forward, achieving the precise regulatory and environmental objectives underlying the lawsuit.

Because MBUSA will pay Plaintiff's Counsel's reasonable attorneys' fees, costs, and expenses separate and apart from the funding of the Settlement benefits, the Court need not "perform a crosscheck using the percentage method" as that "would make little logical sense" where "the lodestar method yields a fee that is presumptively reasonable." *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 571 (9th Cir. 2019) (*en banc*) (internal quotations and alterations omitted); *accord Serrano v. Priest,* 20 Cal. 3d 25, 37-38 (1977) (finding common-fund approach to fees "inapplicable" when counsel's fees will not be deducted from a settlement fund established for class members).   Nonetheless, Plaintiff intends to submit a detailed expert valuation of the benefits of the Settlement in connection with the motion for final approval.  That valuation is expected to value the Settlement at many multiples of Plaintiff's fee request, bringing the cross-check percentage significantly below the Ninth Circuit's 25% benchmark of a presumptively-reasonable award. This evidence will further confirm that Plaintiff's Counsel achieved a truly excellent result for the Class and the reasonableness of Plaintiff's fee request.

### D.   Skill of Plaintiff's Counsel

This was not an easy case, and the Settlement benefits would not have been achieved without Plaintiff's Counsel's skill and quality of work, which further support the requested fee award.  The fact that a favorable Settlement was achieved prior to trial reflects the quality of Plaintiff's Counsel's representation.

The Settlement Class also benefited from Plaintiff's Counsel's experience with consumer class actions and especially Plaintiff's Counsel's extensive experience in developing novel theories alleging violations under the Emissions Warranty. Pomerantz's track record of successfully prosecuting complex cases, especially cases arising under the Emissions Warranty, undoubtedly was a factor that encouraged Defendant to engage in settlement discussions, and added valuable leverage in the negotiations, ultimately resulting in the recovery for the Class. Lurie Decl., at ¶12.

As referenced above, this case began with three parts that MBUSA allegedly failed to warrant under the Emissions Warranty. Plaintiff's Counsel, through discovery and perseverance, expanded the number of parts for Settlement to fourteen parts. Diagnoses and repairs for all of these vehicle parts that qualify will be 100% covered during the warranty period and Class members will be entitled to reimbursement of their past out of pocket costs for diagnosis and repair of these parts.

Further, during the years before the Parties reached Settlement, Plaintiff's Counsel developed facts, propounded discovery on MBUSA and third parties, conducted depositions of MBSUA and third-parties, reviewed claims data, and worked with consultants and experts, as detailed in the Lurie Decl. at ¶¶13, 59, all of which benefited the Settlement Class. *See In re Apple Inc. Device Performance Litig.*, 2023 U.S. Dist. LEXIS 27892, at *65 (N.D. Cal. February 17, 2023) (finding an upward fee adjustment supported by counsel diligently developing the facts, propounding discovery, taking depositions, and engaging a damages consultant, all of which was of great benefit to the Class).

Specifically, Plaintiff's Counsel elicited testimony from MBUSA that Plaintiff contends evidences MBUSA's failure to perform the proper cost analysis under the Emissions Warranty for *all* high-price parts on a systemic basis. As part of the Settlement negotiation, Plaintiff's Counsel insisted, and MBUSA agreed, that the Settlement shall not limit or release any claims in a related, pending action, *Betancourt v. Mercedes-Benz USA, LLC*, Case No. 3:22-cv-05898-VC (N.D. Cal.) and that, for the purposes of economy and judicial efficiency, MBUSA's deposition testimony shall also constitute the deposition testimony of MBUSA in *Betancourt* as to how MBUSA

determines if an emissions part is high-priced or not.

Courts also consider "the quality of opposing counsel as a measure of the skill required to successfully litigate the case successfully." *In re Apple Inc. Device Performance Litig., supra*, 2023 U.S. Dist. LEXIS 27892, at *65. Here, MBUSA, a massive auto company with significant financial and legal resources, was represented by highly respected counsel from the national law firm, Winston & Strawn LLP.

### E.    The Settlement's Benefits were Achieved in the Face of Substantial Litigation Risk and Risk of Nonpayment

The Settlement's benefits were achieved in the face of substantial litigation risk, including the risk that continued litigation could have resulted in no recovery at all. Plaintiff's Counsel undertook this action on a fully contingent basis, advanced all litigation costs, and faced a substantial risk of non-payment given the legal, factual, and procedural hurdles presented by MBUSA's defenses, motion practice, and the uncertainty inherent in class actions. By committing hundreds of hours and advancing significant litigation costs over more than six years on this action, Plaintiff's Counsel necessarily diverted time and resources from other matters and assumed a substantial risk that their efforts would yield no recovery. Lurie Decl., at ¶10.

Moreover, the case presented meaningful legal and procedural challenges, including defenses MBUSA asserted to liability, as well as potential statute-of-limitations issues tied to Class Vehicle manufacture and in-service dates. Indeed, this action was particularly risky, as there was no guarantee that the subject parts actually be determined to be "emissions-related" or "warranted parts" under the Emissions Warranty as a matter of law, and even if they were, that Plaintiff could prevail on her claims on a class wide basis. *Id*., at ¶10.

Plaintiff's Counsel persisted in the face of numerous hurdles throughout the litigation that could have substantially narrowed or precluded any recovery in this case. If this action had continued, there was a very real risk of losing class certification, summary judgment, or at trial, or on appeal, denying the Class Members and Plaintiff's Counsel of any recovery at all. *See In re Apple Inc. Device Performance Litig., supra*, 2023 U.S. Dist. LEXIS 27892, at *47-48 (noting litigation risks). Plaintiff's Counsel assumed the risk of challenging MBUSA, a well-resourced

defendant that would have continued to vigorously defend its business practices had the litigation proceeded. These risks further support awarding the requested fee.

The Ninth Circuit has repeatedly recognized that contingent risk and delay in payment are appropriate factors supporting a fee award. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994). Indeed, "courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work." *Ching v. Siemens Indus., Inc.*, 2014 U.S. Dist. LEXIS 89002, at *25 (N.D. Cal. June 27, 2014); *see also Weeks v. Google LLC*, 2019 U.S. Dist. LEXIS 215943, at *9 (N.D. Cal. Dec. 13, 2019) ("Class Counsel took on substantial risk in connection with the litigation. The representation was carried out on a contingent basis and lasted nearly two years. Class Counsel was also opposed by skilled and respected counsel for Defendants, resulting in substantial and difficult litigation, discovery, and settlement negotiations."). Given the risks and uncertainties of continued litigation, this Settlement and its benefits are an excellent result for Class Members.

## IV.   THE REQUESTED SERVICE AWARD IS REASONABLE

The Ninth Circuit has "repeatedly held that reasonable incentive awards to class representatives are permitted." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785-87 (9th Cir. 2022) (quotation marks and citation omitted). Indeed, service awards are "fairly typical in class action cases." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958 (9th Cir. 2009); *accord Radcliffe v. Experian Info. Sols., Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (noting their function as "payments to class representatives for their service to the class in bringing the lawsuit"); *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003) ("named plaintiffs ... are eligible for reasonable incentive payments").  The purpose of such awards is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59.

As this Court has noted, in evaluating requests for service awards, courts consider the following factors: (1) the amount of time and effort spent by the class representatives on the

litigation; (2) the degree to which the class representatives' efforts benefitted the class; (3) the personal difficulties encountered by the class representatives; (4) the duration of the litigation; (5) the risk to the class representatives in commencing suit, whether financial, reputational, or otherwise; and (6) whether the litigation has promoted important public policy. *Curran*, *supra*, 2025 U.S. Dist. LEXIS 251945 at * 24 (citing *Rodriguez*, *supra*, 563 F.3d at 958-59).

While the standard service award in the Ninth Circuit appears to be $5,000 (*see e.g., Lagunas v. Young Adult Inst., Inc.*, 2024 U.S. Dist. LEXIS 41242, at *13 (N.D. Cal. March 8, 2024) citing *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266-67 (N.D. Cal. 2015)), a higher award is justified here.  As described in detail in Plaintiff's Declaration (attached to the Lurie Decl. as Ex. 3), Plaintiff devoted no less than an estimated 100 hours in gathering and organizing paperwork, locating and compiling receipts and repair records, reviewing documents, participating in written discovery, reviewing complaints, motions, discovery responses, and other pleadings, preparing for and sitting for deposition, where she was extensively questioned by MBUSA, remaining informed about the status of the case and the claims throughout the duration of this litigation, being available to Class counsel during several mediation sessions and consenting to the settlement, reviewing the Settlement agreement; and helping each Class member to receive substantial payments and future relief because this case was filed.  *See* Hazdovac Decl., at ¶2.  Without Plaintiff's willingness to step forward and participate, the Class would not have obtained the substantial relief provided by the Settlement.

Moreover, participation in this litigation has been a source of significant stress, inconvenience, and personal burden for Plaintiff. She has been required to spend time away from work and to re-live the frustration of having a vehicle that she was making payments on while it sat in a repair shop on and off for nearly a year. The case has disrupted her work schedule, her personal time, and her daily life. These burdens were ongoing over multiple years and required sustained involvement in this litigation. Hazdovac Decl., ¶3.

The financial and professional impact of this litigation has been substantial on Plaintiff, who is self-employed, and does not get paid unless she works. She is typically booked out for weeks in advance, so any time she had to miss work for case-related obligations meant lost income

that she had to recover by working on her days off to service clients. She also experienced anxiety about falling behind and the disruption to her business that this litigation required. This included lost income directly attributable to her participation in this case. *Id.*, ¶4.

Plaintiff has had concerns about retaliation and personal impact stemming from her role as class representative. Specifically, she has been concerned about how her participation may affect her if she ever decides to purchase another Mercedes-Benz vehicle in the future. She is also troubled that her name and the details of this case now appear publicly when searched online, which is an ongoing personal impact she did not fully appreciate when she agreed to serve as class representative. *Id.*, ¶5. A service award of $10,000 is not only fair to her, given the value of the Settlement to the Class, it will also serve as an incentive to other individuals to diligently and responsibly serve as class representatives in the future

All of the foregoing factors respectfully support the enhanced fee request.

## V.   THE REQUESTED COSTS ARE REASONABLE

Under well-settled law, Plaintiff's Counsel are entitled to recover "out-of-pocket expenses that would normally be charged to a fee-paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal citation and quotation marks omitted). *See also Staton*, 327 F.3d at 974 (class counsel are entitled to reimbursement of expenses they reasonably incurred). Plaintiff's Counsel seek reimbursement of reasonable out-of-pocket litigation expenses that were necessarily incurred to prosecute and resolve this case, including mediation fees, expert-related costs, travel, and other case expenses in the total amount of $79,487.16.  These costs were incurred solely for the benefit of the Class, were reasonably necessary to continue the negotiation, litigation and resolution of this action and would not have been recoverable absent a successful outcome. The expense requests are reasonable in amount and supported by detailed documentation. Lurie Decl., at ¶¶70-71.

## VI.   CONCLUSION

For the reasons discussed herein, Plaintiff respectfully requests that the Court enter an Order awarding attorneys' fees and costs, and service award to Plaintiff in the total amount of $2,812,500.

-24-
NOTICE OF MOTION AND MOTION FOR
ATTORNEYS' FEES, COSTS AND SERVICE AWARD

Dated: April 15, 2026          Respectfully submitted,

**POMERANTZ LLP**


By:       /s/ Ari Y. Basser
                Jordan L. Lurie
                Ari Y. Basser

*Attorneys for Plaintiff and the Settlement Class*